David M. Parker, Esq. (SBN 211078)
Gregory L. Riggs, Esq. (SBN 314022)
**PARKER & RIGGS LLP**
110 West A Street, Suite 615
San Diego, California 92101
Telephone: (619) 233-8292
Facsimile: (619) 233-8636
DParker@ParkerRiggs.com
GRiggs@ParkerRiggs.com

Attorneys for Creditors Affordable Housing Land Consultants, LLC and Century Housing Corporation

**U.S. BANKRUPTCY COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>JEFFREY DAVID PHAIR,<br><br>Debtor and Debtor-in-Possession, | Case No. 25-00661-JBM11<br><br>RS No: WP-1<br><br>Honorable J. Barrett Marum<br><br>**COMPLAINT TO ESTABLISH VALIDITY AND AMOUNTS, AND DETERMINE CERTAIN DEBTS OF DEBTOR TO BE NONDISCHARGEABLE** |

Affordable Housing Land Consultants, LLC ("AHLC") and Century Housing Corporation ("Century"), by and through their undersigned counsel and pursuant to 11 U.S.C. § 523(a) file this action to determine the nondischargeability of certain debts of Jeffrey David Phair, an individual ("Mr. Phair"), the debtor and debtor-in-possession herein.

## INTRODUCTION

1. This action is to establish the validity and amounts of certain debts of Mr. Phair, and to determine such debts are nondischargeable. Mr. Phair's company, The Phair Company, LLC ("TPC") sold two parcels of real property to AHLC. Century was the lender on the purchase and sale transaction. Prior to the close of escrow, TPC through Mr. Phair represented there were no pending or threatened actions, suits, or proceedings that would affect title to the properties. After escrow for the properties closed, AHLC and Century were shocked to learn for the first time that

third-party Renzulli Properties, LLC ("Renzulli") asserts an interest in the Properties. Renzulli served notices of levy seeking to enforce an abstract of judgment entered in an unrelated matter involving Renzulli, TPC, and TPC's principal Mr. Phair. AHLC and Century brought an action in state court seeking (1) to halt Renzulli's foreclosure proceedings and (2) damages against TPC and Mr. Phair. Both TPC and Mr. Phair subsequently filed for bankruptcy protection. AHLC and Century now bring the instant adversary proceeding seeking to establish the validity and amounts of damages on their state court causes of action for fraudulent concealment and declaratory relief, and a determination such debts of TPC are non-dischargeable.

## THE PARTIES & NATURE OF THE CASE

2. AHLC is, and at all times relevant herein was, a California Limited Liability Company doing business in the County of San Diego, State of California. AHLC is a creditor of Mr. Phair pursuant to the proof of claim filed on May 6, 2025. [Claim No. 12-1.]

3. Century is, and at all times relevant herein was, a California Nonprofit Corporation doing business in the County of San Diego, State of California. Century is a creditor of Mr. Phair pursuant to the proof of claim filed on May 6, 2026. [Claim No. 13-1.]

4. AHLC has a history of successfully acquiring and constructing housing projects that are reserved for low-income households. Century has been the lender in connection with a number of AHLC's low-income housing projects. AHLC has extensive experience in acquiring development sites and cost-effectively building low-income family housing without the need for additional subsidies beyond federal low-income housing tax credits and tax-exempt bonds.

5. As discussed below, AHLC as owner and developer acquired the properties that are the subject of this action (hereinafter defined as the "Properties") in early July of 2024. Century made the loan for the acquisition of the properties. Century is a certified Community Development Financial Institution (CDFI) and a premier nonprofit lender providing financing to developers of affordable and workforce housing. Century's mission is to finance, build, and operate exceptional affordable housing so that the people it serves may have a dignified home, a healthy and hopeful future, and maintain economic independence. Century is dedicated to promoting equitable housing development, supporting a triple bottom line that includes financial, social, and environmental

benefits for community members, developers, and investors.

6. AHLC acquired the Properties for the development of a 380-unit low-income housing project serving families whose earnings are below the area median income. The project is called the "Trolley Stop Apartments" because the Properties are located across from a major transit center. Residents will have convenient access to job opportunities, amenities, and services throughout the City of San Diego. The City of San Diego has prioritized transit-oriented affordable housing projects like the Trolley Stop Apartments within its long-term community plans. Once constructed, the 380-unit Trolley Stop Apartments will have 190 studios, 113 one-bedroom, and 77 two-bedroom units.

7. TPC is, and at all times relevant herein was, a California Limited Liability Company doing business in the County of San Diego, State of California. TPC is the debtor and debtor-in-possession in the United State Bankruptcy Court, Southern District of California, Case No. 25-00661-JBM11 (the "TPC Corporate Bankruptcy").

8. Mr. Phair is, and at all times relevant herein was, an individual residing in the County of San Diego, State of California. Mr. Phair is the debtor and debtor-in-possession in the instant bankruptcy (the "Phair Individual Bankruptcy).

## THE STATE COURT ACTION

9. On November 1, 2024, AHLC and Century filed an action in the Superior Court of the State of California, County of San Diego, Central Division, Case No. 24CL020598C, naming as defendants TPC, Mr. Phair, and third-party Renzulli (the "State Court Action"). A true and correct copy of the complaint in the State Court Action (the "State Court Complaint") is attached as **Exhibit 1**.

10. The State Court Action involves title to two parcels of real property commonly known as 3145 and 3167 Beyer Boulevard, San Diego, CA 92154, identified by Assessor's Parcel Numbers 630-321-31-00 and APN 630-321-32-00, legally described as:

> PARCELS 1 AND 2 OF PARCEL MAP NO. 18000, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 26, 1998

(the "Properties").

11. In the State Court Action, AHLC and Century have brought causes of action against TPC for (1) declaratory relief, (2) breach of the deed covenants, (3) negligence, (4) negligent misrepresentation, and (5) concealment, and causes of action against Mr. Phair for (1) declaratory relief, (2) negligence, (3) negligent misrepresentation, and (4) concealment. AHLC and Century's causes of action against TPC and Mr. Phair for concealment and declaratory relief form the basis of the instant complaint to hold certain debts nondischargeable.

12. On February 3, 2024, AHLC and Century brought an ex parte application for a temporary restraining order ("TRO") and an order to show cause why a preliminary injunction should not issue ("OSC re PI"), restraining and enjoining defendant Renzulli Properties LLC ("Renzulli") and its members, managers, officers, agents, servants, employees, and representatives, and all persons acting in concert or participating with them, should not be enjoined and restrained during the pendency of the State Court Action from (1) taking any action to enforce its abstract of judgment, recorded April 2, 2024 as Document Number 2024-0079649 in the Official Records of San Diego County (the "Abstract") as against the Properties; (2) from taking any action to realize against the Properties; (3) from conducting a sheriff's sale of the Properties; and/or (4) from taking any action to enforce any claimed lien rights involving the Properties. A true and correct copy of AHLC and Century's notice of ex parte and ex parte application for a TRO and OSC re PI is attached as **Exhibit 2**.

13. After a hearing on the matter on December 5, 2024, the Hon. Gregory W. Pollack, Judge Presiding, entered the TRO as requested and set the matter for an order to show cause hearing on February 7, 2025, why a preliminary injunction should not issue. A true and correct copy of the Court's December 5, 2024 minute order is attached as **Exhibit 3**.

14. After a hearing on the matter on February 7, 2025, Judge Pollack granted AHLC and Century's motion for preliminary injunction, and ruled that the December 5, 2024 TRO shall remain in effect during the pendency of the State Court Action, and set bond at $10,000.00. A true and correct copy of the Court's February 7, 2025 minute order is attached as **Exhibit 4**.

15. On February 7, 2025, TPC and Mr. Phair filed their verified answer ("State Court Answer") to the verified State Court Complaint. A true and correct copy of the State Court Answer

is attached as **Exhibit 5**.

16. On or about February 25, 2025, TPC filed the instant Phair Individual Bankruptcy case under Chapter 11 of the United States Bankruptcy Code. On or about the same date, February 25, 2025, Mr. Phair filed the TPC Corporate Bankruptcy case under Chapter 11 of the United States Bankruptcy Code. A true and correct copy of the notice of stay of proceedings is attached as **Exhibit 6**.

**BACKGROUND ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

17. On or about February 15, 2024, AHLC's assignor AMG & Associates, LLC ("AMG") presented an offer to TPC to purchase the Properties for $7,100,000 pursuant to a standard offer, agreement and escrow instructions for the purchase of real estate (the "PSA"). TPC's principal Mr. Phair agreed to sell the Properties for the agreed-upon price and signed the PSA on behalf of TPC on or about the same date. **Ex. 1** (State Court Complaint), ¶ 15; **Ex. 5** (State Court Answer), ¶ 15.

18. On or about February 26, 2024, the parties opened an escrow and signed escrow instructions for the sale of the Properties with Chicago Title Company with escrow to close on or before June 1, 2024 (the "Escrow Instructions"). **Ex. 1** (State Court Complaint), ¶ 16; **Ex. 5** (State Court Answer), ¶ 16.

19. Paragraph 17 of the Escrow Instructions is entitled "ENCUMBRANCES" and provides in pertinent part:

> You are authorized, without the need for further approval, to debit my account for any fees and charges that I have agreed to pay in connection with this escrow, and for any amounts that I am obligated to pay to the holder of any lien or encumbrance to establish the title as insured by the policy of title insurance called for in these instructions. If for any reason my account is not debited for such amounts at the time of closing, I agree to pay them immediately upon demand, or to reimburse any other person or entity who has paid them.

**Ex. 1** (State Court Complaint), ¶ 17; Ex. 5 (State Court Answer), ¶ 17.

20. Prior to the close of escrow, TPC provided a property information sheet (the "Property Disclosure"). The Property disclosure states at Paragraph 9:

> **Actions, Suits or Proceedings**. Owner has no actual knowledge that any actions, suits or proceedings are pending or threatened before any court, arbitration tribunal, governmental department, commission, board, bureau, agency or instrumentality that

would affect the Property or the right or ability of an owner or tenant to convey, occupy or utilize the Property, except (if there are no exceptions write "NONE"): None.

**Ex. 1** (State Court Complaint), ¶ 18; **Ex. 5** (State Court Answer), ¶ 18.

21. During escrow, AHLC received a preliminary report with an effective date of February 9, 2024 (the "Preliminary Report"). The Preliminary Report reflects that title to the Properties was vested in THE PHAIR COMPANY LLC, a California limited liability company. **Ex. 1** (State Court Complaint), ¶ 19, and Ex. 1 thereto (Preliminary Report); **Ex. 5** (State Court Answer), ¶ 19.

22. The Preliminary Report does not list any abstracts of judgment or judgment liens. **Ex. 1** (State Court Complaint), ¶ 20; **Ex. 5** (State Court Answer), ¶ 20.

23. As far as other encumbrances are concerned, the Preliminary Report lists a deed of trust to secure an indebtedness in the amount of $1,999,000.00 granted by TPC to Robert and Daryl Conrad et al. (the "Conrad DOT") The Conrad DOT was recorded March 16, 2023 as Document No. 2023-0066759 of Official Records. **Ex. 1** (State Court Complaint), ¶ 21, and Ex. 2 thereto (Conrad DOT); **Ex. 5** (State Court Answer), ¶ 21.

24. Prior to the close of escrow, AMG assigned the PSA to AHLC. **Ex. 1** (State Court Complaint), ¶ 22.

25. On March 22, 2024 a judgment was entered in the case of *Jeff Phair et al. v. Renzulli Properties, LLC*, San Diego Superior Court Case No. 37-2022-00046736 (the "Judgment"). The Court entered Judgment in favor of Renzulli and against Mr. Phair, TPC and Green Phair Scripps Partners, LLC jointly and severally for $3,489,438.60. **Ex. 1** (State Court Complaint), ¶ 23, and Ex. 3 thereto (Judgment); **Ex. 5** (State Court Answer), ¶ 23.

26. AHLC deposited $1,875,773.50 of its funds into escrow prior to closing. It also obtained a loan from Century in the amount of $6,390,000.00 to buy the Properties. **Ex. 1** (State Court Complaint), ¶ 24.

27. On or about March 25, 2024 Century obtained an amended preliminary report (the "First Amended Preliminary Report"). **Ex. 1** (State Court Complaint), ¶ 25, and Ex. 4 thereto (First Amended Preliminary Report); **Ex. 5** (State Court Answer), ¶ 25.

28. Like the Preliminary Report provided to AHLC, the First Amended Preliminary Report provided to Century also does not list any abstracts of judgment or judgment liens. **Ex. 1** (State Court Complaint), ¶ 26; **Ex. 5** (State Court Answer), ¶ 26.

29. Renzulli filed notice of entry of the Judgment on March 28, 2024 ("Notice of Entry"). **Ex. 1** (State Court Complaint), ¶ 27, and Ex. 5 thereto (Notice of Entry); **Ex. 5** (State Court Answer), ¶ 27.

30. The record reflects that Notice of Entry was served on counsel for TPC, Mr. Phair, and others on March 28, 2024. **Ex. 1** (State Court Complaint), ¶ 28, and Ex. 6 thereto (POS Notice of Entry); **Ex. 5** (State Court Answer), ¶ 28.

31. The record also reflects that on March 29, 2024, an abstract of the Judgment was issued (the "Abstract"). The Abstract was recorded on April 2, 2024 as Document No. 2024-0079649 of Official Records. **Ex. 1** (State Court Complaint), ¶ 29, and Ex. 7 thereto (Abstract); **Ex. 5** (State Court Answer), ¶ 29.

32. The Abstract identifies "The Phair Company LLC" as a judgment debtor. **Ex. 1** (State Court Complaint), ¶ 30; **Ex. 5** (State Court Answer), ¶ 30.

33. At the time of the escrow for the sale of the Properties, title to the Properties was vested in "The Phair Company LLC." The grant deed vesting title in "The Phair Company LLC" was recorded March 16, 2023 as Document No. 2023-00667587 of Official Records ("The Phair Company LLC Grant Deed"). **Ex. 1** (State Court Complaint), ¶ 31, and Ex. 8 thereto (The Phair Company LLC Grant Deed); **Ex. 5** (State Court Answer), ¶ 31.

34. TPC admits that at no time prior to the close of escrow for the Properties did Mr. Phair, TPC, or anyone acting on TPC's behalf, disclose that any actions, suits or proceedings were pending or threatened before any court or arbitration tribunal that would affect the Properties or the right or ability of an owner to convey, occupy or utilize the Properties. **Ex. 1** (State Court Complaint), ¶ 32; **Ex. 5** (State Court Answer), ¶ 32.

35. At no time prior to the close of escrow for the Properties did Mr. Phair, TPC, or anyone acting on TPC's behalf disclose the existence of the Judgment or the Abstract. **Ex. 1** (State Court Complaint), ¶ 33.

36. The San Diego Recorder's Office did not index the Abstract in the name of the owner who held title to the Properties. It did not index the Abstract in the name of the grantor, "The Phair Company LLC." **Ex. 1** (State Court Complaint), ¶ 34.

37. AHLC and Century did not have actual knowledge of the Judgment or the Abstract at any time prior to the close of escrow for the Properties. **Ex. 1** (State Court Complaint), ¶ 35.

38. AHLC and Century did not have constructive knowledge of the Judgment or the Abstract at any time prior to the close of escrow for the Properties. **Ex. 1** (State Court Complaint), ¶ 36.

39. On July 1, 2024, Mr. Phair signed a grant deed as the Manager of TPC conveying the Properties to AHLC (the "TPC Grant Deed"). Escrow closed and the TPC Grant Deed was recorded on July 3, 2024 as Document No. 2024-0168282 of Official Records. **Ex. 1** (State Court Complaint), ¶ 37, and Ex. 9 thereto (TPC Grant Deed); **Ex. 5** (State Court Answer), ¶ 37.

40. Prior to the close of escrow, AHLC signed a promissory note in the amount of $6,390,000.00 payable to Century in connection with the purchase money loan that Century made to AHLC to purchase the Properties (the "Century Loan"). **Ex. 1** (State Court Complaint), ¶ 38.

41. Prior to the close of escrow, AHLC signed a deed of trust in favor of Century securing repayment of the Century Loan with the Properties (the "Century DOT"). The Century DOT was recorded on July 3, 2024 as Document Number 2024-0168283 of Official Records. **Ex. 1** (State Court Complaint), ¶ 39, and Ex. 10 thereto (Century DOT); **Ex. 5** (State Court Answer), ¶ 39.

42. AHLC and Century deposited a total of $8,270,779.18 into escrow to purchase the Properties from TPC. **Ex. 1** (State Court Complaint), ¶ 40, and Ex. 11 thereto (Settlement Statement); **Ex. 5** (State Court Answer), ¶ 40.

43. Proceeds of the Century Loan were used to pay off pre-existing liens and encumbrances against the Properties. The record reflects that proceeds of the Century Loan were used to pay off the remaining obligation secured by the $1,999,000.00 Conrad DOT. In connection with the close of escrow for the Properties a full reconveyance releasing the lien of the Conrad DOT was recorded as Document Number 2024-0168284 of Official Records (the "Full Reconveyance"). **Ex. 1** (State Court Complaint), ¶ 41, and Ex. 12 thereto (Full Reconveyance); **Ex. 5** (State Court

Answer), ¶ 41.

44. On August 5, 2024, Renzulli recorded two notices of levy related to the Properties (the "Notices of Levy"). The Notices of Levy were recorded as Document Numbers 2024-0206865 and 2024-0206886, respectively. Renzulli seeks to enforce the Judgment and the Abstract as a lien against the Properties. **Ex. 1** (State Court Complaint), ¶ 42, and Exs. 13 & 14 thereto (Notices of Levy); **Ex. 5** (State Court Answer), ¶ 42.

45. On information and belief Renzulli claims that the amount TPC and the other judgment debtors owe to satisfy the Judgment and the amount of the Abstract as reflected on the Notices of Levy is $3,529,873.07 as of August 5, 2024 and that per diem interest thereon accrues at $956.01. **Ex. 1** (State Court Complaint), ¶ 42; **Ex. 5** (State Court Answer), ¶ 42.

46. Having deposited $8,270,779.18 into escrow to purchase the Properties from TPC, even after the payment of the obligation secured by the Conrad DOT, the net proceeds paid to TPC at close of escrow were more than sufficient to satisfy the Judgment. **Ex. 1** (State Court Complaint), ¶ 43.

47. On September 6, 2024, counsel for AHLC and Century demanded that TPC and Mr. Phair immediately pay the Judgment and immediately secure an acknowledgment and satisfaction in full of the Judgment. **Ex. 1** (State Court Complaint), ¶ 44; **Ex. 5** (State Court Answer), ¶ 44.

48. However, TPC and Mr. Phair have failed to pay the Judgment and have not secured an acknowledgement and satisfaction of the Judgment. **Ex. 1** (State Court Complaint), ¶ 44; **Ex. 5** (State Court Answer), ¶ 44.

## FIRST CAUSE OF ACTION

## NON-DISCHARGEABILITY OF DAMAGES BASED ON CONCEALMENT

49. AHLC and Century reallege and incorporate by this reference paragraphs 1 through 48, inclusive, as though set forth in full at this point.

50. TPC and Mr. Phair had a duty to disclose material facts affecting the value and desirability of the Properties. **Ex. 1** (State Court Complaint), ¶ 100.

51. TPC and Mr. Phair ventured to speak. TPC and Mr. Phair admit that they represented they had no actual knowledge of any actions, suits or proceedings pending or threatened before any

court, arbitration, or otherwise that would affect the Properties. **Ex. 1** (State Court Complaint), ¶ 101; **Ex. 5** (State Court Answer), ¶ 78.

52. TPC and Mr. Phair did not speak the full truth. **Ex. 1** (State Court Complaint), ¶ 102.

53. The representations made by TPC and Mr. Phair were misleading and incomplete. **Ex. 1** (State Court Complaint), ¶ 103.

54. TPC and Mr. Phair failed to state facts to materially qualify the representations that they made. **Ex. 1** (State Court Complaint), ¶ 104.

55. TPC and Mr. Phair failed to disclose facts known to them that affected the truth and accuracy of the representations they made. TPC and Mr. Phair knew that their representations were false **Ex. 1** (State Court Complaint), ¶ 105.

56. TPC and Mr. Phair admit the Judgment against TPC was entered, and the Abstract was recorded, all prior to the close of escrow for the Properties. **Ex. 1** (State Court Complaint), ¶ 106; **Ex. 5** (State Court Answer), ¶ 83.

57. AHLC and Century did not know of these facts that TPC and Mr. Phair concealed and failed to fully disclose them to AHLC prior to the close of escrow for the Properties. **Ex. 1** (State Court Complaint), ¶ 107.

58. TPC and Mr. Phair made these representations to induce AHLC to rely upon them and purchase the Properties. The representations by TPC and Mr. Phair were motivated by an intent to deceive AHLC and Century. **Ex. 1** (State Court Complaint), ¶ 108.

59. AHLC relied on the representations that TPC and Mr. Phair made and purchased the Properties. **Ex. 1** (State Court Complaint), ¶ 109.

60. Had the facts that TPC and Mr. Phair concealed and failed to fully disclose to AHLC prior to the close of escrow had been disclosed, the Judgment would have been fully satisfied from the funds that AHLC and Century deposited into escrow or the sale would not have closed. **Ex. 1** (State Court Complaint), ¶ 110.

61. There were more than enough proceeds from AHLC and Century that were disbursed to allow TPC and Mr. Phair to satisfy the Judgment in full. Instead of honoring the obligation to pay

the Judgment and deliver the Properties to AHLC lien free, TPC and Mr. Phair disbursed the proceeds from the sale of the Properties to others. **Ex. 1** (State Court Complaint), ¶ 111.

62. AHLC has been and is continuing to be harmed. **Ex. 1** (State Court Complaint), ¶ 112.

63. The concealment and failure to fully disclose by TPC and Mr. Phair is the proximate cause of AHLC's harm. **Ex. 1** (State Court Complaint), ¶ 113.

64. On information and belief, TPC and Mr. Phair intentionally concealed these material facts from AHLC. TPC and Mr. Phair intended to cause injury or deprive AHLC of its rights. TPC and Mr. Phair acted with fraud, oppression, or malice sufficient to justify an award of exemplary damages. **Ex. 1** (State Court Complaint), ¶ 114.

## PRAYER FOR RELIEF

**WHEREFORE** AHLC and Century pray for judgment as follows:

1. For general and special damages in an amount according to proof in excess of $3,529,873.07 as of August 5, 2024 with per diem interest thereon at $956.01 from and after that date;

2. For an award of exemplary damages;

3. For a judgment determining that AHLC and Century's damages based their concealment cause of action in the State Court Complaint against Mr. Phair is non-dischargeable;

4. For temporary, preliminary, and permanent injunctive relief;

5. For costs of suit; and

6. For any such other and further relief as the Court may deem just and proper.

PARKER & RIGGS LLP

Dated: June 2, 2025

By: ___/s/ David M. Parker, Esq. ______________
David M. Parker, Esq.
Gregory L. Riggs, Esq.
Attorneys for Creditors Affordable Housing Land Consultants, LLC and Century Housing Corporation

# CERTIFICATE OF SERVICE

**In re: THE PHAIR COMPANY LLC, Debtor and Debtor-in-Possession**
**Case No. 25-00667-JBM11**

I, the undersigned, hereby certify that I am a citizen of the United States and am at least eighteen years of age. I am employed in the County of San Diego, State of California, and am not a party to the above-entitled action. My business address is 110 West A Street, Suite 615, San Diego, California 92101.

On June 2, 2025, I served a true copy of the following document(s):

1. **COMPLAINT TO ESTABLISH VALIDITY AND AMOUNTS, AND DETERMINE CERTAIN DEBTS OF DEBTOR TO BE NONDISCHARGEABLE**

I electronically filed the document(s) with the Clerk of Court, using the Court's CM/ECF Electronic Filing System, which will generate and serve a Notice of Electronic Filing (NEF) to the parties and registered CM/ECF users in the case. Under said practice, all parties to this case have been served electronically. Also, I further certify that I have mailed the foregoing document via the United States Postal Service to any non-CM/ECF participants indicated in the Manual Notice List.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on June 2, 2025, at San Diego, California.

/s/ David M. Parker, Esq.

# EXHIBIT 1

David M. Parker, Esq. (SBN 211078)
Gregory L. Riggs, Esq. (SBN 314022)
**PARKER & RIGGS LLP**
110 West A Street, Suite 615
San Diego, California 92101
Telephone: (619) 233-8292
Facsimile: (619) 233-8636
DParker@ParkerRiggs.com
GRiggs@ParkerRiggs.com

Attorneys for Affordable Housing Land Consultants, LLC and Century Housing Corporation

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
11/1/2024 4:19:54 PM
Clerk of the Superior Court
By M. Estrada ,Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO – CENTRAL DIVISION**

AFFORDABLE HOUSING LAND CONSULTANTS, LLC, a California Limited Liability Company; and CENTURY HOUSING CORPORATION, a California Nonprofit Corporation;

Plaintiffs,

v.

RENZULLI PROPERTIES LLC, a California Limited Liability Company;
THE PHAIR COMPANY LLC, a California Limited Liability Company;
JEFFREY D. PHAIR, an individual
ALL PERSONS UNKNOWN CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN OR TO THE REAL PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' INTERESTS, OR ANY CLOUD UPON PLAINTIFFS' TITLE THERETO; and
DOES 1 through 50, inclusive,

Defendants.

Case No. 24CL020598C

**VERIFIED COMPLAINT FOR**

1) **QUIET TITLE;**
2) **CANCELLATION;**
3) **EQUITABLE SUBROGATION;**
4) **DECLARATORY RELIEF;**
5) **BREACH OF DEED COVENANTS;**
6) **NEGLIGENCE;**
7) **NEGLIGENT MISREPRESENTATION;**
8) **CONCEALMENT;**

Plaintiffs Affordable Housing Land Consultants, LLC ("AHLC") and Century Housing Corporation ("Century") allege as follows:

**THE PARTIES & NATURE OF THE CASE**

1. AHLC is, and at all times relevant herein was, a California Limited Liability

Case 25-90069-JBM Filed 07/03/25 Entered 07/03/25 13:17:29 Doc 1 Pg. 5 of 209

Company doing business in the County of San Diego, State of California.

2. Century is, and at all times relevant herein was, a California Nonprofit Corporation doing business in the County of San Diego, State of California.

3. AHLC has a history of successfully acquiring and constructing housing projects that are reserved for low-income households. Century has been the lender in connection with a number of AHLC's low-income housing projects. AHLC has extensive experience in acquiring development sites and cost-effectively building low-income family housing without the need for additional subsidies beyond federal low-income housing tax credits and tax-exempt bonds.

4. As discussed below, AHLC as owner and developer acquired the properties that are the subject of this action in early July of 2024. Century made the loan for the acquisition of the properties. AHLC acquired the properties for the development of a 380-unit low-income housing project serving families whose earnings are below the area median income. The project is called the "Trolley Stop Apartments" because the subject properties are located across from a major transit center. Residents will have convenient access to job opportunities, amenities, and services throughout the City of San Diego. The City of San Diego has prioritized transit-oriented affordable housing projects like the Trolley Stop Apartments within its long-term community plans. Once constructed, the 380-unit Trolley Stop Apartments will have 190 studios, 113 one-bedroom, and 77 two-bedroom units.

5. AHLC and Century are informed and believe and thereon allege that defendant Renzulli Properties LLC ("Renzulli") is, and at all times relevant herein was, a California Limited Liability Company doing business in the County of San Diego, State of California.

6. AHLC and Century are informed and believe and thereon allege that defendant The Phair Company LLC ("TPC") is, and at all times relevant herein was, a California Limited Liability Company doing business in the County of San Diego, State of California.

7. AHLC and Century are informed and believe and thereon allege that defendant Jeffrey D. Phair ("Mr. Phair") is, and at all times relevant herein was, an individual residing in the County of San Diego, State of California.

8. AHLC and Century are informed and believe and thereon allege that the defendants

named herein as "[a]ll persons unknown claiming any legal or equitable right, title, estate, lien, or interest in or to the real property described in the complaint adverse to Plaintiffs' interests, or any cloud upon Plaintiffs' title thereto," (the "Unknown Defendants") are unknown to AHLC and Century, and AHLC and Century are informed and believe and thereon allege that these Unknown Defendants, and each of them, claim some right, title, estate, lien, or interest in or to the Property that is adverse to the interests of AHLC and Century therein. AHLC and Century will seek leave to amend this Complaint when the true names and capacities of said Unknown Defendants have been discovered. AHLC and Century are informed and believe and based thereon allege that all Unknown Defendants are in some manner responsible for the acts herein alleged.

9. The true names and capacities of the fictitiously-named defendants, DOES 1 through 50, inclusive, are unknown to AHLC and Century and they will seek leave to amend this Complaint to allege such names and capacities once they are ascertained.

10. AHLC and Century are informed and believe and thereon allege that at all times relevant herein, each of the defendants, including the Unknown Defendants and DOES 1 through 50, inclusive, were the sureties, principals, agents, and/or employees of each of the remaining Defendants and, in doing the things herein-alleged, were acting within the course and scope of such surety, principal, agency, and/or employment relationship.

11. AHLC and Century are informed and believe and thereon allege that at all times relevant herein, each of the defendants, including the Unknown Defendants and DOES 1 through 50, inclusive, conspired and agreed amongst themselves to act or fail to act in the manner complained of in this Complaint and were, by engaging in such conduct, acting pursuant to and in furtherance of said conspiracy. Each of the Defendants are jointly and severally responsible and liable to AHLC and Century for the damages alleged herein.

## JURISDICTION AND VENUE

12. This Court has jurisdiction over this action, and over the parties to this action, pursuant to Code of Civil Procedure § 760.040.

13. Venue is proper under Code of Civil Procedure § 760.050(a) in that the subject of this action is real property located within this judicial district.

## ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

14. This action involves title to two parcels of real property commonly known as 3145 and 3167 Beyer Boulevard, San Diego, CA 92154, identified by Assessor's Parcel Numbers 630-321-31-00 and APN 630-321-32-00, legally described as:

> PARCELS 1 AND 2 OF PARCEL MAP NO. 18000, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 26, 1998

(the "Properties").

15. On or about February 15, 2024, AHLC's assignor AMG & Associates, LLC ("AMG") presented an offer to TPC to purchase the Properties for $7,100,000 pursuant to a standard offer, agreement and escrow instructions for the purchase of real estate (the "PSA"). TPC's principal Mr. Phair agreed to sell the Properties for the agreed-upon price and signed the PSA on behalf of TPC on or about the same date.

16. On or about February 26, 2024, the parties opened an escrow and signed escrow instructions for the sale of the Properties with Chicago Title Company with escrow to close on or before June 1, 2024 (the "Escrow Instructions").

17. Paragraph 17 of the Escrow Instructions is entitled "ENCUMBRANCES" and provides in pertinent part:

> You are authorized, without the need for further approval, to debit my account for any fees and charges that I have agreed to pay in connection with this escrow, and for any amounts that I am obligated to pay to the holder of any lien or encumbrance to establish the title as insured by the policy of title insurance called for in these instructions. If for any reason my account is not debited for such amounts at the time of closing, I agree to pay them immediately upon demand, or to reimburse any other person or entity who has paid them.

18. Prior to the close of escrow, TPC provided a property information sheet (the "Property Disclosure"). The Property disclosure states at Paragraph 9:

> **Actions, Suits or Proceedings**. Owner has no actual knowledge that any actions, suits or proceedings are pending or threatened before any court, arbitration tribunal, governmental department, commission, board, bureau, agency or instrumentality that would affect the Property or the right or ability of an owner or tenant to convey, occupy or utilize the Property, except (if there are no exceptions write "NONE"): <u>None</u>.

19. During escrow, AHLC received a preliminary report with an effective date of

February 9, 2024 (the "Preliminary Report"). The Preliminary Report reflects that title to the Properties was vested in THE PHAIR COMPANY LLC, a California limited liability company. A true and correct copy of the Preliminary Report is attached hereto as **Ex. 1**.

20. The Preliminary Report does not list any abstracts of judgment or judgment liens.

21. As far as other encumbrances are concerned, the Preliminary Report lists a deed of trust to secure an indebtedness in the amount of $1,999,000.00 granted by TPC to Robert and Daryl Conrad et al. (the "Conrad DOT") The Conrad DOT was recorded March 16, 2023 as Document No. 2023-0066759 of Official Records A true and correct copy of the Conrad DOT is attached hereto as **Ex. 2.**

22. Prior to the close of escrow, AMG assigned the PSA to AHLC.

23. On March 22, 2024 a judgment was entered in the case of *Jeff Phair et al. v. Renzulli Properties, LLC*, San Diego Superior Court Case No. 37-2022-00046736 (the "Judgment"). The Court entered Judgment in favor of Renzulli and against Mr. Phair, TPC and Green Phair Scripps Partners, LLC jointly and severally for $3,489,438.60. A true and correct copy of the Judgment is attached hereto as **Ex. 3**.

24. AHLC deposited $1,875,773.50 of its funds into escrow prior to closing. It also obtained a loan from Century in the amount of $6,390,000.00 to buy the Properties.

25. On or about March 25, 2024 Century obtained an amended preliminary report (the "First Amended Preliminary Report"). A true and correct copy of the First Amended Preliminary Report is attached hereto as **Ex. 4.**

26. Like the Preliminary Report provided to AHLC, the First Amended Preliminary Report provided to Century also does not list any abstracts of judgment or judgment liens.

27. Renzulli filed notice of entry of the Judgment on March 28, 2024 ("Notice of Entry"). A true and correct copy of Notice of Entry filed with the Judgment as entered is attached hereto as **Ex. 5**.

28. The record reflects that Notice of Entry was served on counsel for TPC, Mr. Phair, and others on March 28, 2024. A true and correct copy of the proof of service of Notice of Entry is attached hereto as **Ex. 6**.

29. The record also reflects that on March 29, 2024, an abstract of the Judgment was issued (the "Abstract"). The Abstract was recorded on April 2, 2024 as Document No. 2024-0079649 of Official Records. A true and correct copy of the Abstract is attached hereto as **Ex. 7**.

30. The Abstract identifies "The Phair Company LLC" as a judgment debtor.

31. At the time of the escrow for the sale of the Properties, title to the Properties was vested in "The Phair Company LLC." The grant deed vesting title in "The Phair Company LLC" was recorded March 16, 2023 as Document No. 2023-00667587 of Official Records ("The Phair Company LLC Grant Deed"). A true and correct copy of The Phair Company LLC Grant Deed is attached hereto as **Ex. 8**.

32. At no time prior to the close of escrow for the Properties did Mr. Phair, TPC, or anyone acting on TPC's behalf, disclose that any actions, suits or proceedings were pending or threatened before any court or arbitration tribunal that would affect the Properties or the right or ability of an owner to convey, occupy or utilize the Properties.

33. At no time prior to the close of escrow for the Properties did Mr. Phair, TPC, or anyone acting on TPC's behalf disclose the existence of the Judgment or the Abstract.

34. AHLC and Century are informed and believe and thereon allege that the San Diego Recorder's Office did not index the Abstract in the name of the owner who held title to the Properties. It did not index the Abstract in the name of the grantor, "The Phair Company LLC."

35. AHLC and Century did not have actual knowledge of the Judgment or the Abstract at any time prior to the close of escrow for the Properties.

36. AHLC and Century did not have constructive knowledge of the Judgment or the Abstract at any time prior to the close of escrow for the Properties.

37. On July 1, 2024, Mr. Phair signed a grant deed as the Manager of TPC conveying the Properties to AHLC (the "TPC Grant Deed"). Escrow closed and the TPC Grant Deed was recorded on July 3, 2024 as Document No. 2024-0168282 of Official Records. A true and correct copy of the TPC Grant Deed is attached hereto as **Ex. 9**.

38. Prior to the close of escrow, AHLC signed a promissory note in the amount of $6,390,000.00 payable to Century in connection with the purchase money loan that Century made

to AHLC to purchase the Properties (the "Century Loan").

39. Prior to the close of escrow, AHLC signed a deed of trust in favor of Century securing repayment of the Century Loan with the Properties (the "Century DOT"). The Century DOT was recorded on July 3, 2024 as Document Number 2024-0168283 of Official Records. A true and correct copy of the Century DOT is attached hereto as **Ex. 10**.

40. AHLC and Century deposited a total of $8,270,779.18 into escrow to purchase the Properties from TPC. A true and correct copy of the final settlement statement dated July 3, 2024 is attached hereto as **Ex. 11**.

41. Proceeds of the Century Loan were used to pay off pre-existing liens and encumbrances against the Properties. The record reflects that proceeds of the Century Loan were used to pay off the remaining obligation secured by the $1,999,000.00 Conrad DOT. In connection with the close of escrow for the Properties a full reconveyance releasing the lien of the Conrad DOT was recorded as Document Number 2024-0168284 of Official Records (the "Full Reconveyance"). A true and correct copy of the Full Reconveyance is attached hereto as **Ex. 12**.

42. On August 5, 2024, Renzulli recorded two notices of levy related to the Properties (the "Notices of Levy"). The Notices of Levy were recorded as Document Numbers 2024-0206865 and 2024-0206886, respectively. AHLC and Century are informed and believe and thereon allege that Renzulli seeks to enforce the Judgment and the Abstract as a lien against the Properties. True and correct copies of the Notices of Levy are attached hereto as **Ex. 13** and **Ex. 14**. AHLC and Century are informed and believe and thereon allege that Renzulli claims that the amount TPC and the other judgment debtors owe to satisfy the Judgment and the amount of the Abstract as reflected on the Notices of Levy is $3,529,873.07 as of August 5, 2024 and that per diem interest thereon accrues at $956.01.

43. Having deposited $8,270,779.18 into escrow to purchase the Properties from TPC, AHLC and Century are informed and believe and thereon allege that, even after the payment of the obligation secured by the Conrad DOT, the net proceeds paid to TPC at close of escrow were more than sufficient to satisfy the Judgment.

44. On September 6, 2024, counsel for AHLC and Century demanded that TPC and Mr.

Phair immediately pay the Judgment and immediately secure an acknowledgment and satisfaction in full of the Judgment. AHLC and Century are informed and believe and thereon allege that TPC and Mr. Phair have failed to pay the Judgment and have not secured an acknowledgement and satisfaction of the Judgment.

**FIRST CAUSE OF ACTION**

**Quiet Title – Against Renzulli,**

**Unknown Defendants, and Does 1 through 50, Inclusive**

45. AHLC and Century reallege and incorporate by this reference paragraphs 1 through 44, inclusive, as though set forth in full at this point.

46. The source of AHLC's title is the TPC Grant Deed. *See* **Ex. 9.**

47. The source of Century's title is the Century DOT. *See* **Ex. 10**.

48. AHLC gave value to acquire fee title to the Properties.

49. Century gave value to acquire its security interest in the Properties, the Century DOT.

50. At the time that AHLC acquired fee title to the Properties, it had no knowledge or notice of the Abstract. The Preliminary Report did not list the Abstract. At no time prior to the close of escrow did TPC disclose the existence of the Judgment or the Abstract.

51. At the time that Century acquired the Century DOT, it had no knowledge or notice of the Abstract. The First Amended Preliminary Report did not list the Abstract. At no time prior to the close of escrow did anyone disclose to Century the existence of the Judgment or the Abstract.

52. AHLC and Century are informed and believe and thereon allege that the Abstract is not properly indexed in the name of the previous grantor and owner of the Properties, "The Phair Company LLC." AHLC and Century are informed and believe and thereon allege that a properly conducted search of the grantor grantee index in the correct name of the previous owner of the Properties would not reflect the Abstract.

53. AHLC and Century are informed and believe and thereon allege that Renzulli, the Unknown Defendants and DOES 1 through 50, inclusive, claim some right, title, estate, lien, or interest in or to the Property, which is adverse to AHLC's and Century's title to the Property.

54. AHLC and Century are informed and believe that Renzulli contends that the Abstract

(**Ex. 7**) constitutes a lien that encumbers the Properties.

55. AHLC and Century are informed and believe that Renzulli contends that it can enforce the Judgment and Abstract by way of the Notices of Levy (**Exs. 13** and **14**) that it recorded involving the Properties.

56. AHLC is a bona fide purchaser. AHLC took fee title to the Properties free and clear of the Abstract.

57. Century is a bona fide encumbrancer. The Century DOT is a valid and enforceable deed of trust that encumbers the Properties in first-priority lien position. Century took its security interest in the Properties free and clear of the Abstract.

58. AHLC seeks to quiet title to its fee title interest in the Properties and Century seeks to quiet title to the Century DOT as a legally valid first priority deed of trust encumbering the Properties as against all claims of Renzulli, Does and Unknown Defendants that are adverse thereto. These claims are without any right, and Renzulli, Does and Unknown Defendants have no right, title, estate, lien, or interest in or to the Properties, or any part of them, that are adverse to or superior to AHLC's and Century's interests in title to the Properties.

59. AHLC and Century seek to quiet title to the Properties as of July 3, 2024, the date of recordation of the TPC Grant Deed and the Century DOT.

## SECOND CAUSE OF ACTION

### Cancellation of Instruments As To The Properties Only – Against Renzulli, Unknown Defendants, and Does 1 through 50, Inclusive

60. AHLC and Century reallege and incorporate by this reference paragraphs 1 through 59, inclusive, as though set forth in full at this point.

61. AHLC and Century are informed and believe and thereon allege that the Abstract (**Ex. 7**) and the Notices of Levy (**Ex. 13** and **Ex. 14)** are invalid and/or are unenforceable as against the Properties. The Abstract and the Notices of Levy cloud title to the Properties. Left outstanding, the Abstract and Notices of Levy are causing injury to both AHLC and Century.

62. AHLC and Century seek an order from this Court and judgment that the Abstract and Notices of Levy be declared invalid or unenforceable as against the Properties only and that they be

ordered and adjudicated to be cancelled as to the Properties only.

**THIRD CAUSE OF ACTION**

**Equitable Subrogation – Against Renzulli,**

**Unknown Defendants, and Does 1 through 50, Inclusive**

63. AHLC and Century reallege and incorporate by this reference paragraphs 1 through 62, inclusive, as though set forth in full at this point.

64. The proceeds of the Century Loan were used to pay off pre-existing encumbrances against the Properties.

65. AHLC and Century are informed and believe and thereon allege that the proceeds of the Century Loan were used to pay the $1,999,000.00 obligation secured by the Conrad DOT (**Ex. 2**).

66. Following the payoff of the obligation secured by the Conrad DOT with the proceeds of the Century Loan, the Full Reconveyance of the Conrad DOT was recorded (**Ex. 12**).

67. The proceeds of the Century Loan were used at close of escrow to pay the property taxes then due and owing.

68. Century has a fully valid and legally enforceable lien that encumbers the Properties in first-priority lien position. To the extent, if any, that Century's lien were determined not to be completely legally valid and enforceable, it nevertheless has a superior equitable lien by way of equitable subrogation. As a result of the payments by Century of the preexisting lien of the Conrad DOT, property taxes, and other charges associated with the Properties, in equity, Century has an equitable lien and has become equitably subrogated to the rights and positions of the creditors who were paid with the proceeds of the Century Loan.

69. Century stands in the shoes of these pre-existing creditors and is entitled to enforce those pre-existing obligations in the same amounts and on the same terms as if those obligations had never been satisfied.

70. Century is entitled to an equitable lien against the Properties in an amount not less than the sum of the pre-existing debts, taxes, and other charges associated with the Properties that were satisfied by the proceeds from the Century Loan, together with payment of principal, interest, costs,

charges and fees that would have otherwise been due on the obligations it satisfied, according to proof.

**FOURTH CAUSE OF ACTION**

**Declaratory Relief – Against All Defendants,**

71. AHLC and Century reallege and incorporate by this reference paragraphs 1 through 70, inclusive, as though set forth in full at this point.

72. An actual controversy has arisen and now exists between AHLC and Century on the one hand, and Renzulli, TPC, Unknown Defendants and Does 1-50 inclusive concerning their respective rights and duties involving their rights, title, and interests in and to the Properties.

73. AHLC and Century contend that AHLC is a bona fide purchaser and that Century is a bona fide encumbrancer.

74. AHLC and Century contend that they acquired the Properties free and clear of the Abstract.

75. AHLC and Century further contend that the Abstract and the Notices of Levy cloud title and are causing and will continue to cause injury and damage if left outstanding.

76. Century contends that it has a lien by way of equitable subrogation for its payment of the pre-existing liens, encumbrances, and charges against the Properties that Century paid. Century contends that this lien is prior and superior to the Abstract.

77. AHLC contends that TPC had a duty to deliver title free and clear of any encumbrances. AHLC contends that TPC breached that duty in that the Abstract was recorded prior to the close of escrow for the Properties.

78. AHLC contends that TPC had a duty to disclose all material facts that affected the value and desirability of the Properties. TPC represented that it had no actual knowledge of any actions, suits or proceedings pending or threatened before any court, arbitration, or otherwise that would affect the Property. The arbitration proceeding with Renzulli was pending, the Judgment against TPC was entered, and the Abstract was recorded, all prior to the close of escrow for the Properties. TPC did not disclose the arbitration proceeding, the Judgment, or the Abstract prior to the close of escrow for the Properties.

79. AHLC and Century are informed and believe and thereon allege that Renzulli, TPC, Unknown Defendants and Does 1-50 inclusive dispute these contentions.

**FIFTH CAUSE OF ACTION**

**Breach of the Covenant Against Encumbrances – Against The Phair Company and Does 1 through 50, Inclusive**

80. AHLC and Century reallege and incorporate by this reference paragraphs 1 through 79, inclusive, as though set forth in full at this point.

81. By the terms of the TPC Grant Deed (**Ex. 9**) TPC covenanted with AHLC that at the time of the execution of the TPC Grant Deed to AHLC the Properties were free and clear of all liens and encumbrances.

82. TPC breached the covenant against encumbrances because at the time of execution and delivery of the TPC Grant Deed to AHLC the Abstract (**Ex. 7**) had been placed of record.

83. AHLC has suffered damages because of TPC's breach of the covenant against encumbrances.

84. As long as the Abstract remains outstanding, AHLC will continue to sustain damages. AHLC is also entitled to recover costs, interest, and attorney's fees to compel removal of the encumbrance.

**SIXTH CAUSE OF ACTION**

**Negligence – Against The Phair Company, Mr. Phair and Does 1 through 50, Inclusive**

85. AHLC and Century reallege and incorporate by this reference paragraphs 1 through 84, inclusive, as though set forth in full at this point.

86. TPC and Mr. Phair had a duty to disclose all material facts that affected the value and desirability of the Properties. TPC and Mr. Phair represented that they had no actual knowledge of any actions, suits or proceedings are pending or threatened before any court, arbitration, or otherwise that would affect the Property. The arbitration proceeding with Renzulli was pending, the Judgment against TPC was entered, and the Abstract was recorded, all prior to the close of escrow for the Properties. TPC and Mr. Phair did not disclose the arbitration proceeding, the Judgment, or the

Abstract prior to the close of escrow for the Properties.

87. TPC and Mr. Phair breached their duty to disclose all material facts that affected the value and desirability of the Properties.

88. TPC and Mr. Phair did not disclose the arbitration proceeding, the Judgment, or the Abstract prior to the close of escrow for the Properties.

89. Renzulli seeks to enforce the Abstract against the Properties and has recorded the Notices of Levy which it seeks to enforce.

90. TPC's and Mr. Phair's breach of their duty of disclosure caused and continues to cause harm to AHLC.

91. AHLC has suffered and continues to suffer damage as a result of TPC's and Mr. Phair's breach.

**SEVENTH CAUSE OF ACTION**

**Negligent Misrepresentation – Against The Phair Company, Mr. Phair, and Does 1 through 50, Inclusive**

92. AHLC and Century reallege and incorporate by this reference paragraphs 1 through 91, inclusive, as though set forth in full at this point.

93. TPC and Mr. Phair represented that they had no actual knowledge of any actions, suits or proceedings are pending or threatened before any court, arbitration, or otherwise that would affect the Property.

94. These representations were not true. The arbitration proceeding with Renzulli was pending, the Judgment against TPC was entered, and the Abstract was recorded, all prior to the close of escrow for the Properties.

95. By the time of the close of escrow for the Properties, TPC and Mr. Phair had no reasonable grounds to believe that these representations were true.

96. AHLC reasonably relied on the representations of TPC and Mr. Phair.

97. AHLC was harmed.

98. AHLC's reliance on TPC's and Mr. Phair's representations was a substantial factor in causing harm to AHLC.

**EIGHTH CAUSE OF ACTION**

**Concealment – Against The Phair Company, Mr. Phair, and Does 1 through 50, Inclusive**

99. AHLC and Century reallege and incorporate by this reference paragraphs 1 through 98, inclusive, as though set forth in full at this point.

100. TPC and Mr. Phair had a duty to disclose material facts affecting the value and desirability of the Properties.

101. TPC and Mr. Phair ventured to speak. TPC and Mr. Phair represented that they had no actual knowledge of any actions, suits or proceedings pending or threatened before any court, arbitration, or otherwise that would affect the Property.

102. TPC and Mr. Phair did not speak the full truth.

103. The representations made by TPC and Mr. Phair were misleading and incomplete.

104. TPC and Mr. Phair failed to state facts to materially qualify the representations that they made.

105. TPC and Mr. Phair failed to disclose facts known to them that affected the truth and accuracy of the representations they made.

106. The arbitration proceeding with Renzulli was pending, the Judgment against TPC was entered, and the Abstract was recorded, all prior to the close of escrow for the Properties.

107. AHLC did not know of these facts that TPC and Mr. Phair concealed and failed to fully disclose to AHLC prior to the close of escrow for the Properties.

108. TPC and Mr. Phair made these representations to induce AHLC to rely upon them and purchase the Properties.

109. AHLC relied on the representations that TPC and Jeffey Phair made and purchased the Properties.

110. Had the facts that TPC and Mr. Phair concealed and failed to fully disclose to AHLC prior to the close of escrow been disclosed, the Judgment would have been fully satisfied from the funds that AHLC and Century deposited into escrow or the sale would not have closed.

111. There were more than enough proceeds from AHLC and Century that were disbursed

to allow TPC and Mr. Phair to satisfy the Judgment in full. Instead of honoring the obligation to pay the Judgment and deliver the Properties to AHLC lien free, TPC and Phair disbursed the proceeds from the sale of the Properties to others.

112. AHLC has been and is continuing to be harmed.

113. The concealment and failure to fully disclose by TPC and Mr. Phair was a substantial factor in causing AHLC's harm.

114. AHLC is informed and believes and thereon alleges that TPC and Mr. Phair intentionally concealed these material facts from AHLC. AHLC is informed and believes and thereon alleges that TPC and Mr. Phair intended to cause injury or deprive AHLC of its rights. AHLC is further informed and believes and thereon alleges that TPC and Mr. Phair acted with fraud, oppression, or malice sufficient to justify an award of exemplary damages.

**PRAYER FOR RELIEF**

**WHEREFORE** AHLC and Century pray for judgment as follows:

**On the First Cause of Action for Quiet Title:**

1. For a judgment determining that AHLC is the owner of fee title to the Properties free and clear of any adverse claims in and to title to the Properties by Renzulli, Does, and Unknown Defendants;

2. For a judgment determining that the Century DOT is a valid and enforceable first priority lien against the Properties free and clear of any adverse claims in and to title to the Properties or claims to priority by Renzulli, Does, and Unknown Defendants;

3. For a judgment quieting title to the Properties and the parties' respective interests in and to title to the Property as of July 3, 2024, the date of recordation of the TPC Grant Deed and the Century DOT;

**On the Second Cause of Action for Cancellation:**

1. For an order from this Court and judgment that the Abstract and Notices of Levy be declared invalid or unenforceable as against the Properties and that they be ordered and adjudicated to be cancelled as to the Properties only;

/ / /

**On the Third Cause of Action for Equitable Subrogation:**

1. For an adjudication that Century is equitably subrogated to the rights of the pre-existing creditors whose debts were paid with Century's funds on the same terms and in the same amounts to which pre-existing creditors would have been entitled had such debts not been paid;

**On the Fourth Cause of Action for Declaratory Relief**

1. For a judicial determination of the rights and duties of the parties and an order adjusting the equities between them;

2. For a declaration that AHLC owns fee title and that Century has a valid first priority lien against the Properties, free and clear of any claims to the contrary by Renzulli, TPC, Unknown Defendants and Does 1 through50 inclusive, or any of them;

3. For damages according to proof;

**On the Fifth Cause of Action for Breach of the Deed Covenants:**

1. For damages in the amount of $3,529,873.07 as of August 5, 2024 with per diem interest thereon at $956.01 from and after that date;

2. For all costs, interest, and attorney's fees to compel removal of the encumbrance;

3. For pre-judgment and post-judgment interest;

**On the Sixth Cause of Action for Negligence:**

1. For reasonable damages for the harm caused by TPC's negligence in an amount according to proof in excess of $3,529,873.07 as of August 5, 2024 with per diem interest thereon at $956.01 from and after that date;

**On the Seventh Cause of Action for Negligent Misrepresentation**

1. For reasonable damages for the harm caused by TPC's negligence in an amount according to proof in excess of $3,529,873.07 as of August 5, 2024 with per diem interest thereon at $956.01 from and after that date;

**On the Eighth Cause of Action for Concealment**

1. For general and special damages in an amount according to proof in excess of $3,529,873.07 as of August 5, 2024 with per diem interest thereon at $956.01 from and after that date;

2. For an award of exemplary damages;

**On All Causes of Action:**

1. For temporary, preliminary, and permanent injunctive relief;
2. For costs of suit; and
3. For any such other and further relief as the Court may deem just and proper.

PARKER & RIGGS LLP

Dated: November 1, 2024

By: ______________________________
David M. Parker, Esq.
Gregory L. Riggs, Esq.
Attorneys for Plaintiffs Affordable Housing Land Consultants, LLC and Century Housing Corporation

## VERIFICATION

I, Alexis Gevorgian, declare:

I am a representative of Affordable Housing Land Consultants, LLC ("AHLC"), a plaintiff in this action, and am authorized to sign this verification on its behalf. I have read the foregoing verified complaint, and I know its contents. The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated therein on information and belief, and as to those matters, I believe them to be true. I have made reasonable efforts to review relevant documents, records and information possessed by or known to AHLC and its officers and employees; and based on such review, I believe the facts stated herein are true and correct.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this verification is executed this 31 day of Oct, 2024, at LA [city], CA [state].

______________________________
Alexis Gevorgian

## VERIFICATION

I, Joshua Hamilton, declare:

I am a representative of Century Housing Corporation ("Century"), a plaintiff in this action, and am authorized to sign this verification on its behalf. I have read the foregoing verified complaint, and I know its contents. The matters stated in the foregoing document are true of my own knowledge, except as to those matters which are stated therein on information and belief, and as to those matters, I believe them to be true. I have made reasonable efforts to review relevant documents, records and information possessed by or known to Century and its officers and employees; and based on such review, I believe the facts stated herein are true and correct.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this verification is executed this 1st day of November 2024, at Culver City [city], California [state].

Joshua Hamilton

Case 25-90067-JBM Filed 07/02/25 Entered 07/02/25 13:07:58 Doc 6 Pg. 3 of 209

# EXHIBIT 1

# Chicago Title Company

2365 Northside Drive, Suite 600, San Diego, CA 92108
Phone: (619) 521-3500 ● Fax: (619) 521-3608

Issuing Policies of Chicago Title Insurance Company

ORDER NO.: **00204793-CFU**

Chicago Title Company
2365 Northside Drive, Suite 600
San Diego, CA 92108
ATTN: Marshall-Lamphiere Unit
Email: MARSHALLUNIT@CTT.COM

Main Office Line: **(619) 233-3000**

Title Officer: Ken Cyr & Mark Franklin - U-50
Title Officer Phone: (619) 521-3673
Title Officer Fax: (619) 521-3608
Title Officer Email: TeamCyrFranklin@ctt.com

PROPERTY: **3145 & 3167 BEYER BOULEVARD, SAN DIEGO, CA 92154**

## PRELIMINARY REPORT

*In response to the application for a policy of title insurance referenced herein,* ***Chicago Title Company*** *hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Chicago Title Insurance Company, a* Florida *corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

Chicago Title Company

By:
Authorized Signature

CHICAGO TITLE INSURANCE COMPANY CORPORATE SEAL

By:
Michael J. Nolan
President

ATTEST:
Marjorie Nemzura
Secretary

**Chicago Title Company**

2365 Northside Drive, Suite 600, San Diego, CA 92108
Phone: (619) 521-3500 ● Fax: (619) 521-3608

# PRELIMINARY REPORT

---

**EFFECTIVE DATE:** **February 9, 2024 at 7:30 a.m.**

**ORDER NO.: 00204793**

The form of policy or policies of title insurance contemplated by this report is:

**ALTA Standard Owner's Policy (6-17-06)**
**ALTA Extended Loan Policy (6-17-06)**
**ALTA Standard Loan Policy (6-17-06)**

1. THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

   **A FEE**

2. TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

   **THE PHAIR COMPANY LLC, a California limited liability company**

3. THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

   **See Exhibit A attached hereto and made a part hereof.**

## EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN DIEGO, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCELS 1 AND 2 OF PARCEL MAP NO. 18000, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 26, 1998.

APN 630-321-31-00; APN 630-321-32-00

# EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

A. Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2024-2025.

B. Property taxes, including any personal property taxes and any assessments collected with taxes, are as follows:

| | |
|---|---|
| Tax Identification No.: | 630-321-31-00 |
| Fiscal Year: | 2023-2024 |
| 1st Installment: | $311.10, PAID |
| 2nd Installment: | $311.10, OPEN (Delinquent after April 10) |
| Penalty and Cost: | $41.11 |
| Homeowners Exemption: | $0.00 |
| Code Area: | 08035 |

Property taxes, including any personal property taxes and any assessments collected with taxes, are as follows:

| | |
|---|---|
| Tax Identification No.: | 630-321-32-00 |
| Fiscal Year: | 2023-2024 |
| 1st Installment: | $199.96, PAID |
| 2nd Installment: | $199.96, OPEN (Delinquent after April 10) |
| Penalty and Cost: | $29.99 |
| Homeowners Exemption: | $0.00 |
| Code Area: | 08035 |

C. The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

1. Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | San Diego Gas & Electric Company |
| Purpose: | Public utilities, ingress, and egress |
| Recording Date: | April 27, 1951 |
| Recording No: | Book 4076, Page 292 of Official Records |
| Affects: | A portion of said land as more particularly described in said document |

2. Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | San Diego Gas & Electric Company |
| Purpose: | Public utilities, ingress, and egress |
| Recording Date: | May 18, 1951 |
| Recording No: | Book 4104, Page 311 of Official Records |
| Affects: | A portion of said land as more particularly described in said document |

Case 25-90669-JBM11 Filed 07/03/25 Entered 07/03/25 13:18:29 Doc 1 Pg. 38 of 209



## EXCEPTIONS
## (Continued)

3. Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | San Diego Gas & Electric Company |
| Purpose: | Public utilities, ingress, and egress |
| Recording Date: | May 23, 1952 |
| Recording No: | Book 4476, Page 456 of Official Records |
| Affects: | A portion of said land as more particularly described in said document |

4. A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $1,999,000.00 |
| Dated: | March 17, 2023 |
| Trustor/Grantor: | The Phair Company LLC |
| Trustee: | Chicago Title Company, a California Corporation |
| Beneficiary: | Robert N. Conrad and Daryl Lyne Conrad, as Co-trustees of The Victor Cherniak Trust dated August 27, 1993, as restated and amended, and Robert N. Conrad and Daryl Lyne Conrad, Co-Trustees under Trust “B” of the Cherniak Family Trust dated April 3, 1990 |
| Recording Date: | April 16, 2023 |
| Recording No: | 2023-0066759 of Official Records |

5. Water rights, claims or title to water, whether or not disclosed by the public records.

6. Matters which may be disclosed by an inspection and/or by a correct ALTA/NSPS Land Title Survey of said Land that is satisfactory to the Company, and/or by inquiry of the parties in possession thereof.

7. Any rights of the parties in possession of a portion of, or all of, said Land, which rights are not disclosed by the public records.

   The Company will require, for review, a full and complete copy of any unrecorded agreement, contract, license and/or lease, together with all supplements, assignments and amendments thereto, before issuing any policy of title insurance without excepting this item from coverage.

   The Company reserves the right to except additional items and/or make additional requirements after reviewing said documents.

**PLEASE REFER TO THE “INFORMATIONAL NOTES” AND “REQUIREMENTS” SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

---

**END OF EXCEPTIONS**

---

## REQUIREMENTS SECTION

1. The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below:

   Limited Liability Company: The Phair Company LLC, a California limited liability company

   a) A copy of its operating agreement, if any, and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member.

   b) If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendments thereto with the appropriate filing stamps.

   c) If the Limited Liability Company is member-managed, a full and complete current list of members certified by the appropriate manager or member.

   d) A current dated certificate of good standing from the proper governmental authority of the state in which the entity is currently domiciled.

   e) If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

   f) If Limited Liability Company is a Single Member Entity, a Statement of Information for the Single Member will be required.

   g) Each member and manager of the LLC without an Operating Agreement must execute in the presence of a notary public the Certificate of California LLC (Without an Operating Agreement) Status and Authority form.

---

**END OF REQUIREMENTS**

---

# INFORMATIONAL NOTES SECTION

1. None of the items shown in this report will cause the Company to decline to attach ALTA Endorsement Form 9 to an Extended Coverage Loan Policy, when issued.

2. The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land Commercial properties, known as 3145 & 3167 Beyer Boulevard, located within the city of San Diego, California, 92154, to an Extended Coverage Loan Policy.

3. The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance coverage.

4. Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

5. Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

6. The following Exclusion(s) are added to preliminary reports, commitments and will be included as an endorsement in the following policies:

   A. 2006 ALTA Owner's Policy (06-17-06).

      6. Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

   B. 2006 ALTA Loan Policy (06-17-06).

      8. Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

      9. Any claim of invalidity, unenforceability, or lack of priority of the lien of the Insured Mortgage based on the application of a Tribe's law resulting from the failure of the Insured Mortgage to specify State law as the governing law with respect to the lien of the Insured Mortgage.

   C. ALTA Homeowner's Policy of Title Insurance (12-02-13) and CLTA Homeowner's Policy of Title Insurance (12-02-13).

      10. Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

   D. ALTA Expanded Coverage Residential Loan Policy - Assessments Priority (04-02-15).

      12. Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

      13. Any claim of invalidity, unenforceability, or lack of priority of the lien of the Insured Mortgage based on the application of a Tribe's law resulting from the failure of the

## INFORMATIONAL NOTES
## (Continued)

Insured Mortgage to specify State law as the governing law with respect to the lien of the Insured Mortgage.

E. CLTA Standard Coverage Policy 1990 (11-09-18).

7. Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the public records but that would be disclosed by an examination of any records maintained by or on behalf of a tribe or on behalf of its members.

8. Any claim of invalidity, unenforceability, or lack of priority of the lien of the insured mortgage based on the application of a tribe's law resulting from the failure of the insured mortgage to specify state law as the governing law with respect to the lien of the insured mortgage.

7. There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

---

**END OF INFORMATIONAL NOTES**

---

Ken Cyr & Mark Franklin - U-50/ah1

WIRE SAFE™ | Inquire before you wire!

# Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.
- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened**. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.
- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.
- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

***Federal Bureau of Investigation:***
***http://www.fbi.gov***

***Internet Crime Complaint Center:***
***http://www.ic3.gov***



*TM and © Fidelity National Financial, Inc. and/or an affiliate. All rights reserved*

Chicago Title Company

2365 Northside Drive, Suite 600, San Diego, CA 92108
Phone: (619) 521-3500 ● Fax: (619) 521-3608

## Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount. These discounts only apply to transactions involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company. The discount will only be applicable to the FNF Company as indicated by the named discount.

| FNF Underwritten Title Company | Underwritten by FNF Underwriters |
|---|---|
| CTC – Chicago Title company | CTIC – Chicago Title Insurance Company |
| CLTC – Commonwealth Land Title Company | CLTIC - Commonwealth Land Title Insurance Company |
| FNTC – Fidelity National Title Company of California | FNTIC – Fidelity National Title Insurance Company |
| FNTCCA - Fidelity National Title Company of California | FNTIC - Fidelity National Title Insurance Company |
| TICOR – Ticor Title Company of California | CTIC – Chicago Title Insurance Company |
| LTC – Lawyer's Title Company | CLTIC – Commonwealth Land Title Insurance Company |
| SLTC – ServiceLink Title Company | CTIC – Chicago Title Insurance Company |

**Available Discounts**

**DISASTER LOANS (CTIC, CLTIC, FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within twenty-four (24) months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be fifty percent (50%) of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be forty (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

**FIDELITY NATIONAL FINANCIAL, INC.**
**PRIVACY NOTICE**

## Effective December 1, 2023

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices. If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

**Collection of Personal Information**

FNF may collect the following categories of Personal Information:
- contact information (*e.g.*, name, address, phone number, email address);
- demographic information (*e.g.*, date of birth, gender, marital status);
- identity information (*e.g.* Social Security Number, driver's license, passport, or other government ID number);
- financial account information (*e.g.* loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

**Collection of Browsing Information**

FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:
- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

**Other Online Specifics**

Cookies. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

Web Beacons. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

Do Not Track. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

Links to Other Sites. FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

**Use of Personal Information**

FNF uses Personal Information for these main purposes:
- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates', and others' products and services, jointly or independently.
- To provide reviews and testimonials about our services, with your consent.

**When Information Is Disclosed**

We may disclose your Personal Information and Browsing Information in the following circumstances:
- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to affiliated or nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;


Copyright © 2023. Fidelity National Financial, Inc. All Rights Reserved

- to affiliated or nonaffiliated third parties with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above-described proceedings.

**Security of Your Information**
We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

**Choices With Your Information**
Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Connecticut Residents: For additional information about your Connecticut consumer privacy rights, or to make a consumer privacy request, or to appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

For Colorado Residents: For additional information about your Colorado consumer privacy rights, or to make a consumer privacy request, or appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

For Nevada Residents: We are providing this notice pursuant to state law. You may be placed on our internal Do Not Call List by calling FNF Privacy at (888) 714-2710 or by contacting us via the information set forth at the end of this Privacy Notice. For further information concerning Nevada's telephone solicitation law, you may contact: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: aginquiries@ag.state.nv.us.
For Oregon Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Utah Residents: For additional information about your Utah consumer privacy rights, or to make a consumer privacy request, please call (888) 714-2710.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

For Virginia Residents: For additional information about your Virginia consumer privacy rights, or to make a consumer privacy request, or appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

**Information From Children**
The FNF Websites are not intended or designed to attract persons under the age of eighteen (18).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

**International Users**
FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

**FNF Website Services for Mortgage Loans**
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with


Copyright © 2023. Fidelity National Financial, Inc. All Rights Reserved

Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

**Your Consent to this Privacy Notice; Notice Changes**

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

**Accessing and Correcting Information; Contact Us**

If you have questions or would like to correct your Personal Information, visit FNF's Privacy Inquiry Website or contact us by phone at (888) 714-2710, by email at privacy@fnf.com, or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer


Copyright © 2023. Fidelity National Financial, Inc. All Rights Reserved

# ATTACHMENT ONE

## CALIFORNIA LAND TITLE ASSOCIATION
## STANDARD COVERAGE POLICY – 1990 (11-09-18)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy; or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART II
(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)

## CALIFORNIA LAND TITLE ASSOCIATION
## STANDARD COVERAGE OWNER'S POLICY (02-04-22)

### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
      i. the occupancy, use, or enjoyment of the Land;
      ii. the character, dimensions, or location of any improvement on the Land;
      iii. the subdivision of land; or
      iv. environmental remediation or protection.
   b. any governmental forfeiture, police, regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b. Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2. Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3. Any defect, lien, encumbrance, adverse claim, or other matter:

a. created, suffered, assumed, or agreed to by the Insured Claimant;
b. not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
c. resulting in no loss or damage to the Insured Claimant;
d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
e. resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
      i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
      ii. for any other reason not stated in Covered Risk 9.b.
5. Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6. Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

### PART I

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

### PART II

(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (07-01-2021)

## EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy and We will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
      i. the occupancy, use, or enjoyment of the Land;
      ii. the character, dimensions, or location of any improvement on the Land;
      iii. the subdivision of land; or
      iv. environmental remediation or protection.
   b. any governmental forfeiture, police, or regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b. Exclusion 1 does not modify or limit the coverage provided under Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23, or 27.
2. Any power to take the Land by condemnation. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 17.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by You;
   b. not Known to Us, not recorded in the Public Records at the Date of Policy, but Known to You and not disclosed in writing to Us by You prior to the date You became an Insured under this policy;
   c. resulting in no loss or damage to You;

  d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 5, 8.f., 25, 26, 27, 28, or 32); or
  e. resulting in loss or damage that would not have been sustained if You paid consideration sufficient to qualify You as a bona fide purchaser of the Title at the Date of Policy.
4. Lack of a right:
   a. to any land outside the area specifically described and referred to in Item 3 of Schedule A; and
   b. in any street, road, avenue, alley, lane, right-of-way, body of water, or waterway that abut the Land.

   Exclusion 4 does not modify or limit the coverage provided under Covered Risk 11 or 21.
5. The failure of Your existing structures, or any portion of Your existing structures, to have been constructed before, on, or after the Date of Policy in accordance with applicable building codes. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 14 or 15.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transfer of the Title to You is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
      i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
      ii. for any other reason not stated in Covered Risk 30.
7. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
8. Negligence by a person or an entity exercising a right to extract or develop oil, gas, minerals, groundwater, or any other subsurface substance.
9. Any lien on Your Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 9 does not modify or limit the coverage provided under Covered Risk 8.a. or 27.
10. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $5,000.00 |

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)

## EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   a. building;
   b. zoning;
   c. land use;
   d. improvements on the Land;
   e. land division; and
   f. environmental protection.

   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks:
   a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   c. that result in no loss to You; or
   d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5. Failure to pay value for Your Title.
6. Lack of a right:
   a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   b. in streets, alleys, or waterways that touch the Land.

   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

Our Maximum Dollar

| | Your Deductible Amount | Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $5,000.00 |

## ALTA OWNER'S POLICY (07-01-2021)

## EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
      i. the occupancy, use, or enjoyment of the Land;
      ii. the character, dimensions, or location of any improvement on the Land;
      iii. the subdivision of land; or
      iv. environmental remediation or protection.
   b. any governmental forfeiture, police, regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b. Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2. Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
   e. resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
      i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
      ii. for any other reason not stated in Covered Risk 9.b.
   5. Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
   6. Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
   7. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

*NOTE: The 2021 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed as 1 through 7 below:*

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land or (b) asserted by persons or parties in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B

## 2006 ALTA OWNER'S POLICY (06-17-06)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
      (i) the occupancy, use, or enjoyment of the Land;
      (ii) the character, dimensions, or location of any improvement erected on the Land;
      (iii) the subdivision of land; or
      (iv) environmental protection;
   
   or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed, or agreed to by the Insured Claimant;
   (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   (c) resulting in no loss or damage to the Insured Claimant;
   (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
   (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
   (a) a fraudulent conveyance or fraudulent transfer; or
   (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

### EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

*NOTE: The 2006 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as 1 through 7 below:*

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.




This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.




This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.




This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

Recording Requested By:
Fidelity National Title Builder Services

~~RECORDING REQUESTED~~ BY:
Chicago ~~Title - Subdivision/Builder~~ Serv.

**Escrow No.:** 00104167-004-RM1
**Title No.:** 104167 - U50

**WHEN RECORDED MAIL DOCUMENT AND TAX STATEMENT TO:**
**The Phair Company LLC, a california limited liablity company**
**Jeff Phair**
**945 East J Street**
**Chula Vista, CA 91910**

DOC# 2023-0066758

Mar 16, 2023 08:00 AM
OFFICIAL RECORDS
JORDAN Z. MARKS,
SAN DIEGO COUNTY RECORDER
FEES: $2,770.00 (SB2 Atkins: $0.00)
PCOR: YES
PAGES: 3

**APN:** 630-321-31 and 32

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
DOCUMENTARY TRANSFER TAX is $ 2,750.00 CITY TAX $ 0.00
☒ computed on full value of interest or property conveyed, or
☐ computed on full value of items or encumbrances remaining at time of sale,
☐ Unincorporated area ✓ City of San Diego, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Robert N. Conrad and Daryl Lyne Conrad, as Co-trustees of The Victor B. Cherniak Trust dated August 27, 1993, as restated and amended, and Robert N. Conrad and Daryl Lyne Conrad, Co-Trustees under Trust "B" of the Cherniak Family Trust dated April 3, 1990**

hereby GRANT(s) to

**The Phair Company LLC, a california limited liablity company**

the following real property in the County of **San Diego**, State of **California**:

**See Exhibit A attached hereto and made a part hereof.**

Document Date: March 13, 2023

**SELLERS:**

Robert N. Conrad, trustee

**Robert N. Conrad, as Co-trustee of The Victor B. Cherniak Trust dated August 27, 1993, as restated and amended**

Robert N. Conrad, trustee

**Robert N. Conrad, Co-Trustee under Trust "B" of the Cherniak Family Trust dated April 3, 1990**

trustee

**Daryl Lyne Conrad, as Co-trustee of The Victor B. Cherniak Trust dated August 27, 1993, as restated and amended**

**Daryl Lyne Conrad, Co-Trustee under Trust "B" of the Cherniak Family Trust dated April 3, 1990**

trustee

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of Los Angeles. ) SS:

On 3/14/2023 before me, Andre Massengale, Notary Public

a Notary Public, personally appeared Robert N. Conrad, Daryl Lyne Conrad

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ______________________ (Seal)

ANDRE MASSENGALE
COMM. # 2362772
NOTARY PUBLIC · CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires June 28, 2025
HRS1

Grant Deed
GD (DSI Rev. 4/5/18)

Last Saved: 3/14/2023 12:51 PM by LL3
Escrow No.: 00104167-004-RM1

# EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN DIEGO, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCELS 1 AND 2 OF PARCEL MAP NO. 18000, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 26, 1998.

APNS: 630-321-31 AND 32

# PARCEL MAP NO. 18000

SHEET 1 OF 1

## IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA

BEING A LOT LINE ADJUSTMENT OF PORTIONS OF THE SOUTHWEST QUARTER OF THE SOUTHWEST QUARTER OF SECTION 26, TOWNSHIP 18 SOUTH, RANGE 2 WEST, SAN BERNARDINO MERIDIAN, ACCORDING TO UNITED STATES GOVERNMENT SURVEY APPROVED FEBRUARY 26, 1870
TITLE REPORT BY: FIRST AMERICAN TITLE INSURANCE CO. ORDER NO. 1155880-20

**PROPERTY OWNER'S STATEMENT:**

I HEREBY STATE THAT I AM THE OWNER OF THE LANDS INCLUDED WITHIN THE SUBDIVISION SHOWN ON THIS MAP WITHIN THE DISTINCTIVE BORDER LINES, AND I CONSENT TO THE PREPARATION AND FILING OF SAID MAP AND SUBDIVISION.

VICTOR B. CHERNIAK, AS OWNER AND TRUSTEE OF AND UNDER TRUST "B" OF THE CHERNIAK FAMILY TRUST DATED APRIL 3, 1990.

BY: *Victor B. Cherniak*
VICTOR B. CHERNIAK, AS OWNER

BY: *Victor B. Cherniak*
VICTOR B. CHERNIAK, AS TRUSTEE

"This plat is for your aid in locating your land with reference to streets and other parcels. While this plat is believed to be correct, the Company assumes no liability for any loss occuring by reason of reliance thereon."







**BASIS OF BEARINGS:**

THE BASIS OF BEARINGS FOR THIS SURVEY IS THE CENTERLINE OF BEYER BLVD., AS SHOWN ON MAP 6833 AND PARCEL MAP 12288, BOTH FILED AT THE COUNTY RECORDER OF SAN DIEGO I.E. N 23°03'01" W

**LEGEND**

- ● FOUND 2" IRON PIPE AS NOTED
- ▲ FOUND STREET SURVEY MONUMENT AS NOTED
- ○ SET 3/4" x 18" I.P. MARKED "LS 5518"
- □ SET LEAD AND DISC MARKED "LS 5518" ON A 7.00' OFFSET IN THE SIDEWALK AS MEASURED ALONG AN EXTENSION OF THE PROPERTY LINE




**SURVEYOR'S STATEMENT:**

THIS MAP WAS PREPARED BY ME OR UNDER MY DIRECTION AND IS BASED UPON A FIELD SURVEY IN CONFORMANCE WITH THE REQUIREMENTS OF THE SUBDIVISION MAP ACT AND LOCAL ORDINANCE AT THE REQUEST OF VICTOR B. CHERNIAK ON JUNE 5TH 1997, AND I CERTIFY THAT SAID SURVEY IS TRUE AND COMPLETE AS SHOWN AND THAT ALL STAKES, MONUMENTS AND MARKS SET, TOGETHER WITH THOSE FOUND ARE OF THE CHARACTER AND OCCUPY THE POSITIONS SHOWN THEREON AND ARE SUFFICIENT TO ENABLE THE SURVEY TO BE RETRACED. (SEE LEGEND THIS SHEET).

I HEREBY STATE THAT THIS PARCEL MAP SUBSTANTIALLY CONFORMS TO THE APPROVED OR CONDITIONALLY APPROVED TENTATIVE MAP, IF ANY.

*Robert H Taylor*
ROBERT H. TAYLOR
L.S. 5518
LIC. EXP. 9-30-2000

LICENSED LAND SURVEYOR ROBERT H. TAYLOR NO.5518 STATE OF CALIFORNIA

**CITY ENGINEER'S CERTIFICATION:**

I HEREBY STATE THAT THIS MAP WAS EXAMINED BY ME OR UNDER MY DIRECT SUPERVISION; THAT IT SUBSTANTIALLY CONFORMS TO THE TENTATIVE MAP, IF ANY, AND ANY APPROVED ALTERATIONS THEREOF; THAT IT COMPLIES WITH THE SUBDIVISION MAP ACT AND ANY LOCAL ORDINANCES APPLICABLE AT THE TIME OF APPROVAL OF THE TENTATIVE MAP AND THAT IT IS TECHNICALLY CORRECT.

FRANK BELOCK, JR., CITY ENGINEER

BY: *LeRoy C. Hennes*
LEROY C. HENNES, DEPUTY
L.S. 4804

*3-17-98*
DATE

PROFESSIONAL LAND SURVEYOR LEROY C. HENNES No. 4804 Exp. 9-30-00 STATE OF CALIFORNIA

**NOTARY PUBLIC'S STATEMENT:**

STATE OF CALIFORNIA
COUNTY OF SAN DIEGO

ON *February 4*, 199*8*, BEFORE ME, *Jenn Freireich* A NOTARY PUBLIC, PERSONALLY APPEARED VICTOR B. CHERNIAK, ~~PERSONALLY KNOWN TO ME~~ (OR PROVED TO ME ON THE BASIS OF SATISFACTORY EVIDENCE) TO BE THE PERSON WHOSE NAME IS SUBSCRIBED TO THE WITHIN INSTRUMENT AND ACKNOWLEDGED TO ME THAT HE EXECUTED THE SAME IN THEIR AUTHORIZED CAPACITY, AND THAT BY HIS SIGNATURE ON THE INSTRUMENT THE PERSON, OR THE ENTITY UPON BEHALF OF WHICH THE PERSON ACTED AND EXECUTED THE INSTRUMENT.

WITNESS MY HAND:

SIGNATURE *Jenn Freireich*
NOTARY PUBLIC IN AND FOR SAID STATE *California*
IN *San Diego* COUNTY
*Jenn Freireich*
(NAME PRINTED)

MY PRINCIPLE PLACE OF BUSINESS IS *438 Camino del Rio So. #211 San Diego, CA 92108*
MY COMMISSION EXPIRES *3-20-98*

**COUNTY RECORDERS STATEMENT**

FILE NO. *1998-0161424*
FILED THIS *26th* DAY OF *MARCH*, 1998 AT *11:03* O'CLOCK *A*.M. IN BOOK OF PARCEL MAPS AT PAGE *18000*
AT THE REQUEST OF ROBERT H. TAYLOR

GREGORY J. SMITH
COUNTY RECORDER
FEE: $ 8.00

BY: *Cristy Frost*
DEPUTY COUNTY RECORDER

| | | |
|---|---|---|
| | | ID NO. 97-134 |
| NAD83C 1786-6309 | LC 146-1749 | WO NO. 032000 |




This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.




This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.




This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

BOOK 4076 PAGE 292

Form 120-A

# RIGHT OF WAY

I, Dora E. Bennett

.............................................., hereinafter called the "Grantor," for and in consideration of the sum of One Dollar, and other value received, do hereby grant to the San Diego Gas & Electric Company, a corporation, its successors and assigns, hereinafter called the "Grantee," the right, easement and privilege of placing, erecting, constructing, repairing, replacing, maintaining and using, for the transmission and distribution of electricity and for all purposes connected therewith, a line of [redacted] wires suspended thereon and all necessary and proper guys, anchorage, crossarms and braces and other fixtures for use in connection therewith, together with the right of ingress thereto and egress therefrom to and along said line, over and across the Grantor's land situate in the County of San Diego, State of California, and more particularly described as follows: That certain portion of the SW¼ of the SW¼ of Section 26, Township 18 South, Range 2 West, San Bernardino Meridian, described in Deed recorded in Book 1228 at Page 104, Official Records of said County of San Diego.

The route of said line of [redacted] wires across said land shall be as follows: Beginning at a point on the Southeasterly line of the above described property, which point bears South 89° 50' East, 744.72 feet; thence North 0° 10' East, 156.14 feet; thence North 67° 00' East, 74.44 feet from the Southwest corner of said Section 26; thence from said point of beginning, North 23° 00' West, to the Northwesterly line of the above described property.

The Grantee is also hereby granted the right to trim any trees along said line of [redacted] wires whenever considered by it necessary for the proper operation and use of the rights hereby granted.

In Witness Whereof, the Grantor has executed these presents this 7th day of February, 1951

Executed in the Presence of:

J. Kennedy Witness. X Dora E. Bennett

.............................................. Witness.

DRAWN BY JRC
CHECKED BY AFR
SKETCH NO. Y-55

NOTARIES — USE PROPER FORM ON BACK.

Requested By: Michael Moore , Printed: 2/19/2019 12:26 PM

BOOK 4076 PAGE 295

## WITNESS FORM

STATE OF CALIFORNIA, County of San Diego. } ss.

On this 12th day of March A. D. 19 51, before me, Arleen G. Germo a Notary Public in and for the said County and State, residing therein, duly commissioned and sworn, personally appeared James W. Paige known to me to be the person.... whose name is subscribed to the within instrument, as a Witness thereto, who being by me duly sworn, depose s and say s:

That he reside s in San Diego, California and that he was present and saw Edmund F. Bennett personally known to h im to be the same person...... whose name is subscribed to the within and annexed Instrument, execute and deliver the same, and he acknowledged to said affiant that he executed the same; and that said affiant subscribed his name thereto as a Witness.

In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first written.

Arleen G. Germo
Notary Public in and for the County of San Diego, State of California

My Commission Expires February 26, 1955

## GENERAL FORM

STATE OF ............ } ss.
County of ............

On this ......day of ............A.D. 19......, before me, ............ a Notary Public in and for the said County and State, residing therein, duly commissioned and sworn, personally appeared ............personally known to me to be the person... whose name............subscribed to the within Instrument, and duly acknowledged to me that ......he...... executed the same.

In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

............
Notary Public in and for said County and State.

# RIGHT OF WAY

Edmund F. Bennett

TO

SAN DIEGO GAS & ELECTRIC COMPANY

54256

DOCUMENT NO.
RECORDED AT REQUEST OF
SAN DIEGO GAS & ELECTRIC CO.
APR 27 1951
at 5 Minutes Past 9
BOOK 4076 PAGE 294
OFFICIAL RECORDS
San Diego County, California
HO... H. HOWE, County Recorder

1/4

Case 25-90069-JBM 1 Filed 07/08/25 Entered 07/08/25 14:08:58 Doc 6 Pg. 63 of 209

Form 136-40

# RIGHT OF WAY

We, [redacted] Eglar B. Young, Eleanor E. Young, Blanche V. Elliott and Janet V. Young, hereinafter called the "Grantor," for and in consideration of the sum of One Dollar, and other value received, do hereby grant to the San Diego Gas & Electric Company, a corporation, its successors and assigns, hereinafter called the "Grantee," the right, easement and privilege of placing, erecting, constructing, repairing, replacing, maintaining and using, for the transmission and distribution of electricity and for all purposes connected therewith, a line of poles with wires suspended thereon and all necessary and proper guys, anchorage, crossarms and braces and other fixtures for use in connection therewith, together with the right of ingress thereto and egress therefrom to and along said line, over and across the Grantor's land situate in the County of San Diego, State of California, and more particularly described as follows: That certain portion of the SW¼ of the SW¼ of Section 26, Township 18 South, Range 2 West, San Bernardino Meridian, described in Deed recorded in Book 3645 at Page 386, Official Records of said County of San Diego.

The route of said line of poles and wires across said land shall be as follows: Commencing at the Southwest corner of said Section 26; thence Easterly along the South line thereof, a distance of 744.72 feet; thence North 0° 10' East, 156.14 feet; thence North 67° 00' East, 74.44 feet; thence North 23° 00' West, 150.0 feet to the true point of beginning of the route of the right of way herein described; thence from said point of beginning, North 23° 00' West, 720.3 feet.

BOOK 4104 PAGE 312

STATE OF CALIFORNIA,
COUNTY OF SAN DIEGO, } ss

On this 7th day of February, 1951, before me, Arleen G. Germo a Notary Public in and for the said County of San Diego, State of California, residing therein, duly commissioned and sworn, personally appeared J. C. Kennedy personally known to me to be the person whose name is subscribed to the within instrument as subscribing witness thereto who being by me duly sworn, deposed and said that he resides in the said County of San Diego, State of California, that he was present and saw Eglar B. Young, Eleanor E. Young, Blanche V. Elliott & Janet V. Young personally known to him to be the same persons described in and whose names are subscribed to the within instrument as parties thereto, sign and execute the same and that he, the affiant, then and there subscribed his name to said instrument as witness.

**In Witness Whereof,** I have hereunto set my hand and affixed my official seal, at my office in the County of San Diego, the day and year in this certificate first above written.

My Commission expires My Commission Expires February 26, 1955

Arleen G. Germo
Notary Public in and for the County of San Diego, State of California

ACKNOWLEDGEMENT—Witness—PRINTED IN SAN DIEGO

PLAZA PRESS, 623 Third Avenue, San Diego

The Grantee is also hereby granted the right to trim any trees along said line of poles and wires whenever considered by it necessary for the proper operation and use of the rights hereby granted.

**In Witness Whereof,** the Grantors have executed these presents this 7th day of February, 1951.

Executed in the Presence of:

J. C. Kennedy Witness.

Witness.

Eglar B. Young
Janet V. Young
Eleanor E. Young
Blanche V. Elliott

NOTARIES—USE PROPER FORM ON BACK.

Y-55

## WITNESS FORM

STATE OF CALIFORNIA, } ss.
County of San Diego.

On this 10th day of April A. D. 19 51 before me, Arleen G. Germo
a Notary Public in and for the said County and State, residing therein, duly commissioned and sworn, personally appeared C. B. Smith known to me to be the person whose name is subscribed to the within instrument, as a Witness thereto, who being by me duly sworn, deposes and says: That he resides in San Diego, California and that he was present and saw Emmitt B. Zink & Melda S. Zink personally known to him to be the same persons whose names are subscribed to the within and annexed Instrument, execute and deliver the same, and they acknowledged to said affiant that they executed the same; and that said affiant subscribed his name thereto as a Witness.

In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first written.

Arleen G. Germo
Notary Public in and for the County of San Diego, State of California
My Commission Expires February 26, 1955

## GENERAL FORM

STATE OF ............ } ss.
County of ............

On this ........ day of ........ A.D. 19...., before me, ........
a Notary Public in and for the said County and State, residing therein, duly commissioned and sworn, personally appeared ........ personally known to me to be the person.... whose name........ subscribed to the within Instrument, and duly acknowledged to me that ....he..... executed the same.

In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

........
Notary Public in and for said County and State.

RIGHT OF WAY

Emmitt B. Zink
and
Melda S. Zink

TO

SAN DIEGO GAS & ELECTRIC COMPANY

DOCUMENT NO. 64334
RECORDED AT REQUEST OF
SAN DIEGO GAS & ELECTRIC CO.
MAY 18 1951
at 2 Minutes Past 9
BOOK 4104 PAGE 313
OFFICIAL RECORDS
San Diego County, California
ROGER R. HOWE, County Recorder

## CORPORATION FORM

STATE OF ............ } ss.
County of ............

On this ........ day of ........ A.D. 19...., before me, ........
a Notary Public in and for the said County and State, residing therein, duly commissioned and sworn, personally appeared ........ known to me to be the ........ President and ........ known to me to be the ........ Secretary of the ........ the Corporation that executed the within Instrument, known to me to be the persons who executed the within Instrument, on behalf of the Corporation therein named, and acknowledged to me that such Corporation executed the same.

In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

........
Notary Public in and for said County and State.

BOOK 4476 PAGE 456

# RIGHT OF WAY

We, Leo Goar, Eleanor W. Goar, G. E. Young, Eleanor E. Young, Blanche V. Elliott and Janet M. Young, hereinafter called the "Grantor," for and in consideration of the sum of One Dollar, and other value received, do hereby grant to the San Diego Gas & Electric Company, a corporation, its successors and assigns, hereinafter called the "Grantee," the right, easement and privilege of placing, erecting, constructing, repairing, replacing, maintaining and using, for the transmission and distribution of electricity and for all purposes connected therewith, a line of poles with wires suspended thereon and all necessary and proper guys, anchorage, crossarms and braces and other fixtures for use in connection therewith, together with the right of ingress thereto and egress therefrom to and along said line, over and across the Grantor's land situate in the County of San Diego, State of California, and more particularly described as follows: That certain portion of the SW¼ of the SW¼ of Section 26, Township 18 South, Range 2 West, San Bernardino Meridian, described in Deed recorded in Book 3645 at Page 386, Official Records of said County of San Diego.

The route of said line of poles and wires across said land shall be as follows: Beginning at a point which bears South 45° 05' 30" East, 147.16 feet from the Northwest corner of said SW¼ of the SW¼ of Section 26; thence from said point of beginning, South 88° 42' 30" East, 261.08 feet; thence South 25° 54' 30" East, 228.49 feet; thence South 22° 19' 30" East, 1199.90 feet; thence South 22° 55' 30" East, 554.48 feet.

Excepting from the above described right of way any portion thereof lying within any deeded or dedicated Road, Street or Highway.

The Grantee is also hereby granted the right to trim any trees along said line of poles and wires whenever considered by it necessary for the proper operation and use of the rights hereby granted.

In Witness Whereof, the Grantor ............ executed these presents this 24th day of January 1952.

Executed in the Presence of:

............................................ Witness.

............................................ Witness.

Leo Goar
Eleanor W. Goar
G. E. Young
Eleanor E. Young
Euthelma Lee Young
Janet M. Young
Blanche V. Elliott

NOTARIES USE PROPER FORM ON BACK.

the day and year in this certificate first written.

Notary Public in and for the County of San Diego, State of California

NOTARY PUBLIC
In and for the County of San Diego, State of Calif.

My Commission Expires April 10, 1955

STATE OF Oregon
County of Umatille } ss.

GENERAL FORM

On this 26 day of Dec. A.D. 1951, before me, Nat Kimball a Notary Public in and for the said County and State, residing therein, duly commissioned and sworn, personally appeared Leo E. Coar and Eleanor V. Coar personally known to me to be the person whose names are subscribed to the within Instrument, and duly acknowledged to me that they executed the same.

In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

Nat Kimball

BOOK 4476 PAGE 459

# WITNESS FORM

STATE OF CALIFORNIA, } ss.
County of San Diego.

On this 24th day of April A. D. 1952, before me, Hortencia Valenzuela a Notary Public in and for the said County and State, residing therein, duly commissioned and sworn, personally appeared Dan R. Snell known to me to be the person whose name is subscribed to the within instrument, as a Witness thereto, who being by me duly sworn, deposes and says: That he resides in ............ and that he was present and saw Walter Golam and Lucille P. Edwards personally known to him to be the same persons whose names are subscribed to the within and annexed Instrument, execute and deliver the same, and they acknowledged to said affiant that they executed the same; and that said affiant subscribed his name thereto as a Witness.

In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first written.

Hortencia Valenzuela
Notary Public in and for the County of San Diego, State of California

My Commission Expires April 23, 1956

# GENERAL FORM

STATE OF ............ } ss.
County of ............

On this ...... day of ............ A.D. 19...., before me, ............ a Notary Public in and for the said County and State, residing therein, duly commissioned and sworn, personally appeared ............ personally known to me to be the person.... whose name ............ subscribed to the within Instrument, and duly acknowledged to me that ...he... executed the same.

In Witness Whereof, I have hereunto set my hand and affixed my official seal the day and year in this certificate first above written.

............
Notary Public in and for said County and State.

# RIGHT TO INSTALL ANCHORS

Walter Golam
and
Lucille P. Edwards

TO

SAN DIEGO GAS & ELECTRIC COMPANY

63370

DOCUMENT NO. ............
RECORDED AT REQUEST OF SAN DIEGO GAS & ELECTRIC CO.
MAY 23 1952
at 6 Minutes Past 9
BOOK 4476 PAGE 458
OFFICIAL RECORDS
San Diego County, California
ROGER B. HOWE, County Recorder

RECORDING REQUESTED BY:
Fidelity National Title Builder Services

AND WHEN RECORDED MAIL TO:
Robert Nolan Conrad
1901 Avenue of the Starts, #1100
Los Angeles, CA 90067

DOC# 2023-0066759

Mar 16, 2023 08:00 AM
OFFICIAL RECORDS
JORDAN Z. MARKS,
SAN DIEGO COUNTY RECORDER
FEES: $46.00 (SB2 Atkins: $0.00)
PCOR: N/A
PAGES: 7

THIS SPACE FOR RECORDER'S USE

DEED OF TRUST WITH ASSIGNMENT OF RENTS

(Please fill in document title(s) on this line)

1 ☑ Exempt from fee per GC27388.1 due to being recorded in connection with concurrent transfer that is subject to the imposition of documentary transfer tax, or,

2 ☐ Exempt from fee per GC27388.1 due to being recorded in connection with a transfer that was subject to documentary transfer tax which was paid on document recorded previously on ________________ (date*) as document number ______________________________ of Official Records, or,

3 ☐ Exempt from fee per GC27388.1 due to the maximum fees being paid on documents in this transaction, or,

4 ☐ Exempt from fee per GC27388.1 due to the maximum fees having been paid on documents in the transaction(s) recorded previously on ______________________ (date*) as document number(s) ______________________________________________ of Official Records, or,

5 ☐ Exempt from fee per GC27388.1, document transfers real property that is a residential dwelling to an owner-occupier, or, document is recorded in connection with concurrent transfer that is a residential dwelling to an owner-occupier, or,

6 ☐ Exempt from fee per GC27388.1 due to it being recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier. The recorded document transferring the dwelling to the owner-occupier was recorded on ______________________ (date*) as document number(s)
______________________________________________

7 ☐ Exempt from fee per GC27388.1 due to being executed or recorded by the federal government in accordance with the Uniform Federal Lien Registration Act, by the state, or any county, municipality or other political subdivision of the state, or,

8 ☐ Exempt from the fee per GC 27388.1 (a) (1); Not related to real property, or,

9 ☐ Exempt from fee under GC27388.1 for the following reasons:
______________________________________________

THIS PAGE ADDED TO PROVIDE SENATE BILL 2 EXEMPTION INFORMATION
(Additional recording fee applies)

Rev 5/18 *The Prior Recording Reference must have been recorded within the last 60 days and is subject to review

Recording Requested By:
Fidelity National Title Builder Services

~~Recording Requested By~~
and When Recorded Mail to:
Robert Nolan Conrad
1901 Avenue of the Stars #1100
Los Angeles CA 90067
Title Order Number: 104167
Escrow Number: 104167-RL

Space Above This Line for Recorder's Use

## DEED OF TRUST WITH ASSIGNMENT OF RENTS

This Deed of Trust, made March 17, 2023, between The Phair Company LLC, herein called TRUSTOR whose address is 945 East J Street, Chula Vista, CA 91910, CHICAGO TITLE COMPANY, a California Corporation, herein called TRUSTEE, and Robert N. Conrad and Daryl Lyne Conrad, as Co-trustees of The Victor B. Cherniak Trust dated August 27, 1993, as restated and amended, and Robert N. Conrad and Daryl Lyne Conrad, Co-Trustees under Trust "B" of the Cherniak Family Trust dated April 3, 1990 , herein called BENEFICIARY.

Trustor irrevocably grants, transfers and assigns to Trustee in Trust, with Power of Sale, that property in San Diego County, California described as: Approximately 2 acres of vacant land. The legal description is attached as Exhibit A.

Commonly known as: 3145 & 3167 Beyer Blvd., San Diego, CA

**DUE ON SALE: SHOULD TRUSTOR SELL, CONVEY, TRANSFER, OR ALIENATE THE PROPERTY, OR ANY PART THEREOF, OR ANY INTEREST THEREIN, OR AGREE TO DO SO, OR BE DIVESTED OF HIS OR HER TITLE OR ANY INTEREST HEREIN IN ANY MANNER OR WAY, WHETHER VOLUNTARILY OR INVOLUNTARILY, WITHOUT THE WRITTEN CONSENT OF THE BENEFICIARY, THE BENEFICIARY MAY DECLARE THE ENTIRE INDEBTEDNESS SECURED HEREBY AT HIS OPTION IMMEDIATELY DUE AND PAYABLE. CONSENT TO ONE SUCH TRANSACTION SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO REQUIRE SUCH CONSENT TO FUTURE OR SUCCESSIVE TRANSACTIONS**

Together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.
For the Purpose of Securing (1) payment of the sum of $1,999,000, with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof; (2) the performance of each agreement of Trustor incorporated by reference or contained herein or reciting it is so secured; (3) Payment of additional sums of interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.
To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the Agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A of that certain Fictitious Deed of Trust referenced herein, and it is mutually agreed that all of the provisions set forth in subdivision B of that certain Fictitious Deed of Trust recorded in the book and page of Official Records in the Office of the County Recorder of the county where said property is located, noted below opposite the name of such county, namely:

| County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 67 | Riverside | 3778 | 347 | Solana | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 71-10-26 | 615 | Sonoma | 2067 | 427 |
| Calveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 6664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego Series 5 Book 1964, Page 149774 | | | | | |

Said agreements, terms and provisions contained in said subdivisions A and B (identical in all counties) are preprinted on the following pages hereto and are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge thereof does not exceed the maximum allowed by laws.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

Signature of Trustor: The Phair Company LLC

Jeff Phair (signature)

Jeff Phair, Manager

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the **document** to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of San Diego )

On March 15th, 2023 before me, Roland Lamphiere., Notary Public, personally appeared JEFF Phair, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

(signature)

(Signature)

ROLAND LAMPHIERE
Notary Public - California
San Diego County
Commission # 2348111
My Comm. Expires Feb 20, 2025

(Affix Seal)

DO NOT RECORD

The following is a copy of Subdivisions A and B of the fictitious Deed of Trust recorded in each County in California as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

A. To protect the security of this Deed of Trust, Trustor agrees:
(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer, or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may, make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge, or lien which in the judgement of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

(5) To pay immediately and without demand all sums so expanded by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby, any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B. It is mutually agreed:
(1) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him or her in the same manner and with the same effect as above provided for regarding disposition of proceeds of fire or other insurance.

(2) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his or her right either to require prompt
payment when due of all other sums so secured or to declare default for failure so to pay.

(3) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note

to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(5) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his or her own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property , the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall Cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(7) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(8) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors, and assigns. The term Beneficiary shall mean the owner and holder, including pledgees of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural.

(9) The Trustee accepts this Trust when this Deed, duty executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

*DO NOT RECORD* REQUEST FOR FULL RECONVEYANCE

TO CHICAGO TITLE COMPANY

The undersigned is the legal owner and holder of the note or notes and of all other indebtedness secured by the foregoing Deed of Trust. Said note or notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said note or notes above mentioned, and all other evidence of indebtedness secured by said Deed of Trust delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same.

Dated

Please mail Deed of Trust,
Note and Reconveyance to JEFF PHAIR

*Do not lose or destroy this Dead of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.*

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN DIEGO, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCELS 1 AND 2 OF PARCEL MAP NO. 18000, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 26, 1998.

APNS: 630-321-31 AND 32

# EXHIBIT 2

DOC# 2023-0066759

Mar 16, 2023 08:00 AM

OFFICIAL RECORDS
JORDAN Z. MARKS,
SAN DIEGO COUNTY RECORDER
FEES: $46.00 (SB2 Atkins: $0.00)
PCOR: N/A
PAGES: 7

RECORDING REQUESTED BY:
Fidelity National Title Builder Services

AND WHEN RECORDED MAIL TO:
Robert Nolan Conrad
1901 Avenue of the Starts, #1100
Los Angeles, CA 90067

THIS SPACE FOR RECORDER'S USE

DEED OF TRUST WITH ASSIGNMENT OF RENTS

(Please fill in document title(s) on this line)

1 ☑ Exempt from fee per GC27388.1 due to being recorded in connection with concurrent transfer that is subject to the imposition of documentary transfer tax, or,

2 ☐ Exempt from fee per GC27388.1 due to being recorded in connection with a transfer that was subject to documentary transfer tax which was paid on document recorded previously on ________________ (date*) as document number ____________________________ of Official Records, or,

3 ☐ Exempt from fee per GC27388.1 due to the maximum fees being paid on documents in this transaction, or,

4 ☐ Exempt from fee per GC27388.1 due to the maximum fees having been paid on documents in the transaction(s) recorded previously on ______________________ (date*) as document number(s) ______________________________________________________ of Official Records, or,

5 ☐ Exempt from fee per GC27388.1, document transfers real property that is a residential dwelling to an owner-occupier, or, document is recorded in connection with concurrent transfer that is a residential dwelling to an owner-occupier, or,

6 ☐ Exempt from fee per GC27388.1 due to it being recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier. The recorded document transferring the dwelling to the owner-occupier was recorded on ______________________ (date*) as document number(s)

______________________________________________________________________________

7 ☐ Exempt from fee per GC27388.1 due to being executed or recorded by the federal government in accordance with the Uniform Federal Lien Registration Act, by the state, or any county, municipality or other political subdivision of the state, or,

8 ☐ Exempt from the fee per GC 27388.1 (a) (1); Not related to real property, or,

9 ☐ Exempt from fee under GC27388.1 for the following reasons:

______________________________________________________________________________

THIS PAGE ADDED TO PROVIDE SENATE BILL 2 EXEMPTION INFORMATION
(Additional recording fee applies)

Rev 5/18

*The Prior Recording Reference must have been recorded within the last 60 days and is subject to review

Recording Requested By:
Fidelity National Title Builder Services

~~Recording Requested By~~
and When Recorded Mail to:
Robert Nolan Conrad
1901 Avenue of the Stars #1100
Los Angeles CA 90067
Title Order Number: 104167
Escrow Number: 104167-RL

Space Above This Line for Recorder's Use

**DEED OF TRUST WITH ASSIGNMENT OF RENTS**

This Deed of Trust, made March 17, 2023, between The Phair Company LLC, herein called TRUSTOR whose address is 945 East J Street, Chula Vista, CA 91910, CHICAGO TITLE COMPANY, a California Corporation, herein called TRUSTEE, and Robert N. Conrad and Daryl Lyne Conrad, as Co-trustees of The Victor B. Cherniak Trust dated August 27, 1993, as restated and amended, and Robert N. Conrad and Daryl Lyne Conrad, Co-Trustees under Trust "B" of the Cherniak Family Trust dated April 3, 1990 , herein called BENEFICIARY.

Trustor irrevocably grants, transfers and assigns to Trustee in Trust, with Power of Sale, that property in San Diego County, California described as: Approximately 2 acres of vacant land. The legal description is attached as Exhibit A.

Commonly known as: 3145 & 3167 Beyer Blvd., San Diego, CA

**DUE ON SALE: SHOULD TRUSTOR SELL, CONVEY, TRANSFER, OR ALIENATE THE PROPERTY, OR ANY PART THEREOF, OR ANY INTEREST THEREIN, OR AGREE TO DO SO, OR BE DIVESTED OF HIS OR HER TITLE OR ANY INTEREST HEREIN IN ANY MANNER OR WAY, WHETHER VOLUNTARILY OR INVOLUNTARILY, WITHOUT THE WRITTEN CONSENT OF THE BENEFICIARY, THE BENEFICIARY MAY DECLARE THE ENTIRE INDEBTEDNESS SECURED HEREBY AT HIS OPTION IMMEDIATELY DUE AND PAYABLE. CONSENT TO ONE SUCH TRANSACTION SHALL NOT BE DEEMED TO BE A WAIVER OF THE RIGHT TO REQUIRE SUCH CONSENT TO FUTURE OR SUCCESSIVE TRANSACTIONS**

Together with the rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.
For the Purpose of Securing (1) payment of the sum of $1,999,000, with interest thereon according to the terms of a promissory note or notes of even date herewith made by Trustor, payable to order of Beneficiary, and extensions or renewals thereof; (2) the performance of each agreement of Trustor incorporated by reference or contained herein or reciting it is so secured; (3) Payment of additional sums of interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.
To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the Agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A of that certain Fictitious Deed of Trust referenced herein, and it is mutually agreed that all of the provisions set forth in subdivision B of that certain Fictitious Deed of Trust recorded in the book and page of Official Records in the Office of the County Recorder of the county where said property is located, noted below opposite the name of such county, namely:

| County | Book | Page | County | Book | Page | County | Book | Page | County | Book | Page |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 67 | Riverside | 3778 | 347 | Solana | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 71-10-26 | 615 | Sonoma | 2067 | 427 |
| Calveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 6664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego Series 5 Book 1964, Page 149774 | | | | | |

Said agreements, terms and provisions contained in said subdivisions A and B (identical in all counties) are preprinted on the following pages hereto and are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge thereof does not exceed the maximum allowed by laws.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address hereinbefore set forth.

Signature of Trustor: The Phair Company LLC

Jeff Phair

Jeff Phair, Manager

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the **document** to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of San Diego )

On March 15th, 2023 before me, Roland Lamphiere, Notary Public, personally appeared Jeff Phair, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

(Signature)

ROLAND LAMPHIERE
Notary Public - California
San Diego County
Commission # 2348111
My Comm. Expires Feb 20, 2025

(Affix Seal)

DO NOT RECORD

The following is a copy of Subdivisions A and B of the fictitious Deed of Trust recorded in each County in California as stated in the foregoing Deed of Trust and incorporated by reference in said Deed of Trust as being a part thereof as if set forth at length therein.

A. To protect the security of this Deed of Trust, Trustor agrees:
(1) To keep said property in good condition and repair; not to remove or demolish any building thereon; to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged or destroyed thereon and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer, or permit any act upon said property in violation of law; to cultivate, irrigate, fertilize, fumigate, prune and do all other acts which from the character or use of said property may be reasonably necessary, the specific enumerations herein not excluding the general.

(2) To provide, maintain and deliver to Beneficiary fire insurance satisfactory to and with loss payable to Beneficiary. The amount collected under any fire or other insurance policy may be applied by Beneficiary upon any indebtedness secured hereby and in such order as Beneficiary may determine, or at option of Beneficiary the entire amount so collected or any part thereof may be released to Trustor. Such application or release shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(3) To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; and to pay all costs and expenses, including cost of evidence of title and attorney's fees in a reasonable sum, in any action or proceeding in which Beneficiary or Trustee may appear, and in any suit brought by Beneficiary to foreclose this Deed.

(4) To pay: at least ten days before delinquency all taxes and assessments affecting said property, including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said property or any part thereof, which appear to be prior or superior hereto; all costs, fees and expenses of this Trust.

Should Trustor fail to make any payment or to do any act as herein provided, then Beneficiary or Trustee, but without obligation so to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may, make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof, Beneficiary or Trustee being authorized to enter upon said property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase, contest or compromise any encumbrance, charge, or lien which in the judgement of either appears to be prior or superior hereto; and, in exercising any such powers, pay necessary expenses, employ counsel and pay his or her reasonable fees.

(5) To pay immediately and without demand all sums so expanded by Beneficiary or Trustee, with interest from date of expenditure at the amount allowed by law in effect at the date hereof, and to pay for any statement provided for by law in effect at the date hereof regarding the obligation secured hereby, any amount demanded by the Beneficiary not to exceed the maximum allowed by law at the time when said statement is demanded.

B. It is mutually agreed:
(1) That any award of damages in connection with any condemnation for public use of or injury to said property or any part thereof is hereby assigned and shall be paid to Beneficiary who may apply or release such moneys received by him or her in the same manner and with the same effect as above provided for regarding disposition of proceeds of fire or other insurance.

(2) That by accepting payment of any sum secured hereby after its due date, Beneficiary does not waive his or her right either to require prompt
payment when due of all other sums so secured or to declare default for failure so to pay.

(3) That at any time or from time to time, without liability therefor and without notice, upon written request of Beneficiary and presentation of this Deed and said note for endorsement, and without affecting the personal liability of any person for payment of the indebtedness secured hereby, Trustee may: reconvey any part of said property; consent to the making of any map or plat thereof; join in granting any easement thereon; or join in any extension agreement or any agreement subordinating the lien or charge hereof.

(4) That upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed and said note

to Trustee for cancellation and retention or other disposition as Trustee in its sole discretion may choose and upon payment of its fees, Trustee shall reconvey, without warranty, the property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The Grantee in such reconveyance may be described as "the person or persons legally entitled thereto."

(5) That as additional security, Trustor hereby gives to and confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of said property, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in his or her own name sue for or otherwise collect such rents, issues, and profits, including those past due and unpaid, and apply the same, less costs and expenses of operation and collection, including reasonable attorney's fees, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property , the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice.

(6) That upon default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale and of written notice of default and of election to cause to be sold said property, which notice Trustee shall Cause to be filed for record. Beneficiary also shall deposit with Trustee this Deed, said note and all documents evidencing expenditures secured hereby.

After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell said property at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine, at public auction to the highest bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to such purchaser its deed conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee, or Beneficiary as hereinafter defined, may purchase at such sale.

After deducting all costs, fees and expenses of Trustee and of this Trust, including cost of evidence of title in connection with sale, Trustee shall apply the proceeds of sale to payment of: all sums expended under the terms hereof, not then repaid, with accrued interest at the amount allowed by law in effect at the date hereof; all other sums then secured hereby; and the remainder, if any, to the person or persons legally entitled thereto.

(7) Beneficiary, or any successor in ownership of any indebtedness secured hereby, may from time to time, by instrument in writing, substitute a successor or successors to any Trustee named herein or acting hereunder, which instrument, executed by the Beneficiary and duly acknowledged and recorded in the office of the recorder of the county or counties where said property is situated, shall be conclusive proof of proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the Trustee predecessor, succeed to all its title, estate, rights, powers and duties. Said instrument must contain the name of the original Trustor, Trustee and Beneficiary hereunder, the book and page where this Deed is recorded and the name and address of the new Trustee.

(8) That this Deed applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors, and assigns. The term Beneficiary shall mean the owner and holder, including pledgees of the note secured hereby, whether or not named as Beneficiary herein. In this Deed, whenever the context so requires, the masculine gender includes the feminine and/or the neuter, and the singular number includes the plural.

(9) The Trustee accepts this Trust when this Deed, duty executed and acknowledged, is made a public record as provided by law. Trustee is not obligated to notify any party hereto of pending sale under any other Deed of Trust or of any action or proceeding in which Trustor, Beneficiary or Trustee shall be a party unless brought by Trustee.

*DO NOT RECORD* REQUEST FOR FULL RECONVEYANCE

TO CHICAGO TITLE COMPANY

The undersigned is the legal owner and holder of the note or notes and of all other indebtedness secured by the foregoing Deed of Trust. Said note or notes, together with all other indebtedness secured by said Deed of Trust, have been fully paid and satisfied; and you are hereby requested and directed, on payment to you of any sums owing to you under the terms of said Deed of Trust, to cancel said note or notes above mentioned, and all other evidence of indebtedness secured by said Deed of Trust delivered to you herewith, together with the said Deed of Trust, and to reconvey, without warranty, to the parties designated by the terms of said Deed of Trust, all the estate now held by you under the same.

Dated

Please mail Deed of Trust,
Note and Reconveyance to JEFF PHAIR

*Do not lose or destroy this Dead of Trust OR THE NOTE which it secures. Both must be delivered to the Trustee for cancellation before reconveyance will be made.*

**EXHIBIT "A"**

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN DIEGO, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCELS 1 AND 2 OF PARCEL MAP NO. 18000, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 26, 1998.

APNS: 630-321-31 AND 32

# EXHIBIT 3

FILED
Clerk of the Superior Court

MAR 22 2024

By: B. Delgado, Deputy

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

| | |
|---|---|
| JEFF PHAIR, et al.<br>Petitioners and Respondents<br>v.<br>RENZULLI PROPERTIES, LLC<br>Respondent and Petitioner<br>and Related Cross-Actions | Case No.: 37-2022-00046736-CU-BC-CTL<br>~~[PROPOSED]~~ JUDGMENT CONFIRMING AN ARBITRATION AWARD<br>Dept: C-60<br>Judge: Hon. Matthew C. Braner<br>Action Filed: November 15, 2022<br>Trial Date: NA<br>Hearing Date: March 22, 2024<br>Hearing Time: 2:30 p.m. |

An arbitrator heard the evidence and entered a final award for Renzulli Properties, LLC against Jeffrey D. Phair, The Phair Company, LLC and Green Phair Scripps Partners, LLC (collectively in the singular as "Phair"). This Court vacated the arbitration award. Renzulli Properties, LLC appealed. The Court of Appeal reversed and ordered confirmation of the arbitration award. Phair petitioned the Supreme Court for review. The Supreme Court denied Phair's petition.

Petitioners and Respondents Jeffrey D. Phair, the Phair Company, LLC and Green Phair Scripps Partners, LLC appeared in this Court through attorneys Mark Mazzarella, Gil Abed and Paul Carelli.

Respondent and Petitioner Renzulli Properties, LLC appeared through attorney Walt Pennington.

The arbitrator issued her final award on November 7, 2022 as follows:

> If Phair fails to Close Escrow within thirty (30) days after the Final Award is served on Counsel for the Parties, Phair shall pay Renzulli $20,000 per month through Close of Escrow to compensate for monthly Close of Escrow Extensions from March 16, 2021, through March 15, 2022 ($240,000), plus interest at the legal rate on the purchase price of the property ($15,730,000 [$16,026,000 less $296,000]), from March 16, 2022 through the Close of Escrow.[8]

> No later than thirty (30) days after the Final Award is served on Counsel for the Parties, Phair shall pay Renzulli, as the prevailing Party, Costs of $21,816.65, plus interest at the legal rate of interest for each day thereafter.
>
> [8] There was no opposition to Renzulli's calculation of daily interest on $15,730,00 as $4,309.58904. If interest becomes due, that will be the daily amount for the calculation

(ROA 22, p. 25, Petition to Confirm Arb. Award, filed November 29, 2022.) Petitioners and Respondents Jeffrey D. Phair, the Phair Company, LLC and Green Phair Scripps Partners, LLC provided no evidence of a close of escrow.

Judgment is for Respondent and Petitioner Renzulli Properties, LLC in the following amounts:

| | |
|---|---|
| $240,000.00 | ($20,000 per month x 12 months) |
| $3,176,167.12 | ($4,309.58904 x 737 days [March 16, 2022 to March 22, 2024]) |
| $21,816.65 | (arbitration costs) |
| $48,460.27 | ($240,000 x 10% x 737 days/365 [arbitration interest on $240,000 from March 16, 2022 to March 22 2024]) |
| $2,994.56 | ($21,816.65 x 10% x 501 days/365 [arbitration interest on $21,816.65 from November 7, 2022 to March 22, 2024]) |
| $3,489,438.60 | is the total judgment. |

Post-judgment interest is as follows:

$4,309.58904 per day through the close of escrow ($15,730,000 x 10% / 365).

10% Interest on the judgment of $3,489,428.60

The liability of Petitioners and Respondents Jeffrey D. Phair, The Phair Company, LLC and Green Phair Scripps Partners, LLC is joint and several. The Court enters judgment in favor of Petitioner Renzulli Properties, LLC against Respondents

Jeffrey D. Phair, The Phair Company, LLC and Green Phair Scripps Partners, LLC for $3,489,438.60, plus post-judgment interest as listed above. Renzulli Properties, LLC is the prevailing party.

Petitioners and Respondents Jeffrey D. Phair, The Phair Company, LLC and Green Phair Scripps Partners, LLC take nothing.

March 22, 2024

Judge, Matthew C. Braner MAR 2 2 2024

Case 25-90069-JBM Filed 07/02/25 Entered 07/02/25 17:57 Doc 6 Pg. 88 of 209

# EXHIBIT 4

# Chicago Title Company

2365 Northside Drive, Suite 600, San Diego, CA 92108
Phone: (619) 521-3500 ● Fax: (619) 521-3608

Issuing Policies of Chicago Title Insurance Company

ORDER NO.: **00204793-CFU**

Chicago Title Company
2365 Northside Drive, Suite 600
San Diego, CA 92108
ATTN: Marshall-Lamphiere Unit
Email: MARSHALLUNIT@CTT.COM

Main Office Line: **(619) 233-3000**

Title Officer: Ken Cyr & Mark Franklin - U-50
Title Officer Phone: (619) 521-3673
Title Officer Fax: (619) 521-3608
Title Officer Email: TeamCyrFranklin@ctt.com

PROPERTY: **3145 & 3167 BEYER BOULEVARD, SAN DIEGO, CA 92154**

## FIRST AMENDED PRELIMINARY REPORT

*In response to the application for a policy of title insurance referenced herein,* ***Chicago Title Company*** *hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a policy or policies of title insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.*

*The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Attachment One. The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Attachment One. Copies of the policy forms should be read. They are available from the office which issued this report.*

*This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.*

*The policy(s) of title insurance to be issued hereunder will be policy(s) of Chicago Title Insurance Company, a* Florida *corporation.*

***Please read the exceptions shown or referred to herein and the exceptions and exclusions set forth in Attachment One of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.***

***It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.***

Chicago Title Company

By:
Authorized Signature

CHICAGO TITLE INSURANCE COMPANY CORPORATE SEAL

By: Michael J. Nolan
President

ATTEST: Marjorie Nemzura
Secretary

Chicago Title Company

2365 Northside Drive, Suite 600, San Diego, CA 92108
Phone: (619) 521-3500 ● Fax: (619) 521-3608

# PRELIMINARY REPORT

**EFFECTIVE DATE:** **March 25, 2024 at 7:30 a.m.**

**ORDER NO.: 00204793**

The form of policy or policies of title insurance contemplated by this report is:

**CLTA Standard Coverage Owner's Policy (2-4-22)**
**ALTA Extended Loan Policy (7-1-21)**

1. THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

   **A FEE**

2. TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS VESTED IN:

   **THE PHAIR COMPANY LLC, a California limited liability company**

3. THE LAND REFERRED TO IN THIS REPORT IS DESCRIBED AS FOLLOWS:

   **See Exhibit A attached hereto and made a part hereof.**

# EXHIBIT "A"

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN DIEGO, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCELS 1 AND 2 OF PARCEL MAP NO. 18000, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 26, 1998.

APN 630-321-31-00; APN 630-321-32-00

# EXCEPTIONS

**AT THE DATE HEREOF, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN SAID POLICY FORM WOULD BE AS FOLLOWS:**

A. Property taxes, which are a lien not yet due and payable, including any assessments collected with taxes to be levied for the fiscal year 2024-2025.

B. Property taxes, including any personal property taxes and any assessments collected with taxes, are as follows:

| | |
|---|---|
| Tax Identification No.: | 630-321-31-00 |
| Fiscal Year: | 2023-2024 |
| 1st Installment: | $311.10, PAID |
| 2nd Installment: | $311.10, OPEN (Delinquent after April 10) |
| Penalty and Cost: | $41.11 |
| Homeowners Exemption: | $0.00 |
| Code Area: | 08035 |

Property taxes, including any personal property taxes and any assessments collected with taxes, are as follows:

| | |
|---|---|
| Tax Identification No.: | 630-321-32-00 |
| Fiscal Year: | 2023-2024 |
| 1st Installment: | $199.96, PAID |
| 2nd Installment: | $199.96, OPEN (Delinquent after April 10) |
| Penalty and Cost: | $29.99 |
| Homeowners Exemption: | $0.00 |
| Code Area: | 08035 |

C. The lien of supplemental or escaped assessments of property taxes, if any, made pursuant to the provisions of Chapter 3.5 (commencing with Section 75) or Part 2, Chapter 3, Articles 3 and 4, respectively, of the Revenue and Taxation Code of the State of California as a result of the transfer of title to the vestee named in Schedule A or as a result of changes in ownership or new construction occurring prior to Date of Policy.

1. Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | San Diego Gas & Electric Company |
| Purpose: | Public utilities, ingress, and egress |
| Recording Date: | April 27, 1951 |
| Recording No: | Book 4076, Page 292 of Official Records |
| Affects: | A portion of said land as more particularly described in said document |

2. Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | San Diego Gas & Electric Company |
| Purpose: | Public utilities, ingress, and egress |
| Recording Date: | May 18, 1951 |
| Recording No: | Book 4104, Page 311 of Official Records |
| Affects: | A portion of said land as more particularly described in said document |

## EXCEPTIONS
## (Continued)

3. Easement(s) for the purpose(s) shown below and rights incidental thereto, as granted in a document:

| | |
|---|---|
| Granted to: | San Diego Gas & Electric Company |
| Purpose: | Public utilities, ingress, and egress |
| Recording Date: | May 23, 1952 |
| Recording No: | Book 4476, Page 456 of Official Records |
| Affects: | A portion of said land as more particularly described in said document |

4. A deed of trust to secure an indebtedness in the amount shown below,

| | |
|---|---|
| Amount: | $1,999,000.00 |
| Dated: | March 17, 2023 |
| Trustor/Grantor: | The Phair Company LLC |
| Trustee: | Chicago Title Company, a California Corporation |
| Beneficiary: | Robert N. Conrad and Daryl Lyne Conrad, as Co-trustees of The Victor Cherniak Trust dated August 27, 1993, as restated and amended, and Robert N. Conrad and Daryl Lyne Conrad, Co-Trustees under Trust “B” of the Cherniak Family Trust dated April 3, 1990 |
| Recording Date: | April 16, 2023 |
| Recording No: | 2023-0066759 of Official Records |

5. Water rights, claims or title to water, whether or not disclosed by the public records.

6. Matters which may be disclosed by an inspection and/or by a correct ALTA/NSPS Land Title Survey of said Land that is satisfactory to the Company, and/or by inquiry of the parties in possession thereof.

7. Any rights of the parties in possession of a portion of, or all of, said Land, which rights are not disclosed by the public records.

   The Company will require, for review, a full and complete copy of any unrecorded agreement, contract, license and/or lease, together with all supplements, assignments and amendments thereto, before issuing any policy of title insurance without excepting this item from coverage.

   The Company reserves the right to except additional items and/or make additional requirements after reviewing said documents.

**PLEASE REFER TO THE “INFORMATIONAL NOTES” AND “REQUIREMENTS” SECTIONS WHICH FOLLOW FOR INFORMATION NECESSARY TO COMPLETE THIS TRANSACTION.**

---

**END OF EXCEPTIONS**

---

## REQUIREMENTS SECTION

1. The Company will require the following documents for review prior to the issuance of any title insurance predicated upon a conveyance or encumbrance from the entity named below:

   Limited Liability Company: The Phair Company LLC, a California limited liability company

   a) A copy of its operating agreement, if any, and all amendments, supplements and/or modifications thereto, certified by the appropriate manager or member.

   b) If a domestic Limited Liability Company, a copy of its Articles of Organization and all amendments thereto with the appropriate filing stamps.

   c) If the Limited Liability Company is member-managed, a full and complete current list of members certified by the appropriate manager or member.

   d) A current dated certificate of good standing from the proper governmental authority of the state in which the entity is currently domiciled.

   e) If less than all members, or managers, as appropriate, will be executing the closing documents, furnish evidence of the authority of those signing.

   f) If Limited Liability Company is a Single Member Entity, a Statement of Information for the Single Member will be required.

   g) Each member and manager of the LLC without an Operating Agreement must execute in the presence of a notary public the Certificate of California LLC (Without an Operating Agreement) Status and Authority form.

---

**END OF REQUIREMENTS**

---

# INFORMATIONAL NOTES SECTION

1. None of the items shown in this report will cause the Company to decline to attach ALTA Endorsement Form 9 to an Extended Coverage Loan Policy, when issued.

2. The Company is not aware of any matters which would cause it to decline to attach CLTA Endorsement Form 116 indicating that there is located on said Land Commercial properties, known as 3145 & 3167 Beyer Boulevard, located within the city of San Diego, California, 92154, to an Extended Coverage Loan Policy.

3. The policy of title insurance will include an arbitration provision. The Company or the insured may demand arbitration. Arbitrable matters may include, but are not limited to, any controversy or claim between the Company and the insured arising out of or relating to this policy, any service of the Company in connection with its issuance or the breach of a policy provision or other obligation. Please ask your escrow or title officer for a sample copy of the policy to be issued if you wish to review the arbitration provisions and any other provisions pertaining to your Title Insurance coverage.

4. Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

5. Pursuant to Government Code Section 27388.1, as amended and effective as of 1-1-2018, a Documentary Transfer Tax (DTT) Affidavit may be required to be completed and submitted with each document when DTT is being paid or when an exemption is being claimed from paying the tax. If a governmental agency is a party to the document, the form will not be required. DTT Affidavits may be available at a Tax Assessor-County Clerk-Recorder.

6. The following Exclusion(s) are added to preliminary reports, commitments and will be included as an endorsement in the following policies:

   A. 2006 ALTA Owner's Policy (06-17-06).

      6. Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

   B. 2006 ALTA Loan Policy (06-17-06).

      8. Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

      9. Any claim of invalidity, unenforceability, or lack of priority of the lien of the Insured Mortgage based on the application of a Tribe's law resulting from the failure of the Insured Mortgage to specify State law as the governing law with respect to the lien of the Insured Mortgage.

   C. ALTA Homeowner's Policy of Title Insurance (12-02-13) and CLTA Homeowner's Policy of Title Insurance (12-02-13).

      10. Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

   D. ALTA Expanded Coverage Residential Loan Policy - Assessments Priority (04-02-15).

      12. Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the Public Records but that would be disclosed by an examination of any records maintained by or on behalf of a Tribe or on behalf of its members.

      13. Any claim of invalidity, unenforceability, or lack of priority of the lien of the Insured Mortgage based on the application of a Tribe's law resulting from the failure of the

Case 25-90067-JBM11 Filed 07/03/25 Entered 07/03/25 13:17:29 Doc 1 Pg. 96 of 209

## INFORMATIONAL NOTES
## (Continued)

Insured Mortgage to specify State law as the governing law with respect to the lien of the Insured Mortgage.

E. CLTA Standard Coverage Policy 1990 (11-09-18).

7. Defects, liens, encumbrances, adverse claims, notices, or other matters not appearing in the public records but that would be disclosed by an examination of any records maintained by or on behalf of a tribe or on behalf of its members.

8. Any claim of invalidity, unenforceability, or lack of priority of the lien of the insured mortgage based on the application of a tribe's law resulting from the failure of the insured mortgage to specify state law as the governing law with respect to the lien of the insured mortgage.

7. There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

---

**END OF INFORMATIONAL NOTES**

---

Ken Cyr & Mark Franklin - U-50/ah1

Inquire before you wire!

# Wire Fraud Alert

This Notice is not intended to provide legal or professional advice. If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.
- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the phone number of relevant parties to the transaction as soon as an escrow account is opened**. DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.
- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.
- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

***Federal Bureau of Investigation:***
***http://www.fbi.gov***

***Internet Crime Complaint Center:***
***http://www.ic3.gov***


*TM and © Fidelity National Financial, Inc. and/or an affiliate. All rights reserved*

**Chicago Title Company**

2365 Northside Drive, Suite 600, San Diego, CA 92108
Phone: (619) 521-3500 ● Fax: (619) 521-3608

## Notice of Available Discounts

Pursuant to Section 2355.3 in Title 10 of the California Code of Regulations Fidelity National Financial, Inc. and its subsidiaries ("FNF") must deliver a notice of each discount available under our current rate filing along with the delivery of escrow instructions, a preliminary report or commitment. Please be aware that the provision of this notice does not constitute a waiver of the consumer's right to be charged the filed rate. As such, your transaction may not qualify for the below discounts.

You are encouraged to discuss the applicability of one or more of the below discounts with a Company representative. These discounts are generally described below; consult the rate manual for a full description of the terms, conditions and requirements for such discount. These discounts only apply to transactions involving services rendered by the FNF Family of Companies. This notice only applies to transactions involving property improved with a one-to-four family residential dwelling.

Not all discounts are offered by every FNF Company. The discount will only be applicable to the FNF Company as indicated by the named discount.

| FNF Underwritten Title Company | Underwritten by FNF Underwriters |
|---|---|
| CTC – Chicago Title company | CTIC – Chicago Title Insurance Company |
| CLTC – Commonwealth Land Title Company | CLTIC - Commonwealth Land Title Insurance Company |
| FNTC – Fidelity National Title Company of California | FNTIC – Fidelity National Title Insurance Company |
| FNTCCA - Fidelity National Title Company of California | FNTIC - Fidelity National Title Insurance Company |
| TICOR – Ticor Title Company of California | CTIC – Chicago Title Insurance Company |
| LTC – Lawyer's Title Company | CLTIC – Commonwealth Land Title Insurance Company |
| SLTC – ServiceLink Title Company | CTIC – Chicago Title Insurance Company |

### Available Discounts

**DISASTER LOANS (CTIC, CLTIC, FNTIC)**
The charge for a Lender's Policy (Standard or Extended coverage) covering the financing or refinancing by an owner of record, within twenty-four (24) months of the date of a declaration of a disaster area by the government of the United States or the State of California on any land located in said area, which was partially or totally destroyed in the disaster, will be fifty percent (50%) of the appropriate title insurance rate.

**CHURCHES OR CHARITABLE NON-PROFIT ORGANIZATIONS (CTIC, FNTIC)**
On properties used as a church or for charitable purposes within the scope of the normal activities of such entities, provided said charge is normally the church's obligation the charge for an owner's policy shall be fifty percent (50%) to seventy percent (70%) of the appropriate title insurance rate, depending on the type of coverage selected. The charge for a lender's policy shall be forty (40%) to fifty percent (50%) of the appropriate title insurance rate, depending on the type of coverage selected.

**FIDELITY NATIONAL FINANCIAL, INC.**
**PRIVACY NOTICE**

## Effective December 1, 2023

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, “FNF,” “our,” or “we”) respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices. If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary’s website and this Privacy Notice does not apply.

**Collection of Personal Information**
FNF may collect the following categories of Personal Information:
- contact information (*e.g.*, name, address, phone number, email address);
- demographic information (*e.g.*, date of birth, gender, marital status);
- identity information (*e.g.* Social Security Number, driver’s license, passport, or other government ID number);
- financial account information (*e.g.* loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:
- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

**Collection of Browsing Information**
FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an “FNF Website”) from your Internet browser, computer, and/or device:
- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

**Other Online Specifics**
Cookies. When you visit an FNF Website, a “cookie” may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer’s hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

Web Beacons. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

Do Not Track. Currently our FNF Websites do not respond to “Do Not Track” features enabled through your browser.

Links to Other Sites. FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

**Use of Personal Information**
FNF uses Personal Information for these main purposes:
- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates’, and others’ products and services, jointly or independently.
- To provide reviews and testimonials about our services, with your consent.

**When Information Is Disclosed**
We may disclose your Personal Information and Browsing Information in the following circumstances:
- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to affiliated or nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;


Copyright © 2023. Fidelity National Financial, Inc. All Rights Reserved

- to affiliated or nonaffiliated third parties with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above-described proceedings.

**Security of Your Information**
We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

**Choices With Your Information**
Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

For Connecticut Residents: For additional information about your Connecticut consumer privacy rights, or to make a consumer privacy request, or to appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

For Colorado Residents: For additional information about your Colorado consumer privacy rights, or to make a consumer privacy request, or appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

For Nevada Residents: We are providing this notice pursuant to state law. You may be placed on our internal Do Not Call List by calling FNF Privacy at (888) 714-2710 or by contacting us via the information set forth at the end of this Privacy Notice. For further information concerning Nevada's telephone solicitation law, you may contact: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: aginquiries@ag.state.nv.us.
For Oregon Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Utah Residents: For additional information about your Utah consumer privacy rights, or to make a consumer privacy request, please call (888) 714-2710.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

For Virginia Residents: For additional information about your Virginia consumer privacy rights, or to make a consumer privacy request, or appeal a previous privacy request, please email privacy@fnf.com or call (888) 714-2710.

**Information From Children**
The FNF Websites are not intended or designed to attract persons under the age of eighteen (18).We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

**International Users**
FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

**FNF Website Services for Mortgage Loans**
Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with


Copyright © 2023. Fidelity National Financial, Inc. All Rights Reserved

Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

**Your Consent to this Privacy Notice; Notice Changes**

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

**Accessing and Correcting Information; Contact Us**

If you have questions or would like to correct your Personal Information, visit FNF's Privacy Inquiry Website or contact us by phone at (888) 714-2710, by email at privacy@fnf.com, or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue
Jacksonville, Florida 32204
Attn: Chief Privacy Officer


Copyright © 2023. Fidelity National Financial, Inc. All Rights Reserved

# ATTACHMENT ONE

## CALIFORNIA LAND TITLE ASSOCIATION
## STANDARD COVERAGE POLICY – 1990 (11-09-18)

### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building or zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien, or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
   (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2. Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3. Defects, liens, encumbrances, adverse claims or other matters:
   (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
   (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
   (c) resulting in no loss or damage to the insured claimant;
   (d) attaching or created subsequent to Date of Policy; or
   (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4. Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable doing business laws of the state in which the land is situated.
5. Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6. Any claim, which arises out of the transaction vesting in the insured the estate of interest insured by this policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART I

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
   Proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the public records.
2. Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3. Easements, liens or encumbrances, or claims thereof, not shown by the public records.
4. Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b) or (c) are shown by the public records.
6. Any lien or right to a lien for services, labor or material unless such lien is shown by the public records at Date of Policy.

### EXCEPTIONS FROM COVERAGE - SCHEDULE B, PART II
(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)

## CALIFORNIA LAND TITLE ASSOCIATION
## STANDARD COVERAGE OWNER'S POLICY (02-04-22)

### EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
      i. the occupancy, use, or enjoyment of the Land;
      ii. the character, dimensions, or location of any improvement on the Land;
      iii. the subdivision of land; or
      iv. environmental remediation or protection.
   b. any governmental forfeiture, police, regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b. Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2. Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3. Any defect, lien, encumbrance, adverse claim, or other matter:

a. created, suffered, assumed, or agreed to by the Insured Claimant;
b. not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
c. resulting in no loss or damage to the Insured Claimant;
d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
e. resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.

4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
      i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
      ii. for any other reason not stated in Covered Risk 9.b.
5. Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
6. Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
7. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

### PART I

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.

PART II

(Variable exceptions such as taxes, easements, CC&R's, etc., are inserted here)

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (07-01-2021)

## EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy and We will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
      i. the occupancy, use, or enjoyment of the Land;
      ii. the character, dimensions, or location of any improvement on the Land;
      iii. the subdivision of land; or
      iv. environmental remediation or protection.
   b. any governmental forfeiture, police, or regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b. Exclusion 1 does not modify or limit the coverage provided under Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23, or 27.
2. Any power to take the Land by condemnation. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 17.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by You;
   b. not Known to Us, not recorded in the Public Records at the Date of Policy, but Known to You and not disclosed in writing to Us by You prior to the date You became an Insured under this policy;
   c. resulting in no loss or damage to You;

- d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 5, 8.f., 25, 26, 27, 28, or 32); or
- e. resulting in loss or damage that would not have been sustained if You paid consideration sufficient to qualify You as a bona fide purchaser of the Title at the Date of Policy.

4. Lack of a right:
   - a. to any land outside the area specifically described and referred to in Item 3 of Schedule A; and
   - b. in any street, road, avenue, alley, lane, right-of-way, body of water, or waterway that abut the Land.

   Exclusion 4 does not modify or limit the coverage provided under Covered Risk 11 or 21.
5. The failure of Your existing structures, or any portion of Your existing structures, to have been constructed before, on, or after the Date of Policy in accordance with applicable building codes. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 14 or 15.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transfer of the Title to You is a:
   - a. fraudulent conveyance or fraudulent transfer;
   - b. voidable transfer under the Uniform Voidable Transactions Act; or
   - c. preferential transfer:
     - i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
     - ii. for any other reason not stated in Covered Risk 30.
7. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
8. Negligence by a person or an entity exercising a right to extract or develop oil, gas, minerals, groundwater, or any other subsurface substance.
9. Any lien on Your Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 9 does not modify or limit the coverage provided under Covered Risk 8.a. or 27.
10. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| | Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $5,000.00 |

## CLTA/ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE (12-02-13)

## EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1. Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
   - a. building;
   - b. zoning;
   - c. land use;
   - d. improvements on the Land;
   - e. land division; and
   - f. environmental protection.

   This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2. The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3. The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4. Risks:
   - a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
   - b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the Policy Date;
   - c. that result in no loss to You; or
   - d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5. Failure to pay value for Your Title.
6. Lack of a right:
   - a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
   - b. in streets, alleys, or waterways that touch the Land.

   This Exclusion does not limit the coverage described in Covered Risk 11 or 21.
7. The transfer of the Title to You is invalid as a preferential transfer or as a fraudulent transfer or conveyance under federal bankruptcy, state insolvency, or similar creditors' rights laws.
8. Contamination, explosion, fire, flooding, vibration, fracturing, earthquake, or subsidence.
9. Negligence by a person or an Entity exercising a right to extract or develop minerals, water, or any other substances.

## LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows:

- For Covered Risk 16, 18, 19, and 21 Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A.

The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

Our Maximum Dollar

| | Your Deductible Amount | Limit of Liability |
|---|---|---|
| Covered Risk 16: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: | 1.00% of Policy Amount Shown in Schedule A or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: | 1.00% of Policy Amount Shown in Schedule A or $2,500.00 (whichever is less) | $5,000.00 |

## ALTA OWNER'S POLICY (07-01-2021)

## EXCLUSIONS FROM COVERAGE

The following matters are excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. a. any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) that restricts, regulates, prohibits, or relates to:
   i. the occupancy, use, or enjoyment of the Land;
   ii. the character, dimensions, or location of any improvement on the Land;
   iii. the subdivision of land; or
   iv. environmental remediation or protection.
   b. any governmental forfeiture, police, regulatory, or national security power.
   c. the effect of a violation or enforcement of any matter excluded under Exclusion 1.a. or 1.b. Exclusion 1 does not modify or limit the coverage provided under Covered Risk 5 or 6.
2. Any power of eminent domain. Exclusion 2 does not modify or limit the coverage provided under Covered Risk 7.
3. Any defect, lien, encumbrance, adverse claim, or other matter:
   a. created, suffered, assumed, or agreed to by the Insured Claimant;
   b. not Known to the Company, not recorded in the Public Records at the Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
   c. resulting in no loss or damage to the Insured Claimant;
   d. attaching or created subsequent to the Date of Policy (Exclusion 3.d. does not modify or limit the coverage provided under Covered Risk 9 or 10); or
   e. resulting in loss or damage that would not have been sustained if consideration sufficient to qualify the Insured named in Schedule A as a bona fide purchaser had been given for the Title at the Date of Policy.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights law, that the transaction vesting the Title as shown in Schedule A is a:
   a. fraudulent conveyance or fraudulent transfer;
   b. voidable transfer under the Uniform Voidable Transactions Act; or
   c. preferential transfer:
      i. to the extent the instrument of transfer vesting the Title as shown in Schedule A is not a transfer made as a contemporaneous exchange for new value; or
      ii. for any other reason not stated in Covered Risk 9.b.
   5. Any claim of a PACA-PSA Trust. Exclusion 5 does not modify or limit the coverage provided under Covered Risk 8.
   6. Any lien on the Title for real estate taxes or assessments imposed or collected by a governmental authority that becomes due and payable after the Date of Policy. Exclusion 6 does not modify or limit the coverage provided under Covered Risk 2.b.
   7. Any discrepancy in the quantity of the area, square footage, or acreage of the Land or of any improvement to the Land.

## EXCEPTIONS FROM COVERAGE

**Some historical land records contain Discriminatory Covenants that are illegal and unenforceable by law. This policy treats any Discriminatory Covenant in a document referenced in Schedule B as if each Discriminatory Covenant is redacted, repudiated, removed, and not republished or recirculated. Only the remaining provisions of the document are excepted from coverage.**

This policy does not insure against loss or damage and the Company will not pay costs, attorneys' fees, or expenses resulting from the terms and conditions of any lease or easement identified in Schedule A, and the following matters:

*NOTE: The 2021 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed as 1 through 7 below:*

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land or (b) asserted by persons or parties in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B

## 2006 ALTA OWNER'S POLICY (06-17-06)

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to
    (i) the occupancy, use, or enjoyment of the Land;
    (ii) the character, dimensions, or location of any improvement erected on the Land;
    (iii) the subdivision of land; or
    (iv) environmental protection;
    or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
    (a) created, suffered, assumed, or agreed to by the Insured Claimant;
    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
    (c) resulting in no loss or damage to the Insured Claimant;
    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that the transaction vesting the Title as shown in Schedule A, is
    (a) a fraudulent conveyance or fraudulent transfer; or
    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.
5. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

## EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage, and the Company will not pay costs, attorneys' fees or expenses, that arise by reason of:

*NOTE: The 2006 ALTA Owner's Policy may be issued to afford either Standard Coverage or Extended Coverage. In addition to variable exceptions such as taxes, easements, CC&R's, etc., the Exceptions from Coverage in a Standard Coverage policy will also include the Western Regional Standard Coverage Exceptions listed below as 1 through 7 below:*

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Any facts, rights, interests, or claims that are not shown by the Public Records at Date of Policy but that could be (a) ascertained by an inspection of the Land, or (b) asserted by persons or parties in possession of the Land.
3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records at Date of Policy.
4. Any encroachment, encumbrance, violation, variation, easement, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records at Date of Policy.
5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.
6. Any lien or right to a lien for services, labor, material or equipment unless such lien is shown by the Public Records at Date of Policy.
7. Any claim to (a) ownership of or rights to minerals and similar substances, including but not limited to ores, metals, coal, lignite, oil, gas, uranium, clay, rock, sand, and gravel located in, on, or under the Land or produced from the Land, whether such ownership or rights arise by lease, grant, exception, conveyance, reservation, or otherwise; and (b) any rights, privileges, immunities, rights of way, and easements associated therewith or appurtenant thereto, whether or not the interests or rights excepted in (a) or (b) appear in the Public Records or are shown in Schedule B.




This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.




This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.




This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land, and is not a survey of the land depicted. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances, location of easements, acreage or other matters shown thereon.

# EXHIBIT 5

CIV-130

| ATTORNEY OR PARTY WITHOUT ATTORNEY | FOR COURT USE ONLY |
|---|---|
| NAME: Walt Pennington 214470 STATE BAR NUMBER:<br>FIRM NAME: Pennington Law Firm<br>STREET ADDRESS: 3304 30th Street<br>CITY: San Diego STATE: CA ZIP CODE: 92104-4535<br>TELEPHONE NO.: (619) 940-6157 FAX NO.:<br>EMAIL ADDRESS: wpennington@pennfirm.com<br>ATTORNEY FOR (name): Reznulli Properties LLC | ELECTRONICALLY FILED<br>Superior Court of California,<br>County of San Diego<br>03/28/2024 at 07:15:00 AM<br>Clerk of the Superior Court<br>By Jonathan Renteria, Deputy Clerk |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego<br>STREET ADDRESS: 330 W. Broadway<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: Hall of Justice | |
| PLAINTIFF/PETITIONER: Jeff Phair, et al.<br>DEFENDANT/RESPONDENT: Renzulli Properties, LLC | |
| **NOTICE OF ENTRY OF JUDGMENT OR ORDER**<br>*(Check one):* [X] **UNLIMITED CASE** (Amount demanded exceeded $35,000) [ ] **LIMITED CASE** (Amount demanded was $35,000 or less) | CASE NUMBER:<br>37-2022-00046736-CU-BC-CTL |

**TO ALL PARTIES:**

1. A judgment, decree, or order was entered in this action on *(date):* March 22, 2024

2. A copy of the judgment, decree, or order is attached to this notice.

Date: March 28, 2024

Walt Pennington ▶ s/ Walt Pennington

(TYPE OR PRINT NAME OF [X] ATTORNEY [ ] PARTY WITHOUT ATTORNEY) (SIGNATURE)

| PLAINTIFF/PETITIONER: **Jeff Phair, et al.**<br>DEFENDANT/RESPONDENT: **Renzulli Properties, LLC** | CASE NUMBER:<br>**37-2022-00046736-CU-BC-CTL** |
|---|---|

## PROOF OF SERVICE BY FIRST-CLASS MAIL
### NOTICE OF ENTRY OF JUDGMENT OR ORDER

***(NOTE: You cannot serve the* Notice of Entry of Judgment or Order *if you are a party in the action. The person who served the notice must complete this proof of service.)***

1. I am at least 18 years old and **not a party to this action.** I am a resident of or employed in the county where the mailing took place, and my residence or business address is *(specify):*

2. I served a copy of the *Notice of Entry of Judgment or Order* by enclosing it in a sealed envelope with postage fully prepaid and *(check one):*

   a. ☐ deposited the sealed envelope with the United States Postal Service.

   b. ☐ placed the sealed envelope for collection and processing for mailing, following this business's usual practices, with which I am readily familiar. On the same day correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service.

3. The *Notice of Entry of Judgment or Order* was mailed:

   a. on *(date):*

   b. from *(city and state):*

4. The envelope was addressed and mailed as follows:

   a. Name of person served:

   Street address:

   City:

   State and zip code:

   b. Name of person served:

   Street address:

   City:

   State and zip code:

   c. Name of person served:

   Street address:

   City:

   State and zip code:

   d. Name of person served:

   Street address:

   City:

   State and zip code:

   ☐ Names and addresses of additional persons served are attached. *(You may use form POS-030(P).)*

5. Number of pages attached

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:

(TYPE OR PRINT NAME OF DECLARANT) ▶ (SIGNATURE OF DECLARANT)

FILED
Clerk of the Superior Court
MAR 22 2024
By: B. Delgado, Deputy

**SUPERIOR COURT OF CALIFORNIA**

**COUNTY OF SAN DIEGO**

| | |
|---|---|
| JEFF PHAIR, et al.<br>Petitioners and Respondents<br>v.<br>RENZULLI PROPERTIES, LLC<br>Respondent and Petitioner<br>and Related Cross-Actions | Case No.: 37-2022-00046736-CU-BC-CTL<br>[~~PROPOSED~~] JUDGMENT CONFIRMING AN ARBITRATION AWARD<br>Dept: C-60<br>Judge: Hon. Matthew C. Braner<br>Action Filed: November 15, 2022<br>Trial Date: NA<br>Hearing Date: March 22, 2024<br>Hearing Time: 2:30 p.m. |

An arbitrator heard the evidence and entered a final award for Renzulli Properties, LLC against Jeffrey D. Phair, The Phair Company, LLC and Green Phair Scripps Partners, LLC (collectively in the singular as "Phair"). This Court vacated the arbitration award. Renzulli Properties, LLC appealed. The Court of Appeal reversed and ordered confirmation of the arbitration award. Phair petitioned the Supreme Court for review. The Supreme Court denied Phair's petition.

Petitioners and Respondents Jeffrey D. Phair, the Phair Company, LLC and Green Phair Scripps Partners, LLC appeared in this Court through attorneys Mark Mazzarella, Gil Abed and Paul Carelli.

Respondent and Petitioner Renzulli Properties, LLC appeared through attorney Walt Pennington.

The arbitrator issued her final award on November 7, 2022 as follows:

> If Phair fails to Close Escrow within thirty (30) days after the Final Award is served on Counsel for the Parties, Phair shall pay Renzulli $20,000 per month through Close of Escrow to compensate for monthly Close of Escrow Extensions from March 16, 2021, through March 15, 2022 ($240,000), plus interest at the legal rate on the purchase price of the property ($15,730,000 [$16,026,000 less $296,000]), from March 16, 2022 through the Close of Escrow.[8]

> No later than thirty (30) days after the Final Award is served on Counsel for the Parties, Phair shall pay Renzulli, as the prevailing Party, Costs of $21,816.65, plus interest at the legal rate of interest for each day thereafter.
>
> [8] There was no opposition to Renzulli's calculation of daily interest on $15,730,00 as $4,309.58904. If interest becomes due, that will be the daily amount for the calculation

(ROA 22, p. 25, Petition to Confirm Arb. Award, filed November 29, 2022.) Petitioners and Respondents Jeffrey D. Phair, the Phair Company, LLC and Green Phair Scripps Partners, LLC provided no evidence of a close of escrow.

Judgment is for Respondent and Petitioner Renzulli Properties, LLC in the following amounts:

| | |
|---|---|
| $240,000.00 | ($20,000 per month x 12 months) |
| $3,176,167.12 | ($4,309.58904 x 737 days [March 16, 2022 to March 22, 2024]) |
| $21,816.65 | (arbitration costs) |
| $48,460.27 | ($240,000 x 10% x 737 days/365 [arbitration interest on $240,000 from March 16, 2022 to March 22 2024]) |
| $2,994.56 | ($21,816.65 x 10% x 501 days/365 [arbitration interest on $21,816.65 from November 7, 2022 to March 22, 2024]) |
| $3,489,438.60 | is the total judgment. |

Post-judgment interest is as follows:

$4,309.58904 per day through the close of escrow ($15,730,000 x 10% / 365).

10% Interest on the judgment of $3,489,428.60

The liability of Petitioners and Respondents Jeffrey D. Phair, The Phair Company, LLC and Green Phair Scripps Partners, LLC is joint and several. The Court enters judgment in favor of Petitioner Renzulli Properties, LLC against Respondents

Jeffrey D. Phair, The Phair Company, LLC and Green Phair Scripps Partners, LLC for $3,489,438.60, plus post-judgment interest as listed above. Renzulli Properties, LLC is the prevailing party.

Petitioners and Respondents Jeffrey D. Phair, The Phair Company, LLC and Green Phair Scripps Partners, LLC take nothing.

March 22, 2024

Judge, Matthew C. Braner MAR 22 2024

# EXHIBIT 6

POS-050/EFS-050

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO: | FOR COURT USE ONLY |
|---|---|
| NAME: Walt Pennington 214470<br>FIRM NAME: Pennington Law Firm<br>STREET ADDRESS: 3304 30th Street<br>CITY: San Diego STATE: CA ZIP CODE: 92104-4535<br>TELEPHONE NO.: (619) 940-6157 FAX NO.:<br>E-MAIL ADDRESS: wpennington@pennfirm.com<br>ATTORNEY FOR *(name)*: Reznulli Properties LLC | ELECTRONICALLY FILED<br>Superior Court of California,<br>County of San Diego<br>03/28/2024 at 07:15:00 AM<br>Clerk of the Superior Court<br>By Jonathan Renteria,Deputy Clerk |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego<br>STREET ADDRESS: 330 W. Broadway<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: Hall of Justice | |
| PLAINTIFF/PETITIONER: Jeff Phair, et al.<br>DEFENDANT/RESPONDENT: Renzulli Properties, LLC | CASE NUMBER: 37-2022-00046736-CU-BC-CTL<br>JUDICIAL OFFICER: Matthew C. Braner |
| **PROOF OF ELECTRONIC SERVICE** | DEPARTMENT: C-60 |

1. I am at least 18 years old.
   a. My residence or business address is *(specify)*:
   **3304 30th Street, San Diego, CA 92104**
   b. My electronic service address is *(specify)*:
   **wpennington@pennfirm.com**

2. I electronically served the following documents *(exact titles)*:
   **Notice of Entry of Judgment - CIV-130**

   ☐ The documents served are listed in an attachment. *(Form POS-050(D)/EFS-050(D) may be used for this purpose.)*

3. I electronically served the documents listed in 2 as follows:
   a. Name of person served: **Mark Mazzarella, Gil Abed, Paul Carelli**
   On behalf of *(name or names of parties represented, if person served is an attorney)*:
   **Jeff Phair, The Phair Company LLC and Green Phair Scripps Partners LLC**
   b. Electronic service address of person served: **Mark@mazzarellalaw.com, gabed@as7law.com, PCarelli@as7law.com**
   c. On *(date)*: **March 28, 2024**

   ☐ The documents listed in item 2 were served electronically on the persons and in the manner described in an attachment. *(Form POS-050(P)/EFS-050(P) may be used for this purpose.)*

Date: **March 28, 2024**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Walt Pennington** ▶ **s/ Walt Pennington**

(TYPE OR PRINT NAME OF DECLARANT) (SIGNATURE OF DECLARANT)

# EXHIBIT 7

x
3P

PLEASE COMPLETE THIS INFORMATION

RECORDING REQUESTED BY

Renzulli Properties LLC

AND WHEN RECORDED MAIL TO

Pennington Law Firm
3304 30th Street
San Diego, CA 92104

DOC# 2024-0079649

Apr 02, 2024 08 31 AM
OFFICIAL RECORDS
JORDAN Z MARKS,
SAN DIEGO COUNTY RECORDER
FEES $95 00 (SB2 Atkins $75 00)

PAGES 3

*THIS SPACE FOR RECORDER'S USE ONLY*

Abstract of Judgment - Civil and Small Claims

(Please fill in document title(s) on this line)

THIS PAGE ADDED TO PROVIDE ADEQUATE SPACE FOR RECORDING INFORMATION
(Additional recording fee applies)

9/95
Rec Form #R25

EJ-001

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name address, and State Bar number)*
After recording, return to **214470**
**Walt Pennington**
**Pennington Law Firm**
**3304 30th Street**
**San Diego, CA 92104-4535**
TEL NO **(619) 940-6157** FAX NO *(optional)*
E MAIL ADDRESS *(Optional)* **wpennington@pennfirm.com**
[X] ATTORNEY FOR [X] JUDGMENT CREDITOR [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **San Diego**
STREET ADDRESS **330 W. Broadway**
MAILING ADDRESS
CITY AND ZIP CODE **San Diego, CA 92101**
BRANCH NAME **Hall of Justice**

*FOR RECORDER'S USE ONLY*

PLAINTIFF **Jeff Phair, et al.**
DEFENDANT **Renzulli Properties, LLC**

CASE NUMBER
**37-2022-00046736-CU-BC-CTL**

**ABSTRACT OF JUDGMENT - CIVIL AND SMALL CLAIMS** [ ] **Amended**

*FOR COURT USE ONLY*

Pursuant to Government Code § 68150(f), the Clerk of the Court hereby certifies this document accurately reflects the official court record The electronic signature and seal on this document have the same validity and legal force and effect as an original clerk's signature and court seal Government Code § 68150(g)

1 The [X] judgment creditor [ ] assignee of record applies for an abstract of judgment and represents the following

a Judgment debtor's

Name and last known address

**Jeffrey D. Phair**
**945 East J Street**
**Chula Vista, CA 91910**

b Driver's license no [last 4 digits] and state [X] Unknown

c Social security no [last 4 digits] [X] Unknown

d Summons or notice of entry of sister-state judgment was personally served or mailed to *(name and address)*
**Renzulli Properties LLC was a respondent and defendant. No summons was issued to Renzulli Properties LLC**

2 [X] Information on additional judgment debtors is shown on page 2

3 Judgment creditor *(name and address)*.
**Renzulli Properties LLC, Agent: Thomas Renzulli, 3383 La Junta Avenue**
**San Diego, CA 92117**

4 [ ] Information on additional judgment creditors is shown on page 2

5 [ ] Original abstract recorded in this county

a Date

b Instrument No

Date **March 22, 2024**
**Walt Pennington**
(TYPE OR PRINT NAME)

**s/ Walt Pennington**
(SIGNATURE OF APPLICANT OR ATTORNEY)

6 Total amount of judgment as entered or last renewed
$ **3,489,438.60**

7 All judgment creditors and debtors are listed on this abstract

8 a Judgment entered on *(date)* **March 22, 2024**

b Renewal entered on *(date)*

9 [ ] This judgment is an installment judgment

10 [ ] An [ ] execution lien [ ] attachment lien is endorsed on the judgment as follows

a Amount $

b In favor of *(name and address)*

11 A stay of enforcement has

a [X] not been ordered by the court

b [ ] been ordered by the court effective until *(date)*

12 a [X] I certify that this is a true and correct abstract of the judgment entered in this action

b [ ] A certified copy of the judgment is attached

[SEAL]




This abstract issued on *(date)*
03/29/2024

Clerk, by G Lopez, Deputy

| PLAINTIFF Jeff Phair, et al. | COURT CASE NO |
|---|---|
| DEFENDANT Renzulli Properties, LLC | 37-2022-00046736-CU-BC-CTL |

**NAMES AND ADDRESSES OF ADDITIONAL JUDGMENT CREDITORS**

13 Judgment creditor *(name and address)*

14 Judgment creditor *(name and address)*

15 ☐ Continued on Attachment 15

**INFORMATION ON ADDITIONAL JUDGMENT DEBTORS**

16 Name and last known address

**Green Phair Scripps Partners LLC**
**Agent: Jeff Phair**
**945 East J Street**
**Chula Vista, CA 91910**

Driver's license no [last 4 digits] and state ☒ Unknown

Social security no [last 4 digits] ☒ Unknown

Summons was personally served at or mailed to *(address)*
**Renzulli Properties LLC was a respondent and defendant. No summons was issued to Renzulli Properties LLC**

17 Name and last known address

**The Phair Company LLC**
**Agent: Jeff Phair**
**945 East J Street**
**Chula Vista, CA 91910**

Driver's license no [last 4 digits] and state ☒ Unknown

Social security no [last 4 digits] ☒ Unknown

Summons was personally served at or mailed to *(address)*
**Renzulli Properties LLC was a respondent and defendant. No summons was issued to Renzulli Properties LLC**

18 Name and last known address

Driver's license no [last 4 digits] and state ☐ Unknown

Social security no [last 4 digits] ☐ Unknown

Summons was personally served at or mailed to *(address)*

19 Name and last known address

Driver's license no [last 4 digits] and state ☐ Unknown

Social security no [last 4 digits] ☐ Unknown

Summons was personally served at or mailed to *(address)*

20 ☐ Continued on Attachment 20

San Diego County

Transaction # 7686980
Receipt # 2024113561

JORDAN Z MARKS
Assessor/Recorder/County Clerk
1600 Pacific Highway Suite 260
P O Box 121750, San Diego, CA 92112-1750
Tel (619) 237-0502 Fax (619) 557-4155
www sdarcc gov

Cashier Date 04/02/2024
Cashier Location SD

Print Date 04/02/2024 8 31 am

Payment Summary

| | |
|---|---|
| Total Fees | $95 00 |
| Total Payments | $95 00 |
| Balance | $0 00 |

Payment

| | |
|---|---|
| CHECK PAYMENT #1597 | $95 00 |
| Total Payments | $95 00 |

Recorded Item

OFFICIAL RECORD -1 Document # 2024-0079649 Date 04/02/2024 8 31AM Pages 3

| | | |
|---|---|---|
| Fees | Recording | $20 00 |
| Fees | SB2 Atkins Fee | $75 00 |
| Total Fees Due | | $95 00 |

| | |
|---|---|
| Grand Total - All Documents | $95 00 |

# EXHIBIT 8

Recording Requested By:
Fidelity National Title Builder Services

DOC# 2023-0066758

Mar 16, 2023 08:00 AM
OFFICIAL RECORDS
JORDAN Z. MARKS,
SAN DIEGO COUNTY RECORDER
FEES: $2,770.00 (SB2 Atkins: $0.00)
PCOR: YES
PAGES: 3

~~RECORDING REQUESTED~~ BY:
Chicago ~~Title - Subdivision/Builder~~ Serv.

**Escrow No.:** 00104167-004-RM1
**Title No.:** 104167 - U50

**WHEN RECORDED MAIL DOCUMENT AND TAX STATEMENT TO:**
**The Phair Company LLC, a california limited liablity company**
**Jeff Phair**
**945 East J Street**
**Chula Vista, CA 91910**

**APN:** 630-321-31 and 32

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
DOCUMENTARY TRANSFER TAX is $ 2,750.00 CITY TAX $ 0.00

☒ computed on full value of interest or property conveyed, or
☐ computed on full value of items or encumbrances remaining at time of sale,
☐ Unincorporated area ✓ City of San Diego, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**Robert N. Conrad and Daryl Lyne Conrad, as Co-trustees of The Victor B. Cherniak Trust dated August 27, 1993, as restated and amended, and Robert N. Conrad and Daryl Lyne Conrad, Co-Trustees under Trust "B" of the Cherniak Family Trust dated April 3, 1990**

hereby GRANT(s) to

**The Phair Company LLC, a california limited liablity company**

the following real property in the County of **San Diego**, State of **California**:

**See Exhibit A attached hereto and made a part hereof.**

Document Date: March 13, 2023

**SELLERS:**

**Robert N. Conrad, as Co-trustee of The Victor B. Cherniak Trust dated August 27, 1993, as restated and amended**

**Robert N. Conrad, Co-Trustee under Trust "B" of the Cherniak Family Trust dated April 3, 1990**

**Daryl Lyne Conrad, as Co-trustee of The Victor B. Cherniak Trust dated August 27, 1993, as restated and amended**

**Daryl Lyne Conrad, Co-Trustee under Trust "B" of the Cherniak Family Trust dated April 3, 1990**

| |
|---|
| A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document. |

State of California )
County of Los Angeles ) SS:

On 3/14/2023 before me, Andre Massengale, Notary Public a Notary Public, personally appeared Robert N. Conrad, Daryl Lyne Conrad

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ______________________ (Seal)

ANDRE MASSENGALE
COMM. # 2362772
NOTARY PUBLIC-CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires June 28, 2025

# EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN DIEGO, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCELS 1 AND 2 OF PARCEL MAP NO. 18000, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 26, 1998.

APNS: 630-321-31 AND 32

Case 25-90066-JBM11 Filed 07/03/25 Entered 07/03/25 14:11:29 Doc 65 Pg. 127 of 209

# EXHIBIT 9

Case 25-90069-JBM11 Filed 07/03/25 Entered 07/03/25 14:07:59 Doc 65 Pg. 128 of 209

Recording Requested By:
Fidelity National Title Builder Services

**~~RECORDING REQUESTED BY:~~**
~~Chicago Title~~ ~~Subdivision/Builder~~ Serv.

**Escrow No.:** 00204793-004-RL1
**Title No.:** 00204793 - 450

**WHEN RECORDED MAIL DOCUMENT AND TAX STATEMENT TO:**
**Affordable Housing Land Consultants, LLC, a California limited liability company**
**Alexis Gevorgian**
**PO Box 260770**
**Encino, CA 91426**

DOC# 2024-0168282

Jul 03, 2024 08:00 AM
OFFICIAL RECORDS
JORDAN Z. MARKS,
SAN DIEGO COUNTY RECORDER
FEES: $7,830.00 (SB2 Atkins: $0.00)
PCOR: YES
PAGES: 3

**APN:** 630-321-31-00, 630-321-32-00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

The undersigned declares exemption under the following: Exempt from fee per GC 27388.1 (a) (2); recorded in connection with a transfer subject to the imposition of documentary transfer tax

# GRANT DEED

THE UNDERSIGNED GRANTOR(s) DECLARE(s)
DOCUMENTARY TRANSFER TAX is $ 7,810.00 CITY TAX $ 0.00

☑ computed on full value of interest or property conveyed, or
☐ computed on full value of items or encumbrances remaining at time of sale,
☐ Unincorporated area ☑ City of San Diego, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

**THE PHAIR COMPANY LLC, a California limited liability company**

hereby GRANT(s) to

**Affordable Housing Land Consultants, LLC, a California limited liability company**

the following described real property in the County of San Diego, State of California

**SEE EXHIBIT A ATTACHED HERETO AND BY REFERENCE MADE A PART HEREOF**

SIGNATURE PAGE ATTACHED HERETO AND MADE A PART HEREOF.

SIGNATURE PAGE TO
GRANT DEED

Dated: July 1, 2024

**GRANTOR:**

**THE PHAIR COMPANY LLC,**
**a California limited liability company**

**By:** [signature]
**Name:** JEFF PHAIR
**Its:** MANAGER

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
County of SAN DIEGO ) SS:

On July 1, 2024 before me, FROILAN B. DIOKNO
a Notary Public, personally appeared JEFF PHAIR

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature [signature] (Seal)

FROILAN B. DIOKNO
COMM. # 2465975
NOTARY PUBLIC-CALIFORNIA
SAN DIEGO COUNTY
MY COMM. EXP. OCT. 9, 2027

# EXHIBIT A

## LEGAL DESCRIPTION

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN DIEGO, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCELS 1 AND 2 OF PARCEL MAP NO. 18000, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 26, 1998.

APN 630-321-31-00; APN 630-321-32-00

# EXHIBIT 10

00204793-USO

Recording Requested By:
Fidelity National Title Builder Services

DOC# 2024-0168283

Jul 03, 2024 08:00 AM
OFFICIAL RECORDS
JORDAN Z. MARKS,
SAN DIEGO COUNTY RECORDER
FEES: $87.00 (SB2 Atkins: $0.00)
PCOR: N/A
PAGES: 16

~~Recording Requested By~~
and When Recorded Mail To:

Century Housing Corporation
1000 Corporate Pointe, Suite 200
Culver City, California 90230
Attn: Legal Division

*Space Above This Line For Recorder's Use*

APN: 630-321-31-00 and 630-321-32-00

# DEED OF TRUST
## With Assignment of Rents, Security Agreement and Fixture Filing

THIS DEED OF TRUST is made this 30th day of May, 2024, by and between Affordable Housing Land Consultants, LLC, a California Limited Liability Company ("Trustor") and Century Affordable Development, Inc., a California corporation ("Trustee"), for the benefit of the Century Housing Corporation, a California nonprofit corporation("Beneficiary").

Trustor grants, transfers, and assigns to Trustee in trust, upon the trusts, covenants, conditions and agreements and for the uses and purposes hereinafter contained, with power of sale, and right of entry and possession, all of Trustor's right, title and interest in and to that certain real property in the City of San Diego, County of San Diego, State of California, described in Exhibit "A" attached hereto and incorporated herein by this reference (the "Property");

Together with the rents, issues, and profits thereof, including any operating and/or replacement reserve accounts held by or for the benefit of Trustor, subject, however to the right, power, and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits;

Together with all buildings and improvements of every kind and description now or hereafter erected or placed thereon, and all fixtures, including but not limited to all gas and electric fixtures, engines and machinery, radiators, heaters, furnaces, heating equipment, laundry equipment, steam and hot water boilers, stoves, ranges, elevators, and motors, bathtubs, sinks, water closets, basins, pipes, faucets and other plumbing and heating fixtures, mantels, cabinets, refrigerating plant and refrigerators, whether mechanical or otherwise, cooking apparatus and appurtenances, and all shades, awnings, screens, blinds

* Exempt from fee per GC 27388.1 (a) (2); recorded concurrently in connection with a transfer subject to the imposition of documentary transfer tax

and other furnishings, it being hereby agreed that all such fixtures and furnishings shall to the extent permitted by law be deemed to be permanently affixed to and a part of the Property;

Together with all rights, including oil, gas and mineral rights, rights of way, easements, licenses, profits, privileges, tenements, hereditaments, and appurtenances now or in any way appertaining to and belonging to or used in connection with the Property or the Improvements and a part thereof or as a means of access thereto, including but not limited to, any claim at law or in equity and any after-acquired title and reversion in or to each and every part of all streets, roads, highways, alleys and common areas adjacent to and adjoining the Property; and

Together with all building materials and equipment now or hereafter delivered to the Property and intended to be installed thereon.

Trustor also hereby grants to Beneficiary, as secured party, a security interest in all of the following described personalty, whether now or hereafter existing, and in which Trustor now has or hereafter obtains any right, title, estate or interest: (i) all existing and future goods located on the Property which are now or in the future owned by Trustor and used in the operation or occupancy of the Property, including but not limited to all appliances, furniture and furnishings, building service equipment, and building materials, supplies and equipment; swimming pool heaters, furniture and equipment; racquet ball and tennis equipment; gym and exercise machines and equipment; linens; chairs and tables; radios; ovens; heaters; stoves and microwave ovens; utensils; dishes; glassware and silverware; cash registers; and inventory; (ii) all general intangibles relating to the development or use of the Property, including but not limited to, all governmental permits relating to construction on the Property, all names under or by which the Property or any of the improvements thereon may at any time be operated or known and all rights to carry on business under any such names or any variant thereof, and all trademarks and goodwill in any way relating to the Property; (iii) all other goods and chattels and personalty as are ever used or furnished in operating the improvements to be constructed on the Property, and all renewals or replacements thereof or articles in substitution therefor, whether or not the same are, or shall be attached to said building or buildings in any manner; and (iv) all leasing, service, engineering, consulting, construction, purchase and other contracts of any nature relating to the Property as such may be modified, amended, or supplemented from time to time concerning the management, operation, occupancy, use and/or disposition of the Property; (v) all deposits made with or other security given to utility companies by Trustor with respect to the Property and Improvements, and all advance payments of insurance premiums made by Trustor with respect thereto, and claims or demands relating to insurance; (vi) all damages, royalties, rentals and revenues of every kind, nature and description whatsoever that Trustor may be entitled to receive from any person, company or corporation owning or having or hereafter acquiring a right to the oil, gas or minerals in the Property or any part thereof, with the right in Beneficiary to receive and receipt therefor

and apply and release such monies received by it in the same manner and with the same effect as provided herein for disposition of proceeds of fire or other insurance; and Beneficiary may demand, sue for and recover any such payment but shall not be required to do so; (vii) all payment and performance bonds or guarantees and any and all modifications and extensions thereof relating to the Property; (viii) all rebates, refunds, cost savings and payments of any kind relating to the operation, occupancy, use, purchases and disposition of all or any portion of the Property; (ix) all proceeds and claims arising on account of damage to or taking of the Property or any part thereof and all causes of action and recoveries for any loss diminution in the value of the Property or improvements; (x) all of Trustor's interest and policies of and proceeds resulting from insurance relating to the Property or any of the personalty thereon, and any and all riders, amendments, renewals, supplements or extensions thereof or thereto and all proceeds thereof; (xi) all proceeds, whether cash, promissory notes, or otherwise, of the sale, lease or other disposition of all or any part of the Property now or hereafter related thereto.

To have and to hold the Property hereinbefore described together with all appurtenances thereto to the Trustee, its successors and assigns forever.

FOR THE PURPOSE of securing the following obligations:

(a) The payment to Beneficiary of an indebtedness evidenced by a Promissory Note (the "Note") in the principal amount of six million three hundred ninety thousand dollars ($6,390,000.00), with interest thereon, executed by Trustor and payable to the order of Beneficiary, bearing the same date as this Deed of Trust, and any and all modifications, extensions or renewals thereof or substitutions therefor, and performance of each and all of the obligations of Trustor under the Note;

(b) Performance and satisfaction of each and all of the covenants, agreements, terms and conditions to be performed or satisfied by Trustor and contained in this Deed of Trust and in that certain Loan Agreement of even date herewith by Trustor and Beneficiary (the "Loan Agreement");

(c) Payment of sums and interest thereon that may hereafter be loaned or advanced by Beneficiary to or for the benefit of Trustor or to its successor and assigns, provided that no such additional loan or advance and no interest thereon shall be secured by this Deed of Trust unless such additional loan or advance is (i) made to Trustor while it is the owner of record of the Property or a leasehold estate therein, or any portion thereof, or to its successors or assigns while they are the owners of the Property or a leasehold estate therein, and (ii) is evidenced by a written instrument signed by Trustor which recites that it is secured by this Deed of Trust.

AND TO PROTECT THE SECURITY OF THIS DEED OF TRUST, TRUSTOR COVENANTS AND AGREES:

1. That it will pay the Note at the times and in the manner provided therein.

2. That it will not permit or suffer the use of any of the Property for any purpose other than the use for which the same was intended at the time this Deed of Trust was executed.

3. That upon the occurrence of any Event of Default by Trustor under the Loan Agreement, which default is not cured or commenced to be cured pursuant to the terms thereof, the Beneficiary, at its option, may declare the whole of the indebtedness secured hereby to be due and payable. Trustor specifically agrees that any action by Beneficiary to obtain performance under the Loan Agreement of an obligation other than repayment of the debt secured by this Deed of Trust shall not constitute an "action" within the meaning of California Code of Civil Procedure §726, and Trustor hereby waives any defense it might otherwise have based on the "one-action" rule in any subsequent proceeding involving Beneficiary's foreclosure rights hereunder.

4. That all rents, profits and income from the Property covered by this Deed of Trust are hereby absolutely assigned to the Beneficiary for the purpose of discharging the debt hereby secured. Permission is hereby given to Trustor, so long as no Event of Default exists hereunder, to collect such rents, profits and income for use in accordance with the provisions of the Loan Agreement.

5. That upon an Event of Default hereunder or under the Loan Agreement Beneficiary shall be entitled to the appointment of a receiver by any court having jurisdiction, without notice, to take possession and protect the Property described herein and operate same and collect the rents, profits and income therefrom.

6. That Trustor will keep the improvements now existing or hereafter erected on the Property insured against loss by fire and such other hazards, casualties, and contingencies as may be reasonably required by the Beneficiary in the Loan Agreement, and all such insurance shall be evidenced by standard fire and extended coverage insurance policy or policies. Such policies shall be endorsed with standard mortgage clause with loss payable to the Beneficiary in addition to Trustor and shall be deposited with the Beneficiary.

**BENEFICIARY HAS AND HEREBY DISCLOSES TO TRUSTOR IN WRITING THAT UNDER SECTION 2955.5 OF THE CALIFORNIA CIVIL CODE:**

"NO LENDER SHALL REQUIRE A BORROWER, AS A CONDITION OF RECEIVING OR MAINTAINING A LOAN SECURED BY REAL PROPERTY, TO PROVIDE HAZARD INSURANCE COVERAGE AGAINST RISKS TO THE

IMPROVEMENTS ON THAT REAL PROPERTY IN AN AMOUNT EXCEEDING THE REPLACEMENT VALUE OF THE IMPROVEMENTS ON THE PROPERTY."

7. To pay, before delinquency, any taxes and assessments affecting said Property including assessments on appurtenant water stock; when due, all encumbrances, charges and liens, with interest, on said Property or any part thereof which appear to be prior or superior hereto; all costs, fees, and expenses of this Trust.

8. To keep said Property in good condition and repair, not to remove or demolish any buildings thereon (except for any partial demolition occurring in connection with rehabilitation); to complete or restore promptly and in good and workmanlike manner any building which may be constructed, damaged, or destroyed thereon to the extent that insurance proceeds are available therefor and to pay when due all claims for labor performed and materials furnished therefor; to comply with all laws affecting said Property or requiring any alterations or improvements to be made thereon; not to commit or permit waste thereof; not to commit, suffer or permit any act upon said Property in violation of law and/or covenants, conditions and/or restrictions affecting said Property; not to permit or suffer any material alteration of or addition to the buildings or improvements hereafter constructed in or upon said Property without the consent of the Beneficiary.

9. To appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee, and to pay all costs and expenses, including cost of evidence of title and attorneys' fees in a reasonable sum, in any such action or proceeding in which Beneficiary or Trustee may appear.

10. Should Trustor fail to make any payment or do any act as herein provided, then Beneficiary or Trustee, but without obligation to do so and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, may make or do the same in such manner and to such extent as either may deem necessary to protect the security hereof. Beneficiary or Trustee being authorized to enter upon said Property for such purposes may commence, appear in and/or defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary or Trustee; may pay, purchase, contest, or compromise any encumbrance, charge, or lien which in the judgment of either appears to be prior or superior hereto; and, in exercising any such powers, may pay necessary expenses, employ counsel, and pay his reasonable fees.

11. That the Beneficiary shall have the right to pay fire and other property insurance premiums when due should Trustor fail to make any required premium payments. All such payments made by the Beneficiary shall be added to the principal sum secured hereby.

12. To pay immediately and without demand all sums expended by Beneficiary or Trustee under permission given under this Deed of Trust, with interest from date of expenditure at the rate specified in the Note.

13. That the funds to be advanced hereunder are to be used solely in accordance with the Loan Agreement; and upon the failure of Trustor to keep and perform all the covenants, conditions, and agreements of said Loan Agreement, subject to the rights of notice and cure provided thereunder, the principal sum and all arrears of interest, and other charges provided for in the Note shall at the option of the Beneficiary of this Deed of Trust become due and payable, anything contained herein to the contrary notwithstanding.

14. That Trustor specifically covenants that it will not voluntarily create, suffer, or permit to be created against the Property subject to this Deed of Trust any lien or liens except as authorized by Beneficiary and further that it will keep and maintain the Property free from the claims of all persons supplying labor or materials which will enter into the construction of any and all buildings now being erected or to be erected on said Property.

15. That the improvements upon the Property covered by the Deed of Trust, and all plans and specifications, comply with all municipal ordinances and regulations and all other regulations made or promulgated, now or hereafter, by lawful authority, and that the same comply with all such municipal ordinances and regulations and with the rules of the applicable fire rating or inspection organization, bureau, association or office.

IT IS MUTUALLY AGREED THAT:

16. Trustor shall conduct its operations on the Property in compliance with, and shall not cause or permit the Property to be in violation of, any applicable Statutes (as defined in Paragraph 9 of the Environmental Indemnification Agreement between Trustor and Beneficiary). Trustor warrants and represents that Trustor has exercised due diligence in a manner consistent with good commercial practice in investigating prior ownership and use of the Property. Trustor shall obtain and maintain in effect all permits required by such Statutes for the Property and uses made thereof, and shall furnish to Beneficiary true copies thereof upon request. Upon the reasonable request of Beneficiary, Trustor shall furnish to Beneficiary opinions and statements evidencing or certifying that the Property and uses being made thereof are in compliance with such permits and applicable Statutes. Trustor shall not, nor shall Trustor permit anyone else, to handle, store or dispose of, or allow the handling, the storage or disposal of any Hazardous Materials (as defined in Paragraph 9 of the Environmental Indemnity Agreement) on the Property in violation of any applicable law, and shall not discharge any waste onto land or any surface water or groundwater at or near the Property in violation of any applicable law. Trustor shall not permit or maintain on the Property any explosive device or material, radioactive material, friable asbestos, radon gas, urea formaldehyde foam installation or polychlorinated biphenols. Trustor shall manage all Hazardous Materials and chemicals in accordance with all applicable laws and

regulations including environmental and occupational safety regulations and orders. Trustor shall not permit or maintain on the Property any substance known to cause human injury, including without limitation cancer or reproductive toxicity, except those which are necessary for the prudent management of Trustor's operations on the Property. Trustor shall comply with all laws, regulations and standards applicable to such substances. Trustor shall immediately advise Beneficiary in writing of (i) any and all governmental agency regulatory proceedings or enforcement actions instituted or threatened, which require or could require investigation, mitigation, clean-up, alteration or abatement of conditions at the Property, (ii) all claims made or threatened by any party against Trustor or the Property relating to damage, contribution, cost recovery, compensation, loss or injury resulting from any pollutant or Hazardous Materials, (iii) Trustor's discovery of any occurrence or condition on any real property adjoining or in the vicinity of the Property that could cause the Property or any part thereof to be classified as "border-zone property" under the provisions of California Health and Safety Code §§25220 et. seq., or regulations adopted pursuant thereto, and (iv) Trustor's discovery of any occurrence or condition on the Property or any real property adjoining or in the vicinity of the Property which could subject Trustor or the Property to any restrictions on ownership, occupancy, transferability or use of the Property under any Statutes. Beneficiary shall have the right but not the obligation to join and participate in, as a party if it so elects, any settlements, remedial actions, legal proceedings or actions initiated in connection with any claims brought under any Statutes and to have its attorneys' fees in connection therewith paid by Trustor. Trustor shall be solely responsible for and shall indemnify and hold harmless Beneficiary, its officers, employees, agents, consultants, attorneys, servants, successors and assigns from and against any loss, damage, cost, expense or liability directly or indirectly arising out of or attributable to the use, generation, manufacture, treatment, handling, refining, production, processing, storage, release, threatened release, discharge, disposal, or presence of Hazardous Materials on, under or about the Property including without limitation:

(a) All foreseeable and unforeseeable consequential damages;

(b) The costs of any required or necessary investigation, repair, removal, cleanup or remediation and restoration of the Property and the preparation and implementation of any closure, remedial or other required plans;

(c) All reasonable costs and expenses incurred by Beneficiary in connection with clauses (a) and (b) including, without limitation, reasonable attorneys' fees; and

(d) All fines, penalties and costs imposed on Beneficiary.

The rights of Beneficiary set forth in this paragraph 16 are intended to be cumulative and additional to the rights and remedies set forth elsewhere in this Deed of Trust,

including, without limitation, those set forth herein and in any Environmental Indemnification Agreement executed concurrently herewith.

17. If Trustor has committed an Event of Default under the Loan Agreement, the Beneficiary, after due notice to Trustor or any subsequent owner, is hereby invested with full and complete authority to enter upon the said premises, employ watchmen to protect such improvements from depredation or injury and to preserve and protect the personal property therein, and to continue any and all outstanding contracts for the erection and completion of said building or buildings, to make and enter into any contracts and obligations wherever necessary, either in its own name or in the name of Trustor, and to pay and discharge all debts, obligations and liabilities incurred thereby. All such sums so advanced by the Beneficiary (exclusive of advances of the principal of the indebtedness secured hereby) shall be added to the principal of the indebtedness secured hereby and shall be secured by this Deed of Trust and shall be due and payable on demand with interest at the rate specified in said Note.

18. Should the Property or any part thereof be taken or damaged by reason of any public improvement or condemnation proceeding, or damaged by fire, or earthquake, or in any other manner, the Beneficiary shall be entitled to all of Trustor's interest in compensation, awards, and other payments or relief therefor, and shall be entitled at its option to commence, appear in and prosecute in its own name, any action or proceedings, or to make any compromise or settlement in connection with such taking or damage. So long as Trustor has not committed an Event of Default hereunder, Trustor shall be entitled to participate in the adjustment or compromise of any insurance or condemnation proceeds or any action or proceeding commenced in connection therewith. All such compensation, awards, damages, rights of action and proceeds, including the proceeds of any policies of fire and other insurance affecting said Property, are hereby assigned to the Beneficiary. After deducting therefrom all its expenses, including reasonable attorney's fees, and if Trustor has not committed an Event of Default hereunder, Beneficiary shall apply all such proceeds to restoring the Property, or in the event Trustor has committed an Event of Default hereunder, or in the event Trustor determines not to rebuild, the Beneficiary shall retain the proceeds to the extent of the amount of principal and interest due under the Note. Any balance of such proceeds still remaining shall be disbursed by the Beneficiary to Trustor.

19. If Trustor shall fail to perform any covenant or agreement in this Deed of Trust or secured by this Deed of Trust and such failure continues beyond any applicable cure period, the Beneficiary may declare all sums secured hereby immediately due and payable by delivery to Trustee of written declaration of default and demand for sale, and of written notice of default and of election to cause the real property described in Exhibit "A" attached hereto to be sold at public auction, which notice Trustee shall cause to be duly filed for record in accordance with California law and the Beneficiary may foreclose this Deed of Trust.

20. After the lapse of such time as may then be required by law following the recordation of said notice of default, and notice of sale having been given as then required by law, Trustee, without demand on Trustor, shall sell the real property described on Exhibit "A" attached hereto at the time and place fixed by it in said notice of sale, either as a whole or in separate parcels, and in such order as it may determine at public auction to the highest bidder for lawful cash money of the United States payable at time of sale. Trustee may postpone sale of all or any portion of said Property by public announcement at the time and place of sale, and from time to time thereafter may postpone the sale by public announcement at the time fixed by the preceding postponement. Trustee shall deliver to the purchaser its Deed conveying Trustor's fee or leasehold estate, as the case may be, in such real property so sold, but without any covenant or warranty, express or implied. The recitals in the Deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any person, including Trustor, Trustee or Beneficiary, may purchase at the sale. The Trustee shall apply the proceeds of sale to payment of (1) the expenses of such sale, together with the reasonable expenses of this trust including therein reasonable Trustee's fees or attorneys' fees for conducting the sale, and the actual cost of publishing, recording, mailing and posting notice of the sale; (2) the cost of any search and/or other evidence of title procedure in connection with such sale and revenue stamps on Trustee's Deed; (3) all sums expended under the terms hereof, not then repaid, with accrued interest at the rate specified in said Note; (4) all other sums then secured hereby; and (5) the remainder, if any, to the person or persons legally entitled thereto.

21. Beneficiary may from time to time substitute a successor or successors to any Trustee named herein or acting hereunder to execute this Trust. Upon such appointment, and without conveyance to the successor trustee, the latter shall be vested with all title, powers and duties conferred upon any Trustee herein named or acting hereunder. Each such appointment and substitution shall be made by written instrument executed by Beneficiary, containing reference to this Deed of Trust and its place of record, which, when duly recorded in the proper office of the county or counties in which the Property is situated, shall be conclusive proof of proper appointment of the successor trustee.

22. Upon written request of Beneficiary stating that all sums secured hereby have been paid, and upon surrender of this Deed of Trust and said Note to Trustee for cancellation and retention and upon payment of its fees, Trustee shall reconvey, without warranty, the Property then held hereunder. The recitals in such reconveyance of any matters or facts shall be conclusive proof of the truthfulness thereof. The grantee in such reconveyance may be described as "the person or persons legally entitled thereto".

23. The trust created hereby is irrevocable by Trustor.

24. In the event of the occurrence of an Event of Default hereunder, Trustor shall be personally liable therefor and Beneficiary's remedies in the event of such an event of

default shall include judicial foreclosure of the property described in this Deed of Trust or the exercise of power of sale, and the right to proceed directly against Trustor and to obtain a deficiency judgment after judicial foreclosure.

25. Trustor acknowledges that, in making the loan represented by the Note, Beneficiary has relied to a material extent upon the business reputation of Trustor and upon the continuing interest which Trustor will have in the property encumbered by this Deed of Trust (the "Trust Estate"). In the event Trustor sells, conveys, transfers, disposes of, hypothecates, mortgages or otherwise alienates or encumbers the Trust Estate, or any part thereof, or any interest therein, by the operation of law or otherwise, then Beneficiary shall have the right, at its sole option, to declare all sums evidenced by the Note immediately due and payable.

26. This Deed of Trust constitutes a Security Agreement with respect to all personal property in which Beneficiary is granted a security interest hereunder, and Beneficiary shall have all of the rights and remedies of a secured party under the California Uniform Commercial Code as well as all other rights and remedies available at law or in equity. Trustor hereby agrees to execute and deliver on demand and hereby irrevocably constitutes and appoints Beneficiary the attorney-in-fact of Trustor, to execute, deliver and, if appropriate, to file with the appropriate filing officer or office such security agreements, financing statements, continuation statements, or other instruments as Beneficiary may request or require in order to impose, perfect or continue the perfection of, the lien or security interest created hereby. Upon the occurrence of any Event of Default hereunder, Beneficiary shall have the right to cause any of the Trust Estate which is personal property and subject to the security interest of Beneficiary hereunder to be sold at any one or more public or private sales as permitted by applicable law, and Beneficiary shall further have all other rights and remedies, whether at law, in equity, or by statute, as are available to secured creditors under applicable law. Any such disposition may be conducted by an employee or agent of Beneficiary or Trustee. Any person, including both Trustor and Beneficiary, shall be eligible to purchase any part or all of such property at any such disposition.

Expenses of retaking, holding, preparing for sale, selling or the like shall be borne by Trustor and shall include Beneficiary's and Trustee's reasonable attorneys' fees and legal expenses. Trustor, upon demand of Beneficiary, shall assemble such personal property and make it available to Beneficiary at the Property, a place which is hereby deemed to be reasonably convenient to Beneficiary and Trustor. Beneficiary shall give Trustor at least twenty (20) days prior written notice of the time and place of any public sale or other disposition of such property or of the time of or after which any private sale or any other intended disposition is to be made, and if such notice is sent to Trustor, as the same is provided for the mailing of notices herein, it is hereby deemed that such notice shall be and is reasonable notice to Trustor.

This Deed of Trust, when recorded, shall be a "Fixture Filing", and a portion of the items of personal property specified above are, or to become, fixtures (as that term is defined in Section 9-313 of the Uniform Commercial Code of California) on the Property. For such purposes, the following is set forth:

a) Name and address of Debtor:

Affordable Housing Land Consultants, LLC
PO Box 260770
Encino, California 91426

b) Name and address of Secured Party:

Century Housing Corporation
1000 Corporate Pointe, Suite 200
Culver City, California 90230

c) This Deed of Trust covers goods which are or are to become fixtures; and

d) The name of the record owner of the Property is Affordable Housing Land Consultants, LLC.

27. Trustor will be in default (each an "Event of Default") under this Deed of Trust if:

(a) Trustor fails to make any payment required by the Note, and does not cure that failure within ten (10) days after written notice from the Beneficiary; or

(b) Trustor fails to perform any other covenant contained in this Deed of Trust within thirty (30) days following written notice of such failure from the Beneficiary unless the failure to observe or perform the covenant in question is curable but is of such a nature that it is incapable of being cured with reasonable diligence within said 30-day period and Trustor commences such cure within said 30-day period and diligently and continuously pursues the same to completion. In no event shall Beneficiary be precluded from exercising all legal remedies permitted hereunder if its security becomes or is about to become materially jeopardized by any failure to cure a default or if the default is not cured within one hundred eighty (180) days after the initial notice is given hereunder; or

(c) Any other event occurs which, under the Note, the Loan Agreement, or under any other agreement of Trustor relating to the Loan, constitutes a default by Trustor following notice and an opportunity to cure as set forth therein or gives the

Beneficiary the right to accelerate the maturity of all or any part of the indebtedness secured by this Deed of Trust.

28. If Beneficiary at any time holds additional security for any obligations secured hereby, it may enforce the terms hereof or otherwise realize upon the same, at its option and subject to applicable law, either before or concurrently or after a sale is made hereunder, and may apply the proceeds upon the indebtedness secured hereby without affecting the status of or waiving any right to exhaust all or any other security, including the security hereunder, and without waiving any breach or default or any right or power whether exercised hereunder or contained herein or in any such other security.

Upon any default under the provisions of paragraph 16, Beneficiary may pursue the remedies provided in Code of Civil Procedure §736.

Upon the occurrence of any default hereunder, and should the Property be environmentally impaired as herein provided, Beneficiary may make the election provided in Code of Civil Procedure §726.5 and proceed in the manner provided therein.

Without prejudice to the general right of inspection set forth herein, Beneficiary may enter and inspect the Property for the purpose of determining the existence, location, nature and magnitude of any past or present release or threatened release of any Hazardous Materials into, onto, beneath or from the Property and to procure the appointment of a receiver if required, in accordance with the provisions of Civil Code §2929.5 and Code of Civil Procedure §564(c).

No remedy herein conferred upon or reserved to Trustee or Beneficiary is intended to be exclusive of any other remedy herein or by law provided or permitted, but each shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing at law or in equity or by statute. Every power or remedy given by this instrument to Trustee or Beneficiary or to which either of them may be otherwise entitled, may be exercised concurrently or independently, from time to time and as often as may be deemed expedient by Trustee or Beneficiary, and either of them may pursue inconsistent remedies.

29. Trustee accepts this Trust when this Deed of Trust, duly executed and acknowledged, is made public record as provided by law. Except as otherwise provided by law, the Trustee is not obligated to notify any party hereto of pending sale under this Deed of Trust or of any action or proceeding in which Trustor, Beneficiary, or Trustee shall be a party unless brought by Trustee.

30. This Deed of Trust applies to, inures to the benefit of, and binds all parties hereto, their heirs, legatees, devisees, administrators, executors, successors, and assigns. The term "Beneficiary" shall include not only the original Beneficiary hereunder but also

any future owner and holder including pledgees, of the Note secured hereby. In this Deed of Trust, whenever the context so requires, the masculine gender includes the feminine and/or neuter, and the singular includes the plural.

31. Trustor requests that a copy of any notice of default and of any notice of sale hereunder be mailed to it at Affordable Housing Land Consultants, LLC, PO Box 260770, Encino, California 91426 Attention: Alexis Gevorgian.

**[Signature page to follow]**

IN WITNESS WHEREOF Trustor has executed this Deed of Trust as of the day and year set forth above.

TRUSTOR: Affordable Housing Land Consultants, LLC, a California limited liability company

By: ______________________________

Alexis Gevorgian, Managing Member

Alexis Gevorgian

A Notary Public or other officer completing this certificate verifies only the identity of the individual who signed the document, to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California )
)
County of Los Angeles )

On June 10, 2024 before me, Jacob Soroudi, Notary Public, personally appeared Alexis Gevorgian, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Jacob Soroudi

JACOB SOROUDI
COMM. # 2459240
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Aug. 15, 2027

**Exhibit A**
**Legal Description of Property**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN DIEGO, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCELS 1 AND 2 OF PARCEL MAP NO. 18000, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 26, 1998.

APN 630-321-31-00; APN 630-321-32-00

# EXHIBIT 11

# CHICAGO TITLE COMPANY

2365 Northside Drive, Suite 600, San Diego, CA 92108

Phone: (619) 233-3000 Fax: (619) 230-6368

**Buyers/Borrowers Settlement Statement**

**Final**

**Escrow No:** 00204793 - 004 RM1 **Close Date:** 07/03/2024 **Proration Date:** 07/03/2024 **Disbursement Date:** 07/03/2024

**Buyer(s)/Borrower(s):** Affordable Housing Land Consultants, LLC, a California limited liability company

**Seller(s):** THE PHAIR COMPANY LLC, a California limited liability company

**Lender:** Century Housing Corporation **Loan #:**

**Property:** 3145 & 3167 Beyer Boulevard
(Trolley Stop Apartments)
San Diego, CA 92154

| Description | Debit | Credit |
|---|---:|---:|
| **TOTAL CONSIDERATION:** | | |
| Total Consideration | 7,100,000.00 | |
| Initial Deposit from AMG & ASSOCIATES, LLC | | 200,000.00 |
| Additional Deposit from ALEXIS GEVORGIAN PRIORITY CREDIT | | 300,000.00 |
| Closing Funds from AFFORDABLE HOUSING LAND CONSULTANTS LLC | | 1,375,773.50 |
| **NEW AND EXISTING ENCUMBRANCES:** | | |
| New Loan from Century Housing Corporation | | 6,390,000.00 |
| verified wire instructions on 5/4/2022 2:20pm with Carolina Lizarde @ Century Housing Corporation 310-642-2000 / NEW / HW | | |
| **NEW LOAN CHARGES: - Century Housing Corporation** | | |
| Application Fee - Deposited by Borrower | | 5,000.00 |
| Origination Fee | 95,850.00 | |
| Admin Fee | 2,500.00 | |
| Interest Reserve | 995,000.00 | |
| Acquisition Legal Fee | 15,000.00 | |
| **ESCROW AND TITLE CHARGES:** | | |
| Escrow Charge to Chicago Title Company | 3,500.00 | |
| Escrow Charge - Loan Tie In Fee to Chicago Title Company | 340.00 | |
| Lenders Policy for $6,390,000.00 to Chicago Title Company | 3,576.00 | |
| Endorsements - Lender Policy to Chicago Title Company | | |
| CLTA 100-06 - Restrictions, Encroachments & Minerals $0.00 | | |
| SE-93 - Deletion of Arbitration 2006 Loan Policy $0.00 | | |
| Inspection estimate to Chicago Title Company | 185.00 | |
| **RECORDING FEES:** | | |
| Recording fee estimate to Chicago Title Company | 107.00 | |
| Recording Service Fee to Chicago Title Company | 22.50 | |
| **ADDITIONAL CHARGES:** | | |
| Release of Extension Deposit pursuant to Amendment dtd 4.29 to THE PHAIR COMPANY LLC, a California limited liability company | 50,000.00 | |
| **PRORATIONS AND ADJUSTMENTS:** | | |
| 1st Installment Property Taxes 2024-2025 (APN: 630-321-31-00) from 7/1/2024 to 7/3/2024 based on the Semi-Annual amount of $511.06<br>APN: 630-321-31-00 - $311.10<br>APN: 630-321-32-00 - $199.96 | | 5.68 |
| Rents/Deposits - Vacant | | |
| Sub Totals | 8,266,080.50 | 8,270,779.18 |
| Refund Due Buyer /Borrower | 4,698.68 | |
| Totals | 8,270,779.18 | 8,270,779.18 |

# EXHIBIT 12

RECORDING REQUESTED BY:
Chicago Title Company
Commercial Division

AND WHEN RECORDED MAIL TO:
The Phair Company LLC
945 East J Street
Chula Vista, CA 91910
Attn: Jeff Phair

DOC# 2024-0168284

Jul 03, 2024 08:00 AM
OFFICIAL RECORDS
JORDAN Z. MARKS,
SAN DIEGO COUNTY RECORDER
FEES: $17.00 (SB2 Atkins: $0.00)

PAGES: 2

THIS SPACE FOR RECORDER'S USE

FULL RECONVEYANCE
(Please fill in document title(s) on this line)

1 ☑ Exempt from fee per GC27388.1 due to being recorded in connection with concurrent transfer that is subject to the imposition of documentary transfer tax, or,

2 ☐ Exempt from fee per GC27388.1 due to being recorded in connection with a transfer that was subject to documentary transfer tax which was paid on document recorded previously on ________________ (date*) as document number ____________________________ of Official Records, or,

3 ☐ Exempt from fee per GC27388.1 due to the maximum fees being paid on documents in this transaction, or,

4 ☐ Exempt from fee per GC27388.1 due to the maximum fees having been paid on documents in the transaction(s) recorded previously on ______________________ (date*) as document number(s) ________________________________________________________ of Official Records, or,

5 ☐ Exempt from fee per GC27388.1, document transfers real property that is a residential dwelling to an owner-occupier, or, document is recorded in connection with concurrent transfer that is a residential dwelling to an owner-occupier, or,

6 ☐ Exempt from fee per GC27388.1 due to it being recorded in connection with a transfer of real property that is a residential dwelling to an owner-occupier. The recorded document transferring the dwelling to the owner-occupier was recorded on ______________________ (date*) as document number(s)

______________________________________________________________________________

7 ☐ Exempt from fee per GC27388.1 due to being executed or recorded by the federal government in accordance with the Uniform Federal Lien Registration Act, by the state, or any county, municipality or other political subdivision of the state, or,

8 ☐ Exempt from the fee per GC 27388.1 (a) (1); Not related to real property, or,

9 ☐ Exempt from fee under GC27388.1 for the following reasons:

______________________________________________________________________________

THIS PAGE ADDED TO PROVIDE SENATE BILL 2 EXEMPTION INFORMATION
(Additional recording fee applies)



*The Prior Recording Reference must have been recorded within the last 60 days and is subject to review

**RECORDING REQUESTED BY:**
Chicago Title Company
Commercial Division

**WHEN RECORDED MAIL TO:**

The Phair Company LLC
945 East J Street
Chula Vista, CA 91910
Attn: Jeff Phair

00204793-u50

Space Above This Line For Recorder's Use

# FULL RECONVEYANCE

Chicago Title Company, a California corporation, Trustee under a Deed of Trust executed by The Phair Company LLC, as Trustor(s), dated March 17, 2023, and recorded on March 16, 2023 as Instrument No. 2023-0066759 of Official Records, in the Office of the County Recorder of San Diego County, California describing the property therein as: as descripted in said Deed of Trust.

Having received from the holder of the obligations thereunder a written request to reconvey, reciting that all sums secured by said Deed of Trust have been fully paid, and said Deed of Trust and the note or notes secured thereby having been surrendered to said Trustee for cancellation, does hereby reconvey to the person or persons legally entitled thereto, without warranty, all the estate, title and interest acquired and now held by said Trustee in said Deed of Trust.

Dated: July 2, 2024

Chicago Title Company, a California corporation, as Trustee

[signature]
By: Mark Franklin, Assistant Vice President

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the **document** to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA)
COUNTY OF SAN DIEGO)

On July 2, 2024 before me, Renee A.K. Marshall, Notary Public, personally appeared Mark Franklin, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature [signature] (Seal)

RENEE A.K. MARSHALL
Notary Public - California
San Diego County
Commission # 2411999
My Comm. Expires Aug 26, 2026

# EXHIBIT 13

X
7p

RECORDING REQUESTED BY
Pennington Law Firm

WHEN RECORDED MAIL TO

NAME Pennington Law Firm

MAILING ADDRESS 3304 30th Street

CITY, STATE ZIP CODE San Diego, CA 92104

DOC# 2024-0206865

Aug 05, 2024 01:16 PM
OFFICIAL RECORDS
JORDAN Z. MARKS,
SAN DIEGO COUNTY RECORDER
FEES: $182.00 (SB2 Atkins: $150.00)

PAGES: 7

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

## TITLE(S)

Notice of Levy

EJ-150

ATTORNEY OR PARTY WITHOUT ATTORNEY (*name and address*):
After recording, return to:
**Walt Pennington 214470**
**Pennington Law Firm**
**3304 30th Street**
**San Diego, CA 92104-4535**
TEL NO.: **(619) 940-6157** FAX NO. (*optional*):
EMAIL ADDRESS (*optional*): **wpennington@pennfirm.com**
[X] ATTORNEY FOR [X] ORIGINAL JUDGMENT CREDITOR [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **San Diego**
STREET ADDRESS: **330 W. Broadway**
MAILING ADDRESS:
CITY AND ZIP CODE: **San Diego, CA 92101**
BRANCH NAME: **Hall of Justice**

FOR RECORDER'S USE ONLY

PLAINTIFF/PETITIONER: **Jeff Phair, et al.**

DEFENDANT/RESPONDENT: **Renzulli Properties, LLC, et al.**

LEVYING OFFICER (*name and address*):
**San Diego County Sheriff Civil Division**
**PO Box 85306**
**San Diego, CA 92186-5306**

## NOTICE OF LEVY

under Writ of [X] Execution (Money Judgment)
[ ] Sale

LEVYING OFFICER FILE NO.:

COURT CASE NO.: **37-2022-00046736-CU-BC-CTL**

TO THE PERSON NOTIFIED (*name*): **San Diego County Recorder**

1. The judgment creditor seeks to levy upon property in which the judgment debtor has an interest and apply it to the satisfaction of a judgment as follows:
   a. Judgment debtor (name): **The Phair Company LLC**
   b. The property to be levied upon is described:
      [ ] in the accompanying writ of possession or writ of sale.
      [X] as follows: **Real Property identified as APN 630-321-31-00. The street address is 3145 Beyer Blvd, San Diego, CA 92154. See attached Exhibit A as the legal description.**
2. The judgment is for (*check one*):
   [ ] wages owed. [ ] child/spousal support. [X] other.
3. The amount necessary to satisfy the judgment creditor's judgment writ is

| | | |
|---|---|---|
| a. Total amount due (less partial satisfactions) from line 18 of writ (form EJ-130) | $ | 3,528,358.07 |
| b. Levy fee | $ | 1,500.00 |
| c. Sheriff's disbursement fee | $ | 15.00 |
| d. Recoverable costs | $ | |
| e. Total (*a through d*) | $ | 3,529,873.07 |
| f. Daily interest from line 19a of writ (form EJ-130) | $ | 956.01 |

4. You are notified as:
   a. [ ] a judgment debtor.
   b. [X] a person other than the judgment debtor (*state capacity in which person is notified*):
   **San Diego County Recorder**

***(Read Information for Judgment Debtor or Information for Person Other Than Judgment Debtor on page two.)***

Notice of Levy was
[ ] mailed on (*date*):
[ ] delivered on (*date*):
[ ] posted on (*date*):
[ ] filed on (*date*):
[X] recorded on (*date*): 8-5-24

Date: 8-5-24

David Pintado
(TYPE OR PRINT NAME)

[signature]
(SIGNATURE)

[ ] Levying officer [X] Registered process server



Form Approved for Optional Use
Judicial Council of California
EJ-150 [Rev. September 1, 2020]

CEB ceb.com Essential Forms

NOTICE OF LEVY
(Enforcement of Judgment)

Code of Civil Procedure, § 699.540
www.courts.ca.gov

630-321-31 - Recorder

EJ-150

| SHORT TITLE: | LEVYING OFFICER FILE NO.: | COURT CASE NO.: |
|---|---|---|
| Jeff Phair, et al. v. Renzulli Prop. LLC | | 37-2022-00046736-CU-BC-CT |

## - INFORMATION FOR JUDGMENT DEBTOR -

1. The levying officer is required to take custody of the property described in item 1 in your possession or under your control.
2. There are automatic exemptions that financial institutions should apply to a deposit account before providing funds to the levying officer. See below for more information.
3. You may claim any available exemption for your property. A list of exemptions can be found on form EJ-155. **If you wish to claim an exemption for personal property, you must do so within 15 days after this notice was delivered to you or 20 days after this notice was mailed to you** by filing a claim of exemption and one copy with the levying officer as provided in section 703.520 of the Code of Civil Procedure. The date of filing is calculated as the date the claim is received by the levying officer, or the date of the postmark if the claim is mailed and assigned a tracking number by the U.S. Postal Service or another common carrier. **If you do not claim an exemption, you may lose it and the property is subject to enforcement of a money judgment. If you wish to seek the advice of an attorney, you should do so immediately so that a claim of exemption can be filed on time.**
4. You are not entitled to claim an exemption for property that is levied upon under a judgment for sale of property. This property is described in the accompanying writ of sale. You may, however, claim available exemptions for property levied upon to satisfy damages or costs awarded in such a judgment.
5. You may obtain the release of your property by paying the amount of a money judgment with interest and costs remaining unpaid.
6. If your property is levied upon under a writ of execution or to satisfy damages and costs under a writ of possession or sale, the property may be sold at an execution sale, perhaps at a price substantially below its value. Notice of sale will be given to you. Notice of sale of real property (other than a leasehold estate with an unexpired term of less than two years) may not be given until at least 120 days after this notice is served on you. This grace period is intended to give you an opportunity to settle with the judgment creditor, to obtain a satisfactory buyer for the property, or to encourage other potential buyers to attend the execution sale.
7. All sales at an execution sale are final; there is no right of redemption.

## - INFORMATION FOR PERSON OTHER THAN JUDGMENT DEBTOR -

1. If the property levied upon is in your possession or under your control and you do not claim the right to possession or a security interest, you must deliver the property to the levying officer. If you do not deny an obligation levied upon or do not claim a priority over the judgment creditor's lien, you must pay to the levying officer the amount that is due and payable and that becomes due and payable during the period of the execution lien, which lasts two years from the date of issuance of the writ of execution. You must execute and deliver any documents needed to transfer the property.
2. If you are a financial institution, you are required to apply applicable exemptions to deposit accounts. See below.
3. You must complete the accompanying Memorandum of Garnishee within 10 days.
4. If you claim ownership or the right to possession of real or personal property levied upon or if you claim a security interest in or lien on personal property levied upon, you may make a third-party claim and obtain the release of the property under sections 720.010–720.800 of the Code of Civil Procedure.
5. **Make checks payable to the levying officer shown on page 1.**

## – INFORMATION ABOUT DEPOSIT ACCOUNTS –

1. If the levy is ***not*** to satisfy a judgment for wages owed, child or spousal support, or liability to the state government, financial institutions must automatically exempt money in a deposit account up to a certain dollar amount, under section 704.220 of the Code of Civil Procedure, with no claim of exemption required. See form EJ-156 for the exemption amount.
2. Other automatic exemptions may apply to deposit accounts, such as exemptions for directly deposited social security or public benefits under section 704.080. (See form EJ-156 for the exemption amounts.) Generally, the financial institution should apply the larger set of exemptions that apply to an account. See section 704.220(b).
3. If a judgment debtor has multiple accounts in one or more financial institutions, either the judgment creditor or judgment debtor may file an application in the superior court identified on the front of this form for an order as to which account the exemption should apply. (See section 704.220(e).) To get such an order, file an *Ex Parte Application for Order on Deposit Account Exemption* (form EJ-157) as soon as possible. (See EJ-157-INFO for instructions.) If the judgment debtor has more than one account in a financial institution, that institution may decide how and to which account to apply the exemption, unless it is served with a court order directing how to apply the exemption.



CEB ceb.com | Essential Forms

630-321-31 - Recorder

**EXHIBIT A**

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN DIEGO, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCELS 1 AND 2 OF PARCEL MAP NO, 18000, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 26, 1998

APNS 630-321-31-00 and 630-321-32-00

EJ-130

| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO.: | FOR COURT USE ONLY |
|---|---|
| NAME: Walt Pennington 214470<br>FIRM NAME: Pennington Law Firm<br>STREET ADDRESS: 3304 30th Street<br>CITY: San Diego STATE: CA ZIP CODE: 92104-4535<br>TELEPHONE NO.: (619) 940-6157 FAX NO.:<br>EMAIL ADDRESS: wpennington@pennfirm.com<br>ATTORNEY FOR (name): Reznulli Properties LLC<br>[X] ATTORNEY FOR: [X] ORIGINAL JUDGMENT CREDITOR [ ] ASSIGNEE OF RECORD | |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego<br>STREET ADDRESS: 330 W. Broadway<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: Hall of Justice | |
| PLAINTIFF/PETITIONER: Jeff Phair, et al.<br>DEFENDANT/RESPONDENT: Renzulli Properties, LLC | CASE NUMBER:<br>37-2022-00046736-CU-BC-CTL |
| WRIT OF [X] EXECUTION (Money Judgment)<br>[ ] POSSESSION OF [ ] Personal Property [ ] Real Property<br>[ ] SALE | [ ] Limited Civil Case (including Small Claims)<br>[X] Unlimited Civil Case (including Family and Probate) |

1. **To the Sheriff or Marshal of the County of:** San Diego
   You are directed to enforce the judgment described below with daily interest and your costs as provided by law.
2. **To any registered process server:** You are authorized to serve this writ only in accordance with CCP 699.080 or CCP 715.040.
3. (Name): Renzulli Properties LLC
   is the [X] original judgment creditor [ ] assignee of record whose address is shown on this form above the court's name.
4. **Judgment debtor** *(name, type of legal entity if not a natural person, and last known address):*

   Jeffrey D. Phair
   945 East J Street
   Chula Vista, CA 91910

   [X] Additional judgment debtors on next page
5. **Judgment entered on** *(date):* March 22, 2024
   *(See type of judgment in item 22.)*
6. [ ] Judgment renewed on *(dates):*
7. **Notice of sale** under this writ:
   a. [X] has not been requested.
   b. [ ] has been requested *(see next page).*
8. [ ] Joint debtor information on next page.

9. [ ] Writ of Possession/Writ of Sale information on next page.
10. [ ] This writ is issued on a sister-state judgment.

**For items 11–17, see form MC-012 and form MC-013-INFO.**

| | | |
|---|---|---|
| 11. Total judgment *(as entered or renewed)* | $ | 3,489,438.60 |
| 12. Costs after judgment *(CCP 685.090)* | $ | 639.07 |
| 13. Subtotal *(add 11 and 12)* | $ | 3,490,077.67 |
| 14. Credits to principal *(after credit to interest)* | $ | 0.00 |
| 15. Principal remaining due *(subtract 14 from 13)* | $ | 3,490,077.67 |
| 16. Accrued interest remaining due per CCP 685.050(b) *(not on GC 6103.5 fees)* | $ | 38,240.40 |
| 17. Fee for issuance of writ *(per GC 70626(a)(l))* | $ | 40.00 |
| 18. **Total amount due** *(add 15, 16, and 17)* | $ | 3,528,358.07 |
| 19. **Levying officer:** a. Add daily interest from date of writ *(at the legal rate on 15) (not on GC 6103.5 fees)* | $ | 956.01 |
| b. Pay directly to court costs included in 11 and 17 *(GC 6103.5, 68637; CCP 699.520(j))* | $ | 0.00 |

20. [ ] The amounts called for in items 11-19 are different for each debtor. These amounts are stated for each debtor on Attachment 20.

[SEAL] Superior Court of California County of San Diego

Date: MAY 3 1 2024 Clerk, by J. Siharath, Deputy

**NOTICE TO PERSON SERVED: SEE PAGE 3 FOR IMPORTANT INFORMATION.**



Form Approved for Optional Use
Judicial Council of California
EJ-130 [Rev. September 1, 2020]

CEB ceb.com | Essential Forms

**WRIT OF EXECUTION**

Code of Civil Procedure, §§ 699.520, 712.010, 715.010
Government Code, § 6103.5
www.courts.ca.gov

Renzulli-22

EJ-130

| Plaintiff/Petitioner: Jeff Phair, et al. Defendant/Respondent: Renzulli Properties, LLC | CASE NUMBER: 37-2022-00046736-CU-BC-CTL |
|---|---|

21. [X] Additional judgment debtor(s) *(name, type of legal entity if not a natural person, and last known address):*

The Phair Company LLC
945 East J Street
Chula Vista, CA 91910

Green Phair Scripps Partners LLC
945 East J Street
Chula Vista, CA 91910

22. The judgment is for *(check one):*
    a. [ ] wages owed.
    b. [ ] child support or spousal support.
    c. [X] other.

23. [ ] Notice of sale has been requested by *(name and address):*

24. [ ] Joint debtor was declared bound by the judgment (CCP 989–994)
    a. *on (date):*
    b. name, type of legal entity if not a natural person, and last known address of joint debtor:

    a. *on (date):*
    b. name, type of legal entity if not a natural person, and last known address of joint debtor:

    c. [ ] Additional costs against certain joint debtors are itemized: [ ] below [ ] on Attachment 24c.

25. [ ] (Writ of Possession or Writ of Sale) **Judgment** was entered for the following:
    a. [ ] Possession of real property: The complaint was filed on *(date):*
    *(Check (1) or (2). Check (3) if applicable. Complete (4) if (2) or (3) have been checked.)*
    (1) [ ] *The Prejudgment Claim of Right to Possession* was served in compliance with CCP 415.46. The judgment includes all tenants, subtenants, named claimants, and other occupants of the premises.
    (2) [ ] *The Prejudgment Claim of Right to Possession* was NOT served in compliance with CCP 415.46.
    (3) [ ] The unlawful detainer resulted from a foreclosure sale of a rental housing unit. (An occupant not named in the judgment may file a *Claim of Right to Possession* at any time up to and including the time the levying officer returns to effect eviction, regardless of whether a *Prejudgment Claim of Right to Possession* was served.) *(See CCP 415.46 and 1174.3(a)(2).)*
    (4) If the unlawful detainer resulted from a foreclosure (item 25a(3)), or if the *Prejudgment Claim of Right to Possession* was not served in compliance with CCP 415.46 (item 25a(2)), answer the following:
    (a) The daily rental value on the date the complaint was filed was $
    (b) The court will hear objections to enforcement of the judgment under CCP 1174.3 on the following dates *(specify):*

*Item 25 continued on next page*

EJ-130

| | |
|---|---|
| Plaintiff/Petitioner: **Jeff Phair, et al.**<br>Defendant/Respondent: **Renzulli Properties, LLC** | CASE NUMBER:<br>**37-2022-00046736-CU-BC-CTL** |

25. b. ☐ Possession of personal property.
☐ If delivery cannot be had, then for the value *(itemize in 25e)* specified in the judgment or supplemental order.
c. ☐ Sale of personal property.
d. ☐ Sale of real property.
e. The property is described ☐ below ☐ on Attachment 25c.

**NOTICE TO PERSON SERVED**

WRIT OF EXECUTION OR SALE. Your rights and duties are indicated on the accompanying *Notice of Levy* (form EJ-150).

WRIT OF POSSESSION OF PERSONAL PROPERTY. If the levying officer is not able to take custody of the property, the levying officer will demand that you turn over the property. If custody is not obtained following demand, the judgment may be enforced as a money judgment for the value of the property specified in the judgment or in a supplemental order.

WRIT OF POSSESSION OF REAL PROPERTY. If the premises are not vacated within five days after the date of service on the occupant or, if service is by posting, within five days after service on you, the levying officer will remove the occupants from the real property and place the judgment creditor in possession of the property. Except for a mobile home, personal property remaining on the premises will be sold or otherwise disposed of in accordance with CCP 1174 unless you or the owner of the property pays the judgment creditor the reasonable cost of storage and takes possession of the personal property not later than 15 days after the time the judgment creditor takes possession of the premises.

EXCEPTION IF RENTAL HOUSING UNIT WAS FORECLOSED. If the residential property that you are renting was sold in a foreclosure, you have additional time before you must vacate the premises. If you have a lease for a fixed term, such as for a year, you may remain in the property until the term is up. If you have a periodic lease or tenancy, such as from month-to-month, you may remain in the property for 90 days after receiving a notice to quit. A blank form *Claim of Right to Possession and Notice of Hearing* (form CP10) accompanies this writ. You may claim your right to remain on the property by filling it out and giving it to the sheriff or levying officer.

EXCEPTION IF YOU WERE NOT SERVED WITH A FORM CALLED PREJUDGMENT CLAIM OF RIGHT TO POSSESSION. If you were not named in the judgment for possession and you occupied the premises on the date on which the unlawful detainer case was filed, you may object to the enforcement of the judgment against you. You must complete the form *Claim of Right to Possession and Notice of Hearing* (form CP10) and give it to the sheriff or levying officer. A blank form accompanies this writ. You have this right whether or not the property you are renting was sold in a foreclosure.

Case 25-90069-JBM11 Filed 07/03/25 Entered 07/03/25 15:18:29 Doc 65 Pg. 161 of 209

# EXHIBIT 14

DOC# 2024-0206886

Aug 05, 2024 01:30 PM
OFFICIAL RECORDS
JORDAN Z. MARKS,
SAN DIEGO COUNTY RECORDER
FEES: $107.00 (SB2 Atkins: $75.00)

PAGES: 7

RECORDING REQUESTED BY
x Pennington Law Firm
7P

WHEN RECORDED MAIL TO

NAME Pennington Law Firm

MAILING ADDRESS 3304 30th Street

CITY, STATE ZIP CODE San Diego, CA 92104

SPACE ABOVE THIS LINE RESERVED FOR RECORDER'S USE

TITLE(S)

Notice of Levy

EJ-150

ATTORNEY OR PARTY WITHOUT ATTORNEY *(name and address):*
After recording, return to:
**Walt Pennington 214470**
**Pennington Law Firm**
**3304 30th Street**
**San Diego, CA 92104-4535**
TEL NO.: **(619) 940-6157** FAX NO. *(optional):*
EMAIL ADDRESS *(optional):* **wpennington@pennfirm.com**
[X] ATTORNEY FOR [X] ORIGINAL JUDGMENT CREDITOR [ ] ASSIGNEE OF RECORD

SUPERIOR COURT OF CALIFORNIA, COUNTY OF **San Diego**
STREET ADDRESS: **330 W. Broadway**
MAILING ADDRESS:
CITY AND ZIP CODE: **San Diego, CA 92101**
BRANCH NAME: **Hall of Justice**

*FOR RECORDER'S USE ONLY*

PLAINTIFF/PETITIONER: **Jeff Phair, et al.**

DEFENDANT/RESPONDENT: **Renzulli Properties, LLC, et al.**

LEVYING OFFICER *(name and address):*
**San Diego County Sheriff Civil Division**
**PO Box 85306**
**San Diego, CA 92186-5306**

**NOTICE OF LEVY**

under Writ of [X] Execution (Money Judgment)
[ ] Sale

LEVYING OFFICER FILE NO.:

COURT CASE NO.: **37-2022-00046736-CU-BC-CTL**

TO THE PERSON NOTIFIED *(name):* **San Diego County Recorder**

1. The judgment creditor seeks to levy upon property in which the judgment debtor has an interest and apply it to the satisfaction of a judgment as follows:
   a. Judgment debtor (name): **The Phair Company LLC**
   b. The property to be levied upon is described:
      [ ] in the accompanying writ of possession or writ of sale.
      [X] as follows: **Real Property identified as APN 630-321-32-00. The street address is 3167 Beyer Blvd, San Diego, CA 92154. See attached Exhibit A as the legal description.**

2. The judgment is for *(check one):*
   [ ] wages owed. [ ] child/spousal support. [X] other.

3. The amount necessary to satisfy the judgment creditor's judgment writ is

| | | | |
|---|---|---|---|
| a. | Total amount due (less partial satisfactions) from line 18 of writ (form EJ-130) | $ | 3,528,358.07 |
| b. | Levy fee | $ | 1,500.00 |
| c. | Sheriff's disbursement fee | $ | 15.00 |
| d. | Recoverable costs | $ | |
| e. | Total *(a through d)* | $ | 3,529,873.07 |
| f. | Daily interest from line 19a of writ (form EJ-130) | $ | 956.01 |

4. You are notified as:
   a. [ ] a judgment debtor.
   b. [X] a person other than the judgment debtor *(state capacity in which person is notified):*
   **San Diego County Recorder**

***(Read Information for Judgment Debtor or Information for Person Other Than Judgment Debtor on page two.)***

Notice of Levy was
[ ] mailed on *(date):*
[ ] delivered on *(date):*
[ ] posted on *(date):*
[ ] filed on *(date):*
[X] recorded on *(date):* 8-5-24

Date: 8-5-24

David Pintado
(TYPE OR PRINT NAME)

▶ [signature]
(SIGNATURE)

[ ] Levying officer [X] Registered process server





**Renzulli-22-Execution**

EJ-150

| SHORT TITLE: Jeff Phair, et al. v. Renzulli Prop. LLC | LEVYING OFFICER FILE NO.: | COURT CASE NO.: 37-2022-00046736-CU-BC-CT |
|---|---|---|

## - INFORMATION FOR JUDGMENT DEBTOR -

1. The levying officer is required to take custody of the property described in item 1 in your possession or under your control.
2. There are automatic exemptions that financial institutions should apply to a deposit account before providing funds to the levying officer. See below for more information.
3. You may claim any available exemption for your property. A list of exemptions can be found on form EJ-155. **If you wish to claim an exemption for personal property, you must do so within 15 days after this notice was delivered to you or 20 days after this notice was mailed to you** by filing a claim of exemption and one copy with the levying officer as provided in section 703.520 of the Code of Civil Procedure. The date of filing is calculated as the date the claim is received by the levying officer, or the date of the postmark if the claim is mailed and assigned a tracking number by the U.S. Postal Service or another common carrier. **If you do not claim an exemption, you may lose it and the property is subject to enforcement of a money judgment. If you wish to seek the advice of an attorney, you should do so immediately so that a claim of exemption can be filed on time.**
4. You are not entitled to claim an exemption for property that is levied upon under a judgment for sale of property. This property is described in the accompanying writ of sale. You may, however, claim available exemptions for property levied upon to satisfy damages or costs awarded in such a judgment.
5. You may obtain the release of your property by paying the amount of a money judgment with interest and costs remaining unpaid.
6. If your property is levied upon under a writ of execution or to satisfy damages and costs under a writ of possession or sale, the property may be sold at an execution sale, perhaps at a price substantially below its value. Notice of sale will be given to you. Notice of sale of real property (other than a leasehold estate with an unexpired term of less than two years) may not be given until at least 120 days after this notice is served on you. This grace period is intended to give you an opportunity to settle with the judgment creditor, to obtain a satisfactory buyer for the property, or to encourage other potential buyers to attend the execution sale.
7. All sales at an execution sale are final; there is no right of redemption.

## - INFORMATION FOR PERSON OTHER THAN JUDGMENT DEBTOR -

1. If the property levied upon is in your possession or under your control and you do not claim the right to possession or a security interest, you must deliver the property to the levying officer. If you do not deny an obligation levied upon or do not claim a priority over the judgment creditor's lien, you must pay to the levying officer the amount that is due and payable and that becomes due and payable during the period of the execution lien, which lasts two years from the date of issuance of the writ of execution. You must execute and deliver any documents needed to transfer the property.
2. If you are a financial institution, you are required to apply applicable exemptions to deposit accounts. See below.
3. You must complete the accompanying Memorandum of Garnishee within 10 days.
4. If you claim ownership or the right to possession of real or personal property levied upon or if you claim a security interest in or lien on personal property levied upon, you may make a third-party claim and obtain the release of the property under sections 720.010–720.800 of the Code of Civil Procedure.
5. **Make checks payable to the levying officer shown on page 1.**

## – INFORMATION ABOUT DEPOSIT ACCOUNTS –

1. If the levy is ***not*** to satisfy a judgment for wages owed, child or spousal support, or liability to the state government, financial institutions must automatically exempt money in a deposit account up to a certain dollar amount, under section 704.220 of the Code of Civil Procedure, with no claim of exemption required. See form EJ-156 for the exemption amount.
2. Other automatic exemptions may apply to deposit accounts, such as exemptions for directly deposited social security or public benefits under section 704.080. (See form EJ-156 for the exemption amounts.) Generally, the financial institution should apply the larger set of exemptions that apply to an account. See section 704.220(b).
3. If a judgment debtor has multiple accounts in one or more financial institutions, either the judgment creditor or judgment debtor may file an application in the superior court identified on the front of this form for an order as to which account the exemption should apply. (See section 704.220(e).) To get such an order, file an *Ex Parte Application for Order on Deposit Account Exemption* (form EJ-157) as soon as possible. (See EJ-157-INFO for instructions.) If the judgment debtor has more than one account in a financial institution, that institution may decide how and to which account to apply the exemption, unless it is served with a court order directing how to apply the exemption.



CEB ceb.com | Essential Forms

Renzulli-22-Execution

**EXHIBIT A**

**LEGAL DESCRIPTION**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN DIEGO, IN THE COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

PARCELS 1 AND 2 OF PARCEL MAP NO, 18000, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 26, 1998

APNS ~~630-321-31-00~~ and 630-321-32-00

EJ-130

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY: STATE BAR NO.:<br>NAME: Walt Pennington 214470<br>FIRM NAME: Pennington Law Firm<br>STREET ADDRESS: 3304 30th Street<br>CITY: San Diego STATE: CA ZIP CODE: 92104-4535<br>TELEPHONE NO.: (619) 940-6157 FAX NO.:<br>EMAIL ADDRESS: wpennington@pennfirm.com<br>ATTORNEY FOR *(name)*: Reznulli Properties LLC<br>[X] ATTORNEY FOR: [X] ORIGINAL JUDGMENT CREDITOR [ ] ASSIGNEE OF RECORD | *FOR COURT USE ONLY* |
| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Diego<br>STREET ADDRESS: 330 W. Broadway<br>MAILING ADDRESS:<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: Hall of Justice | |
| PLAINTIFF/PETITIONER: Jeff Phair, et al.<br>DEFENDANT/RESPONDENT: Renzulli Properties, LLC | CASE NUMBER:<br>37-2022-00046736-CU-BC-CTL |
| WRIT OF [X] EXECUTION (Money Judgment)<br>[ ] POSSESSION OF [ ] Personal Property [ ] Real Property<br>[ ] SALE | [ ] Limited Civil Case (including Small Claims)<br>[X] Unlimited Civil Case (including Family and Probate) |

1. **To the Sheriff or Marshal of the County of:** San Diego
   You are directed to enforce the judgment described below with daily interest and your costs as provided by law.
2. **To any registered process server:** You are authorized to serve this writ only in accordance with CCP 699.080 or CCP 715.040.
3. (Name): Renzulli Properties LLC
   is the [X] original judgment creditor [ ] assignee of record whose address is shown on this form above the court's name.
4. **Judgment debtor** *(name, type of legal entity if not a natural person, and last known address)*:

   Jeffrey D. Phair
   945 East J Street
   Chula Vista, CA 91910

   [X] Additional judgment debtors on next page
5. **Judgment entered on** *(date)*: March 22, 2024
   *(See type of judgment in item 22.)*
6. [ ] Judgment renewed on *(dates)*:
7. **Notice of sale** under this writ:
   a. [X] has not been requested.
   b. [ ] has been requested *(see next page)*.
8. [ ] Joint debtor information on next page.

9. [ ] Writ of Possession/Writ of Sale information on next page.
10. [ ] This writ is issued on a sister-state judgment.

**For items 11–17, see form MC-012 and form MC-013-INFO.**

| | | |
|---|---|---|
| 11. Total judgment *(as entered or renewed)* | $ | 3,489,438.60 |
| 12. Costs after judgment *(CCP 685.090)* | $ | 639.07 |
| 13. Subtotal *(add 11 and 12)* | $ | 3,490,077.67 |
| 14. Credits to principal *(after credit to interest)* | $ | 0.00 |
| 15. Principal remaining due *(subtract 14 from 13)* | $ | 3,490,077.67 |
| 16. Accrued interest remaining due per CCP 685.050(b) *(not on GC 6103.5 fees)* | $ | 38,240.40 |
| 17. Fee for issuance of writ *(per GC 70626(a)(l))* | $ | 40.00 |
| 18. **Total amount due** *(add 15, 16, and 17)* | $ | 3,528,358.07 |
| 19. **Levying officer:** | | |
| a. Add daily interest from date of writ *(at the legal rate on 15) (not on GC 6103.5 fees)* | $ | 956.01 |
| b. Pay directly to court costs included in 11 and 17 *(GC 6103.5, 68637; CCP 699.520(j))* | $ | 0.00 |

20. [ ] The amounts called for in items 11-19 are different for each debtor. These amounts are stated for each debtor on Attachment 20.

[SEAL]




Date: MAY 3 1 2024 Clerk, by J. Siharath, Deputy

**NOTICE TO PERSON SERVED: SEE PAGE 3 FOR IMPORTANT INFORMATION.**

EJ-130

| Plaintiff/Petitioner: Jeff Phair, et al. <br> Defendant/Respondent: Renzulli Properties, LLC | CASE NUMBER: <br> 37-2022-00046736-CU-BC-CTL |
|---|---|

21. [X] Additional judgment debtor(s) *(name, type of legal entity if not a natural person, and last known address):*

The Phair Company LLC
945 East J Street
Chula Vista, CA 91910

Green Phair Scripps Partners LLC
945 East J Street
Chula Vista, CA 91910

22. The judgment is for *(check one):*

a. [ ] wages owed.
b. [ ] child support or spousal support.
c. [X] other.

23. [ ] Notice of sale has been requested by *(name and address):*

24. [ ] Joint debtor was declared bound by the judgment (CCP 989–994)

a. *on (date):*
b. name, type of legal entity if not a natural person, and last known address of joint debtor:

a. *on (date):*
b. name, type of legal entity if not a natural person, and last known address of joint debtor:

c. [ ] Additional costs against certain joint debtors are itemized: [ ] below [ ] on Attachment 24c.

25. [ ] (Writ of Possession or Writ of Sale) **Judgment** was entered for the following:

a. [ ] Possession of real property: The complaint was filed on *(date):*
*(Check (1) or (2). Check (3) if applicable. Complete (4) if (2) or (3) have been checked.)*

(1) [ ] *The Prejudgment Claim of Right to Possession* was served in compliance with CCP 415.46. The judgment includes all tenants, subtenants, named claimants, and other occupants of the premises.

(2) [ ] *The Prejudgment Claim of Right to Possession* was NOT served in compliance with CCP 415.46.

(3) [ ] The unlawful detainer resulted from a foreclosure sale of a rental housing unit. (An occupant not named in the judgment may file a *Claim of Right to Possession* at any time up to and including the time the levying officer returns to effect eviction, regardless of whether a *Prejudgment Claim of Right to Possession* was served.) *(See CCP 415.46 and 1174.3(a)(2).)*

(4) If the unlawful detainer resulted from a foreclosure (item 25a(3)), or if the *Prejudgment Claim of Right to Possession* was not served in compliance with CCP 415.46 (item 25a(2)), answer the following:

(a) The daily rental value on the date the complaint was filed was $
(b) The court will hear objections to enforcement of the judgment under CCP 1174.3 on the following dates *(specify):*

*Item 25 continued on next page*



CEB ceb.com Essential Forms

Renzulli-22

EJ-130

| Plaintiff/Petitioner: Jeff Phair, et al. | CASE NUMBER: |
|---|---|
| Defendant/Respondent: Renzulli Properties, LLC | 37-2022-00046736-CU-BC-CTL |

25. b. ☐ Possession of personal property.
   ☐ If delivery cannot be had, then for the value *(itemize in 25e)* specified in the judgment or supplemental order.

c. ☐ Sale of personal property.

d. ☐ Sale of real property.

e. The property is described ☐ below ☐ on Attachment 25c.

**NOTICE TO PERSON SERVED**

WRIT OF EXECUTION OR SALE. Your rights and duties are indicated on the accompanying *Notice of Levy* (form EJ-150).

WRIT OF POSSESSION OF PERSONAL PROPERTY. If the levying officer is not able to take custody of the property, the levying officer will demand that you turn over the property. If custody is not obtained following demand, the judgment may be enforced as a money judgment for the value of the property specified in the judgment or in a supplemental order.

WRIT OF POSSESSION OF REAL PROPERTY. If the premises are not vacated within five days after the date of service on the occupant or, if service is by posting, within five days after service on you, the levying officer will remove the occupants from the real property and place the judgment creditor in possession of the property. Except for a mobile home, personal property remaining on the premises will be sold or otherwise disposed of in accordance with CCP 1174 unless you or the owner of the property pays the judgment creditor the reasonable cost of storage and takes possession of the personal property not later than 15 days after the time the judgment creditor takes possession of the premises.

EXCEPTION IF RENTAL HOUSING UNIT WAS FORECLOSED. If the residential property that you are renting was sold in a foreclosure, you have additional time before you must vacate the premises. If you have a lease for a fixed term, such as for a year, you may remain in the property until the term is up. If you have a periodic lease or tenancy, such as from month-to-month, you may remain in the property for 90 days after receiving a notice to quit. A blank form *Claim of Right to Possession and Notice of Hearing* (form CP10) accompanies this writ. You may claim your right to remain on the property by filling it out and giving it to the sheriff or levying officer.

EXCEPTION IF YOU WERE NOT SERVED WITH A FORM CALLED PREJUDGMENT CLAIM OF RIGHT TO POSSESSION. If you were not named in the judgment for possession and you occupied the premises on the date on which the unlawful detainer case was filed, you may object to the enforcement of the judgment against you. You must complete the form *Claim of Right to Possession and Notice of Hearing* (form CP10) and give it to the sheriff or levying officer. A blank form accompanies this writ. You have this right whether or not the property you are renting was sold in a foreclosure.

# EXHIBIT 2

Case 25-00069-JBM11 Filed 07/03/25 Entered 07/03/25 14:07:59 Doc 1 Pg. 17 of 200

David M. Parker, Esq. (SBN 211078)
Gregory L. Riggs, Esq. (SBN 314022)
**PARKER & RIGGS LLP**
110 West A Street, Suite 615
San Diego, California 92101
Telephone: (619) 233-8292
Facsimile: (619) 233-8636
DParker@ParkerRiggs.com
GRiggs@ParkerRiggs.com

Attorneys for Plaintiffs Affordable Housing Land Consultants, LLC and Century Housing Corporation

ELECTRONICALLY FILED
Superior Court of California,
County of San Diego
12/3/2024 7:54:05 PM
Clerk of the Superior Court
By N. Lopez ,Deputy Clerk

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO – CENTRAL DIVISION**

AFFORDABLE HOUSING LAND CONSULTANTS, LLC, a California Limited Liability Company; and CENTURY HOUSING CORPORATION, a California Nonprofit Corporation;

Plaintiffs,

v.

RENZULLI PROPERTIES LLC, a California Limited Liability Company;
THE PHAIR COMPANY LLC, a California Limited Liability Company;
JEFFREY D. PHAIR, an individual
ALL PERSONS UNKNOWN CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN OR TO THE REAL PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' INTERESTS, OR ANY CLOUD UPON PLAINTIFFS' TITLE THERETO; and DOES 1 through 50, inclusive,

Defendants.

Case No. 24CL020598C

**PLAINTIFFS' NOTICE OF EX PARTE AND EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Filed: 11/01/24
Judge: Hon. Gregory W. Pollack
Department: C-71
Trial Date: Not yet set.

Hearing Date: December 5, 2024
Time: 8:45 a.m.

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on December 5, 2024, at 8:45 a.m., or as soon thereafter as this matter can be heard in Department C-71 of the above-entitled Court, located at 330 West Broadway, San Diego, California, 92101, Plaintiffs Affordable Housing Land Consultants, LLC

("AHLC") and Century Housing Corporation ("Century") will, and hereby do, apply to this court for a temporary restraining order, setting a hearing on a preliminary injunction, and for an order for defendant Renzulli Properties LLC ("Renzulli") to show cause if any it has, why it and its members, managers, officers, agents, servants, employees, and representatives, and all persons acting in concert or participating with them, should not be enjoined and restrained during the pendency of this action from engaging in, committing, or performing, directly or indirectly, any and all of the following acts:

1. From taking any action to enforce its abstract of judgment, recorded April 2, 2024 as Document Number 2024-0079649 in the Official Records of San Diego County (the "Abstract") as against that certain real property commonly known as 3145 and 3167 Beyer Boulevard, San Diego, CA 92154, identified by Assessor's Parcel Numbers 630-321-31-00 and APN 630-321-32-00, legally described as:

> PARCELS 1 AND 2 OF PARCEL MAP NO. 18000, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 26, 1998

(the "Properties");

2. From taking any action to realize against the Properties;
3. From conducting a sheriff's sale of the Properties; and/or
4. From taking any action to enforce any claimed lien rights involving the Properties.

Plaintiffs also seek an order that, pending the hearing and determination of the order to show cause, Renzulli, and each of its members, managers, officers, agents, servants, employees, and representatives, and all persons acting in concert or participating with them, are restrained and enjoined from engaging in, committing, or performing, directly or indirectly, any of the following acts:

1. From taking any action to enforce the Abstract as against the Properties;
2. From taking any action to realize against the Properties;
3. From conducting a sheriff's sale of the Properties; and/or
4. From taking any action to enforce any claimed lien rights involving the Properties.

This application is made on the grounds that irreparable harm is certain and imminent, that AHLC and Century are likely to prevail on the merits of their claims against Renzulli, and that the balance of hardships strongly favors AHLC and Century, all as set forth in the accompanying memorandum of points and authorities.

This application is based on this notice, the supporting memorandum of points and authorities, the declarations of Bobby Ashrafi, Alexis Gevorgian, Joshua Hamilton, Renee Marshall and David Parker, the request for judicial notice, and the compendium of exhibits served and filed herewith, the records and files herein, and on such other evidence as may be presented at the hearing of this application.

PARKER & RIGGS LLP

Dated: December 3, 2024

By: ______________________________
David M. Parker, Esq.
Gregory L. Riggs, Esq.
Attorneys for Plaintiffs Affordable Housing Land Consultants, LLC and Century Housing Corporation

# EXHIBIT 3

[redacted]

FILED
Clerk of the Superior Court

DEC -5 2024

By: T. Abas

**SUPERIOR COURT OF THE STATE OF CALIFORNIA**

**COUNTY OF SAN DIEGO – CENTRAL DIVISION**

AFFORDABLE HOUSING LAND CONSULTANTS, LLC, a California Limited Liability Company; and CENTURY HOUSING CORPORATION, a California Nonprofit Corporation;

Plaintiffs,

v.

RENZULLI PROPERTIES LLC, a California Limited Liability Company;
THE PHAIR COMPANY LLC, a California Limited Liability Company;
JEFFREY D. PHAIR, an individual
ALL PERSONS UNKNOWN CLAIMING ANY LEGAL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN OR TO THE REAL PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' INTERESTS, OR ANY CLOUD UPON PLAINTIFFS' TITLE THERETO; and DOES 1 through 50, inclusive,

Defendants.

Case No. 24CL020598C

**[~~PROPOSED~~] ORDER GRANTING PLAINTIFFS' EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER AND AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

Filed: 11/01/24
Judge: Hon. Gregory W. Pollack
Department: C-71
Trial Date: Not yet set.

Hearing Date: December 5, 2024
Time: 8:45 a.m.

The Court, having considered the Ex Parte Application for a Temporary Restraining Order and Order to Show Cause re Preliminary Injunction and good cause appearing, the court hereby orders as follows:

IT IS HEREBY ORDERED that defendant Renzulli Properties LLC ("Renzulli"), appear in San Diego Superior Court, Central Division, Department 71, located at 330 West Broadway, San Diego, CA 92101, on February 7, 2025, at 9:30 a.m. ~~2024, or as soon thereafter as the matter may be heard~~, then and there to show cause, if any it has, why it and its members, managers, officers, agents, servants, employees, and representatives, and all persons acting in concert or participating with them, should not be enjoined and restrained [illegible] ~~during the pendency of this action~~ from engaging in, committing, or performing, directly or indirectly, any and all of the following acts:

1. From taking any action to enforce its abstract of judgment, recorded April 2, 2024 as Document Number 2024-0079649 in the Official Records of San Diego County (the "Abstract") as against that certain real property commonly known as 3145 and 3167 Beyer Boulevard, San Diego, CA 92154, identified by Assessor's Parcel Numbers 630-321-31-00 and APN 630-321-32-00, legally described as:

PARCELS 1 AND 2 OF PARCEL MAP NO. 18000, IN THE CITY OF SAN DIEGO, COUNTY OF SAN DIEGO, STATE OF CALIFORNIA, ACCORDING TO MAP THEREOF FILED IN THE OFFICE OF THE COUNTY RECORDER OF SAN DIEGO COUNTY, MARCH 26, 1998

(the "Properties");

2. From taking any action to realize against the Properties;

3. From conducting a sheriff's sale of the Properties; and/or

4. From taking any action to enforce any claimed lien rights involving the Properties.

IT IS FURTHER ORDERED that, pending the hearing and determination of the order to show cause, Renzulli, and each of its members, managers, officers, agents, servants, employees, and representatives, and all persons acting in concert or participating with them, are restrained and enjoined from engaging in, committing, or performing, directly or indirectly, any of the following acts:

1. From taking any action to enforce the Abstract as against the Properties;
2. From taking any action to realize against the Properties;
3. From conducting a sheriff's sale of the Properties; and/or

///

///

4. From taking any action to enforce any claimed lien rights involving the Properties.

5. Nothing within this order shall preclude either party from filing a lis pendens

6. While the court does not set a bond at this time, the bond issue of shall be revisited at the 2/7/25 hearing on the motion for preliminary injunction.

IT IS SO ORDERED.

Dated: __________, 2024

12/5/24

JUDGE OF THE SUPERIOR COURT
GREGORY W. POLLACK

# EXHIBIT 4

**SUPERIOR COURT OF CALIFORNIA,**
**COUNTY OF SAN DIEGO**
**CENTRAL**

**MINUTE ORDER**

DATE: 02/07/2025 TIME: 9:30 AM DEPT: C-71

JUDICIAL OFFICER: GREGORY W. POLLACK
CLERK: Valeria Contreras
REPORTER/ERM: Robert Jameyson; CSR #8936
BAILIFF/COURT ATTENDANT: D. DiValerio

CASE NO: **24CL020598C** CASE INIT.DATE: 11/01/2024
CASE TITLE: **Affordable Housing Land Consultants LLC vs Renzulli Properties LLC**
CASE CATEGORY: Civil CASE TYPE: (U)Other Real Property: Other Real Property

---

**HEARING TYPE**: SLAPP / SLAPPback Motion Hearing
MOVING PARTY:

---

**APPEARANCES**
David M Parker, Attorney for Plaintiff(s), present in person.
Walt Pennington, Attorney for Defendant RENZULLI PROPERTIES LLC, present in person.
Gregory Riggs, attorney for David M Parker, Attorney for Plaintiff(s), present in person.
Nathaniel Smith, attorney for JEFFREY D PHAIR, Defendant, present in person.

---

The Court orally advises the parties of its tentative ruling, after which oral argument is conducted. Upon completion of oral argument, the Court (1) makes the following Order, (2) enters the date of this hearing for the following Order, and (3) gives Notice of Entry of the following Order:

**I.**

**INTRODUCTION**

This is an anti-SLAPP motion to strike filed by defendant Renzulli Properties, LLC ("Renzulli") against all four causes of action alleged against it by plaintiffs Affordable Housing Land Consultants, LLC ("AHLC") and Century Housing Corporation ("Century").

A statement of decision is not required for an order ruling on an anti-SLAPP motion. *Lien v. Lucky United Properties Investment, Inc.* (2008) 163 Cal.App.4th 620. While this order provides the parties with some reasons for this court's ruling, it should not be considered a formal exhaustive statement of decision in the event it is challenged at the appellate level.

**II.**

**APPLICABLE LAW**

Code of Civil Procedure §425.16(b)(1), the anti-SLAPP statute, provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. Pursuant to CCP §425.16(e), an "act in furtherance of a person's right of petition or free speech" includes:

1. Any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;

2. Any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

3. Any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest;

4. Any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

As a first step [Prong 1], Renzulli carries the burden of showing that the challenged claim arises from the exercise of protected activity, which, *if* established, shifts the second step burden [Prong 2] to AHLC and Century to prove a probability of success notwithstanding the fact that the claim arises from protected activity. CCP §425.16(b); Weil & Brown, Jr., RUTTER: Cal. Prac. Guide – Civil Procedure Before Trial, ¶¶7:990, 7:1005, pp. 7(II) 70, 72 (2024). "[Courts] have described this second step as a

'summary-judgment-like procedure.' … The court does not weigh evidence or resolve conflicting factual claims. Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. … Claims with the requisite minimal merit may proceed." *Baral v. Schnitt* (2016) 1 Cal.5th 376, 384-385.

**III.**

**ANALYSIS**

Buyer AHLC, financed by lender Century, purchased two parcels of property ("the property") from The Phair Company LLC ("TPC") for more than 8 million dollars. The grant deed conveying the property from TPC to AHLC was signed on July 1, 2024, and recorded on July 3, 2024.

However, unbeknownst to AHLC and Century, Renzulli had obtained a judgment against TPC on March 22, 2024, for several million dollars. On March 29, 2024, an Abstract of Judgment had been issued in connection with that judgment, which was recorded on April 2, 2024.

AHLC and Century did not learn of Renzulli's asserted lien claim on the property until two notices of levy, recorded on August 5, 2024, were served. Renzulli claims that AHLC purchased the properties subject to Renzulli's encumbrance since Renzulli had recorded the Abstract of Judgment prior to the AHLC's purchase of the property. AHLC and Century, which did not have actual notice (or constructive notice, as later discussed) of Renzulli's recorded Abstract of Judgment against TPC, claim that they are a bona fide purchaser and a bona fide encumbrancer for value who are entitled to the property free and clear of Renzulli's purported encumbrance.

The complaint alleges eight causes of action, but only the following four *equitable* causes of action have been alleged against Renzulli:

- **First Cause of Action** - Quiet Title
- **Second Cause of Action** - Cancellation

- **Third Cause of Action** - Equitable Subrogation
- **Fourth Cause of Action** - Declaratory Relief

Notably, AHLC and Century do not assert any tort claims against Renzulli, and there is no evidence before this court that Renzulli had knowledge that TPC was selling the property to AHLC before that sale was completed or that TPC and Renzulli conspired to keep AHLC and Century in the dark about Renzulli's judgment against TPC until after TPC had sold the property to AHLC.

Renzulli contends that AHLC and Century's lawsuit is a SLAPP suit that arises out of protected activities, *i.e.*, the clerk of the court's issuance of an Abstract of Judgment in favor of Renzulli against TPC, Renzulli's subsequent recordation of that Abstract of Judgment with the San Diego County Recorder's office on April 2, 2024, and Renzulli's recording and service of two levy notices related to the properties on August 5, 2024. Renzulli claims that all of these activities arise out of protected activities under the anti-SLAPP statute and are also privileged under Civil Code Section §47(b).

Assuming (but not deciding) that Renzulli is correct, that his activities arise out of protected activities, then Renzulli has successfully carried his Prong 1 burden. The analysis then shifts to whether AHLC and Century can satisfy their Prong 2 burden of establishing a substantial probability of prevailing.

For the reasons discussed below, the court finds that AHLC and Century have, indeed, successfully satisfied their Prong 2 burden of establishing a substantial probability of prevailing. As such, the court need not even address whether Renzulli has actually carried his Prong 1 burden of establishing that AHLC's and Century's lawsuit arises out of protected activity. *Hardin v. PDX, Inc.* (2014) 227 Cal.App.4th 159, 166.

"The plaintiff's burden of establishing a probability of prevailing is not high. 'Probability' means a 'reasonable probability' of prevailing, not prevailing by a preponderance of the evidence. When a plaintiff demonstrates a reasonable probability of prevailing on the merits, the complaint is not a SLAPP suit. … At this second anti-SLAPP step, the judge does not *weigh* the credibility or comparative probative strength of the competing evidence. Instead, the judge merely determines whether the plaintiff has made a prima facia showing of facts necessary to establish the plaintiff's claim at trial. A judge must apply a 'summary-judgment-like' test, accepting as true the evidence favorable to the plaintiff and evaluating the defendant's evidence only to determine whether the defendant has defeated the plaintiff's claim as a matter of law, *e.g.,* on grounds of privilege or immunity. A judge must resolve conflicts and inferences in the plaintiff's favor but need not consider speculative inferences that are not supported by the evidence."

[Internal citations omitted.] CJER, California Judges Benchbook, Civil Proceedings Before Trial, §12.134, pp.1406-1407 (2022).

In finding that AHLC and Century have, indeed, succeeded in satisfying their Prong 2 burden of establishing a substantial probability of prevailing, the court notes the following to be of particular importance:

1. Renzulli's relies heavily on the litigation privilege set forth within Civil Code §47(b) in maintaining that plaintiffs cannot satisfy their Prong 2 burden. This defense, however, quickly melts by virtue of the fact that each of the four causes of action pleaded against Renzulli is an equitable cause of action for which plaintiffs are not seeking tort damages and to which Civil Code §47(b) does not apply. *See Weeden v. Hoffman* (2021) 70 Cal.App.5th 269.

2. There is no evidence that either AHLC or Century had *actual* knowledge of the Renzulli judgment against TPC or the recorded Abstract of Judgment until after escrow had closed on AHLC purchase of the property from TPC.

3. Similarly, AHLC and Century did not have *constructive* knowledge of Renzulli's judgment and recorded abstract. While indexed according to the general practices of the San Diego Recorder's Office to omit "The," the abstract was not indexed in the legal name of the debtor/grantor, "The Phair Company LLC," as required to trigger constructive knowledge status. Rather, it was indexed without "The", *i.e.,* it was indexed as "Phair Company LLC." Accordingly, an index search under "The Phair Company LLC" conducted after the abstract was recorded would not have revealed Renzulli's judgment against TPC. *Dyer v. Martinez* (2007) 147 Cal.App.4th 1240, 1242 ("For well over a century, the law in California has been that a recorded document does not provide constructive notice unless and until it can be located by a title search."); *Colyear v. Rolling Hills Community Association of Rancho Palos Verdes* (2024) 100 Cal.App.5th 110, 119 fn.2 ("Proper recordation of a real property instrument is necessary to impart constructive notice of its contents. (Civ. Code §§ 1213, 1214.) If an instrument cannot be located by searching the 'grantor' and 'grantee' indices of the public records, the instrument does not constitute constructive notice and later bona fide purchasers or encumbrances are not charged with knowledge of is existence.").

4. While Renzulli argues that a title search should have been conducted immediately before the actual close of escrow, it should be noted that index searches actually conducted after plaintiffs learned of the Renzulli abstract under TPC's proper legal name, "The Phair Company LLC," were negative. Since the property had not been indexed under the debtor/grantor's name, no index search under that

name, *irrespective of when it occurred*, would have disclosed to the searcher that TPC's property was encumbered by Renzulli's abstract.

5. Neither the preliminary report nor the amended preliminary report listed any abstracts of judgment involving Renzulli. The only known encumbrance was the Conrad Deed of Trust, and that was paid off by Century as part of the purchase of the property.

6. Both AHLC and Century clearly gave value in exchange for their interests in the property.

7. TPC concealed from AHLC and Century the judgment Renzulli had obtained against TPC and repeatedly misrepresented to them that there were no actions, suits or proceedings that would affect the property, conduct that serves as a basis for plaintiffs' tort claims against TPC.

8. As to Century's claim for equitable subrogation, in addition to it being equitable in nature, it is noted that Century paid off the Conrad Deed of Trust ($1,999,000) which had been recorded on March 16, 2023, *a date long prior to Renzulli's recordation of its Judgment Abstract as to Renzulli.* Having done so, and not as a volunteer, Century stands in the shoes of Conrad whose Deed of Trust had priority over Renzulli's encumbrance.

**IV.**

**CONCLUSION**

Renzulli's anti-SLAPP motion is denied, inasmuch as AHLC's and Century's evidence satisfies their Prong 2 burden of establishing a substantial probability of prevailing.

This is a motion for a preliminary injunction brought by plaintiffs Affordable Housing Land Consultants, LLC ("AHLC") and Century Housing Corporation ("Century") against defendant Renzulli Properties LLC ("Renzulli").

A statement of decision is not required in granting or denying a preliminary injunction. *People v. Landlords Professional Services, Inc.* (1986) 178 Cal.App.3d 68, 70 – 71. Accordingly, this ruling should not be interpreted as a statement of decision. Furthermore, since a ruling on a motion for preliminary injunction is not an adjudication of the ultimate rights in controversy, this ruling should not be interpreted as an adjudication of any of the issues to be decided at the time of trial. *Cohen v. Board of Supervisors* (1985) 40 Cal.3d 277, 286.

“[T]he decision to grant a preliminary injunction rests in the sound discretion of the trial court. *IT Corporation v. County of Imperial* (1983) 35 Cal.3d 63, 69.

“In determining whether to issue a preliminary injunction, the trial court considers: (1) the likelihood that the moving party will prevail on the merits and (2) the interim harm to the respective parties if an injunction is granted or denied. The moving party must prevail on both factors to obtain an injunction. Thus, where the trial court denies an injunction, its ruling should be affirmed if it correctly found the moving party failed to satisfy either of the factors.” *Sahlolbei v. Providence Healthcare, Inc.* (2003) 112 Cal.App.4th 1137, 1145.

***The court finds that AHLC and Century have satisfied both of the above two elements and, accordingly, their motion for preliminary injunction is granted and the temporary restraining order the court had previously issued on December 5, 2024, shall remain in effect during the pendency of this litigation. Bond is set at $10,000.***

In reaching the above decision, the court has considered all papers, as well as the oral argument of counsel.

Gregory W. Pollack

Judge Gregory W. Pollack

# EXHIBIT 5

Mark C. Mazzarella (Bar No. 082494)
mmazzarella@dmwplc.com
Nathanial R. Smith (Bar No. 257615)
smith@dmwplc.com
Darcie A.F. Colihan (Bar No. 231435)
colihan@dmwplc.com
**DUCKOR METZGER & WYNNE,**
A Professional Law Corporation
101 West Broadway, Suite 1700
San Diego, California 92101
(619) 209-3000; (619) 209-3043 fax

Attorneys for Defendants JEFFREY D. PHAIR and THE PHAIR COMPANY, LLC

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SAN DIEGO

| | |
|---|---|
| AFFORDABLE HOUSING LAND CONSULTANTS, LLC, a California Limited Liability Company; and CENTURY HOUSING CORPORATION, a California Nonprofit Corporation;<br><br>Plaintiffs,<br><br>v.<br><br>RENZULLI PROPERTIES, LLC, a California Limited Liability Company; THE PHAIR COMPANY, LLC, a California Limited Liability Company; Jeffrey D. Phair, an individual; ALL PERSONS UNKNOWN CLAIMING ANY LEGAGL OR EQUITABLE RIGHT, TITLE, ESTATE, LIEN, OR INTEREST IN OR TO THE REAL PROPERTY DESCRIBED IN THE COMPLAINT ADVERSE TO PLAINTIFFS' INTERESTS, OR ANY CLOUD UPON PLAINTIFFS' TITLE THERETO; and DOES 1 through 50, inclusive<br><br>Defendants. | CASE NO: 24CL020598C<br><br>**DEFENDANTS THE PHAIR COMPANY, LLC AND JEFFREY D. PHAIR'S VERIFIED ANSWER TO PLAINTIFFS' VERIFIED COMPLAINT**<br><br>IMAGED FILE<br><br>Dept: C-71<br>Judge: Hon. Gregory W. Pollack<br><br>Action Filed: 11/01/2024<br>Trial Date: Not assigned. |

Defendants JEFFREY D. PHAIR ("Mr. Phair") and THE PHAIR COMPANY, LLC ("TPC"; TPC and Mr. Phair collectively, "Defendants") answer the Complaint filed by Plaintiffs AFFORDABLE HOUSING LAND CONSULTANTS and CENTURY HOUSING CORPORATION (collectively "Plaintiffs") admitting, denying, and alleging as follows:

**THE PARTIES & NATURE OF THE CASE**

1. Defendants lack sufficient information on which to either admit or deny the allegations of Complaint paragraph 1, and on that basis deny same.

2. Defendants lack sufficient information on which to either admit or deny the allegations of Complaint paragraph 2, and on that basis deny same.

3. Defendants lack sufficient information on which to either admit or deny the allegations of Complaint paragraph 3, and on that basis deny same.

4. Answering Complaint paragraph 4, Defendants admit that AHLC acquired the properties that are the subject of this action in July of 2024. Defendants further admit that the project is called the "Trolley Stop Apartments" because the subject properties are located across from a major transit center. Defendants lack sufficient information on which to either admit or deny the remaining allegations of Complaint paragraph 4, and on that basis deny same.

5. Defendants lack sufficient information on which to either admit or deny the allegations of Complaint paragraph 5, and on that basis deny same.

6. Answering Complaint paragraph 6, Defendants admit that The Phair Company, LLC ("TPC") is, and at all times relevant herein was, a California Limited Liability Company doing business in the County of San Diego, State of California.

7. Answering Complaint paragraph 7, Defendants admit that Jeffrey D. Phair ("Mr. Phair") is, and at all times relevant herein was, an individual residing in the County of San Diego, State of California.

8. The allegations of Complaint paragraph 8 pertain to parties other than Defendants, such that no response is required. To the extent a further response is required, Defendants lack sufficient information on which to admit or deny the allegations contained therein, and on that basis deny same.

9. The allegations of Complaint paragraph 9 pertain to parties other than Defendants, such that no response is required. To the extent a further response is required, Defendants lack sufficient information on which to admit or deny the allegations contained therein, and on that basis deny same.

10. The allegations of Complaint paragraph 10 are legal conclusions to which no response is required. To the extent a further response is required, Defendants lack sufficient information on which to admit or deny the allegations contained therein, and on that basis deny same.

11. The allegations of Complaint paragraph 11 are legal conclusions to which no response is required. To the extent a further response is required, Defendants lack sufficient information on which to admit or deny the allegations contained therein, and on that basis deny same.

**JURISDICTION AND VENUE**

12. The allegations of Complaint paragraph 12 are legal conclusions to which no response is required. To the extent a further response is required, Defendants lack sufficient information on which to admit or deny the allegations contained therein, and on that basis deny same.

13. Answering Complaint paragraph 13, Defendants admit that the subject real property is located within the State of California, County of San Diego. The remaining allegations of Complaint paragraph 13 are legal conclusions to which no response is required. To the extent a further response to those remaining allegations is required, Defendants deny same.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

14. Answering Complaint paragraph 14, Defendants admit that the action involves title to two parcels of real property commonly known as 3145 and 3167 Beyer Boulevard, San Diego, CA 92154, identified by Assessor's Parcel Numbers ("APN") 630-321-31-00 and APN 630-321-32-00 (the "Properties").

15. Answering Complaint paragraph 15, Defendants admit that on or about February 15, 2024, AMG & Associates, LLC ("AMG") presented an offer to TPC to purchase the Properties for $7,100,000 pursuant to a standard offer, agreement and escrow instructions for the purchase of real estate (the "PSA"). Defendants admit Mr. Phair signed the PSA. Defendants deny the remaining allegations of paragraph 15.

///

16. Answering Complaint paragraph 16, Defendants admit that on or about February 26, 2024, the parties opened an escrow and signed escrow instructions for the sale of the Properties with Chicago Title Company with escrow to close on or before June 1, 2024.

17. Answering Complaint paragraph 17, Defendants admit that Paragraph 17 of the Escrow Instructions is entitled “Encumbrances.” Defendants aver that Paragraph 17 of the Escrow Instructions speaks for itself.

18. Answering Complaint paragraph 18, Defendants admit that TPC provided a property information sheet (“Property Disclosure”). Defendants aver that Paragraph 9 of the Property Disclosure speaks for itself.

19. Answering Complaint paragraph 19, Defendants admit that the Preliminary Report reflects that legal title to the Properties was vested in TPC. Defendants further admit that AHLC received the Preliminary Report.

20. Defendants admit the allegations of Complaint paragraph 20.

21. Answering Complaint paragraph 21, Defendants admit that the Preliminary Title Report lists a deed of trust to secure an indebtedness in the amount of $1,999,000.00 granted by TPC to Robert and Daryl Conrad et al. Defendants further admit that the Conrad DOT was recorded as Document No. 2023-0066759 on March 16, 2023.

22. Defendants lack sufficient information on which to either admit or deny the allegations of Complaint paragraph 22, and on that basis deny same.

23. Answering Complaint paragraph 23, Defendants admit that on March 22, 2024 a judgment was entered in the case of *Jeff Phair et al. v. Renzulli Properties, LLC*, in favor of Renzulli and against Mr. Phair, TPC, and Green Phair Scripps Partners, LLC jointly and severally for $3,489,438.60.

24. Defendants lack sufficient information on which to either admit or deny the allegations of Complaint paragraph 24, and on that basis deny same.

25. Answering Complaint paragraph 25, Defendants admit that an amended preliminary report issued on or about March 25, 2024 (the “First Amended Preliminary Report”). Defendants

///

lack sufficient information on which to either admit or deny the remaining allegations of Complaint paragraph 25, and on that basis deny same

26. Answering Complaint paragraph 26, Defendants admit that the First Amended Preliminary Report provided to Century does not list any abstracts of judgment or judgment liens.

27. Answering Complaint paragraph 27, Defendants admit that Renzulli filed notice of entry of the Judgment on March 28, 2024.

28. Answering Complaint paragraph 28, Defendants admit that the proof of service states counsel for TPC, Mr. Phair, and Green Phair Scripps Partners LLC was served on March 28, 2024.

29. Answering Complaint paragraph 29, Defendants admit that an abstract of the Judgment was issued on March 29, 2024, and recorded on April 2, 2024 as Document No. 2024-0079649 of Official Records.

30. Answering Complaint paragraph 30, Defendants admit that the Abstract identifies "The Phair Company LLC" as a judgment debtor.

31. Answering Complaint paragraph 31, Defendants admit that at the time of the escrow for the sale of the Properties, legal title to the Properties was held in the name of "The Phair Company LLC" and the recorded grant deed in the name of "The Phair Company LLC" was recorded March 16, 2023. Defendants deny the remaining allegations of Complaint paragraph 31.

32. Defendants admit that no suits, proceedings or actions were disclosed by Defendants to Plaintiffs prior to the close of escrow. Defendants deny the remaining allegations of Complaint paragraph 32, and specifically deny that they were obligated to disclose to Plaintiffs the Judgment or the Abstract.

33. Defendants deny the allegations of Complaint paragraph 33.

34. Defendants lack sufficient information on which to either admit or deny the allegations of Complaint paragraph 34, and on that basis deny same.

35. Defendants lack sufficient information on which to either admit or deny the allegations of Complaint paragraph 35, and on that basis deny same.

///

36. Defendants lack sufficient information on which to either admit or deny the allegations of Complaint paragraph 36, and on that basis deny same.

37. Answering Complaint paragraph 37, Defendants admit that on July 1, 2024, Mr. Phair signed a grant deed as the Manager of TPC conveying the Properties to AHLC. Defendants aver that, at the time of the conveyance, TPC held legal title to the Properties in trust for Trolley Stop Apartments II, LLC. Defendants admit that the TPC Grant Deed was recorded on July 3, 2024 as Document No. 2024-0168282 of Official Records. Defendants lack sufficient information on which to either admit or deny the remaining allegations of Complaint paragraph 37, and on that basis deny same.

38. Defendants lack sufficient information on which to either admit or deny the allegations of Complaint paragraph 38, and on that basis deny same.

39. Answering Complaint paragraph 39, Defendants admit that a deed of trust was recorded on July 3, 2024 as Document Number 2024-0168283 of Official Records. Defendants lack sufficient information on which to either admit or deny the remaining allegations of Complaint paragraph 39, and on that basis deny same.

40. Answering Complaint paragraph 40, Defendants admit that AHLC and Century deposited a total of $8,270,779.18 into escrow to purchase the Properties. Defendants deny the remaining allegations in paragraph 40, and aver that TPC held title in trust for Trolley Stop Apartments II, LLC.

41. Defendants admit that a full reconveyance releasing the lien of the Conrad DOT was recorded as Document No. 2024-0168284 of Official Records. Defendants lack sufficient information on which to either admit or deny the remaining allegations of Complaint paragraph 41, and on that basis deny same.

42. Defendants admit that on August 5, 2024, Renzulli recorded two notices of levy related to the Properties recorded as Document Nos. 2024-0206865 and 2024-0206886. Defendants admit that notices of levy list an amount of $3,529,538.07. Defendants deny that Renzulli has any right to enforce the Judgment and the Abstract against the Properties. Defendants lack sufficient

///

information on which to either admit or deny the remaining allegations of Complaint paragraph 42, and on that basis deny same.

43. Defendants deny the allegations of Complaint paragraph 43.

44. Answering Complaint paragraph 44, Defendants admit that counsel for AHLC and Century demanded that TPC and Mr. Phair immediately pay the judgment and immediately secure an acknowledgement and satisfaction in full of the judgment. Defendants further admit that TPC and Mr. Phair have not secured an acknowledgement and satisfaction of the Judgment. Defendants deny the remaining allegations of Complaint paragraph 44.

**FIRST CAUSE OF ACTION**

45. Defendants are not named in this cause of action and, as such, no response is required as to Complaint paragraphs 45 through 59.

**SECOND CAUSE OF ACTION**

46. Defendants are not named in this cause of action and, as such, no response is required as to Complaint paragraphs 60 through 62.

**THIRD CAUSE OF ACTION**

47. Defendants are not named in this cause of action and, as such, no response is required as to Complaint paragraphs 63 through 70.

**FOURTH CAUSE OF ACTION**

48. Answering Complaint paragraph 71, Defendants incorporate each and every one of the preceding Paragraphs of this Answer as if fully set forth herein.

49. The allegations of Complaint paragraph 72 are legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained therein.

50. The allegations of Complaint paragraph 73 are legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained therein.

///

///

51. The allegations of Complaint paragraph 74 are legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained therein.

52. The allegations of Complaint paragraph 75 are legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained therein.

53. The allegations of Complaint paragraph 76 are legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained therein.

54. The allegations of Complaint paragraph 77 are legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained therein.

55. Answering Complaint paragraph 78, Defendants admit that AHLC contends that TPC had a duty to disclose all material facts that affected the value and desirability of the Properties. Defendants admit that TPC represented that it had no actual knowledge of any actions, suits, or proceedings pending or threatened before any court, arbitration, or otherwise that would affect the Properties. Defendants deny that an arbitration proceeding was pending at the time of the contract and throughout the escrow period with AHLC. Defendants admit that the Judgment against TPC was entered and the Abstract was recorded prior to the close of escrow for the Properties. Defendants deny that any actions, suits or proceedings affected the Properties as TPC held title to the Properties in trust for Trolley Stop Apartments II, LLC. The remaining allegations of Complaint paragraph 78 are legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained therein.

56. Defendants lack sufficient information on which to either admit or deny the allegations of Complaint paragraph 79, and on that basis deny same.

**FIFTH CAUSE OF ACTION**

57. Answering Complaint paragraph 80, Defendants incorporate each and every one of the preceding Paragraphs of this Answer as if fully set forth herein.

58. The allegations of Complaint paragraph 81 are legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained therein. Defendants aver that TPC had assigned its interest in the Properties to Trolley Stop Apartments II, LLC and TPC held title as constructive trustee.

59. Defendants deny the allegations of Complaint paragraph 82.

60. Defendants deny the allegations of Complaint paragraph 83.

61. Defendants deny the allegations of Complaint paragraph 84.

**SIXTH CAUSE OF ACTION**

62. Answering Complaint paragraph 85, Defendants incorporate each and every one of the preceding Paragraphs of this Answer as if fully set forth herein.

63. Answering Complaint paragraph 86, Defendants admit that TPC and Mr. Phair owed certain duties to AHLC in connection with the purchase and sale of the Properties. Defendants deny that TPC and Mr. Phair breached any such duties. Defendants admit that TPC and Mr. Phair represented that they had no actual knowledge of any actions, suits or proceedings were pending or threatened before any court, arbitration, or otherwise that would affect the Property. Defendants deny that the arbitration proceeding with Renzulli was pending when escrow closed. Defendants admit the Judgment against TPC was entered, and the Abstract was recorded, prior to the close of escrow for the Properties. Defendants admit TPC and Mr. Phair did not disclose the arbitration proceeding, the Judgment, or the Abstract prior to the close of escrow for the Properties. Defendants deny that the Judgment and the Abstract had or have any affect on the Properties; TPC had assigned the Properties to Trolley Stop Apartments II, LLC and TPC held title to the Properties in trust for Trolley Stop Apartments II, LLC. The remaining allegations of Complaint paragraph 86 are legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained therein.

64. Defendants deny the allegations of Complaint paragraph 87.

65. Defendants deny the allegations of Complaint paragraph 88.

66. Defendants admit the allegations of Complaint paragraph 89.

67. Defendants deny the allegations of Complaint paragraph 90.

68. Defendants deny the allegations of Complaint paragraph 91.

**SEVENTH CAUSE OF ACTION**

69. Answering Complaint paragraph 92, Defendants incorporate each and every one of the preceding Paragraphs of this Answer as if fully set forth herein.

70. Defendants admit the allegations of Complaint paragraph 93.

71. Answering Complaint paragraph 94, Defendants deny the arbitration proceeding was pending with Renzulli during the escrow period. Defendants admit that the Judgment against TPC was entered, and the Abstract was recorded, all prior to the close of escrow for the Properties. Defendants deny the remaining allegations of Complaint paragraph 94.

72. Defendants deny the allegations of Complaint paragraph 95.

73. The allegations of Complaint paragraph 96 are legal conclusions to which no response is required. To the extent a further response is required, Defendants lack sufficient information on which to either admit or deny the allegations of Complaint paragraph 96, and on that basis deny same.

74. Defendants deny the allegations of Complaint paragraph 97.

75. Defendants deny the allegations of Complaint paragraph 98.

**EIGHTH CAUSE OF ACTION**

76. Answering Complaint paragraph 99, Defendants incorporate each and every one of the preceding Paragraphs of this Answer as if fully set forth herein.

77. The allegations of Complaint paragraph 100 are legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained therein.

78. Defendants admit the allegations of Complaint paragraph 101.

79. Defendants deny the allegations of Complaint paragraph 102.

80. Defendants deny the allegations of Complaint paragraph 103.

81. The allegations of Complaint paragraph 104 are legal conclusions to which no response is required. To the extent a further response is required, Defendants deny the allegations contained therein.

82. Defendants deny the allegations of Complaint paragraph 105.

83. Answering Complaint paragraph 106, Defendants deny the arbitration proceeding was pending with Renzulli during the escrow period. Defendants admit that the Judgment against TPC was entered, and the Abstract was recorded, all prior to the close of escrow for the Properties. Defendants deny the remaining allegations of Complaint paragraph 106.

84. Defendants lack sufficient information on which to either admit or deny the allegations of Complaint paragraph 107, and on that basis deny same.

85. Defendants deny the allegations of Complaint paragraph 108.

86. Defendants lack sufficient information on which to either admit or deny the allegations of Complaint paragraph 109, and on that basis deny same.

87. Defendants lack sufficient information on which to either admit or deny the allegations of Complaint paragraph 110, and on that basis deny same.

88. Defendants deny the allegations of Complaint paragraph 111.

89. Defendants deny the allegations of Complaint paragraph 112.

90. Defendants deny the allegations of Complaint paragraph 113.

91. Defendants deny the allegations of Complaint paragraph 114.

## PRAYER FOR RELIEF

In answer to Plaintiffs' prayer for relief and each portion thereof, the allegations set forth therein are argument or conclusions of law to which no response is required. To the extent an answer to Plaintiffs' prayer is required, Defendants admit that Plaintiffs seek relief but deny that Plaintiffs are entitled to any relief from Mr. Phair or TPC.

## AFFIRMATIVE DEFENSES

Defendants allege the following separate affirmative defenses to each alleged cause of action in the Complaint. Defendants assert these defenses specifically as to themselves, and not on behalf of any other defendants in this action. The assertion by Defendants of these affirmative defendants is not intended to suggest, and does not suggest, that any of these defenses applies to any other defendant.

///

**FIRST AFFIRMATIVE DEFENSE**

**(Failure to State a Cause of Action)**

Defendants allege that the Complaint fails to state facts sufficient to constitute any cause of action against any of the Defendants.

**SECOND AFFIRMATIVE DEFENSE**

**(Right to Offset)**

Without admitting the existence of any duties or obligations alleged in the Complaint, Defendants allege that, if they are found liable in any manner to AHLC, Defendants would be entitled to offsets and credits against any purported damages, if any, allegedly sustained by AHLC.

**THIRD AFFIRMATIVE DEFENSE**

**(No Causation)**

Without admitting to the existence of any duties or obligations alleged in the Complaint, Defendants allege that any misrepresentation or other fault, act or omission on the part of Defendants, if any, was neither the cause of AHLC's harm nor contributed to the alleged damages AHLC claims.

**FOURTH AFFIRMATIVE DEFENSE**

**(Uncertainty)**

Defendants are informed and believe, and on that basis allege, that further investigation and discovery will reveal that the Complaint is fatally uncertain with regard to quiet title and misrepresentation, among other things.

**FIFTH AFFIRMATIVE DEFENSE**

**(Failure to Mitigate Damages)**

Without admitting the allegations of the Complaint, Defendants allege that if AHLC suffered any loss or damage, such loss or damage was proximately caused, at least in part, by AHLC's own failure to mitigate against their alleged injuries and damages and that, therefore, AHLC's claim must be reduced, diminished, or defeated by such amounts as should have been so mitigated.

///

**SIXTH AFFIRMATIVE DEFENSE**

**(Good Faith)**

Defendants are informed and believe, and based thereon allege, that further investigation and discovery will reveal that at all times referenced in the Complaint, Defendants acted in good faith and did not directly or indirectly induce any act or acts contributing to the alleged damages suffered by AHLC.

**SEVENTH AFFIRMATIVE DEFENSE**

**(No Entitlement to Punitive Damages)**

Defendants allege that the Complaint, and each alleged cause of action contained therein, fails to state facts sufficient to constitute any claim for punitive or exemplary damages against Defendants.

**EIGHTH AFFIRMATIVE DEFENSE**

**(Constitutional Due Process – Punitive Damages)**

Regarding all of AHLC's causes of action, imposition of punitive damages, or an imposition of punitive damages in an amount unrelated to the actual damages suffered by AHLC, if any, would violate the due process and equal protection rights of Defendants under the United States Constitution and the Constitution of the State of California.

**NINTH AFFIRMATIVE DEFENSE**

**(Judgment Lien Did Not Attach to Properties)**

Before entry of the Judgment, and indeed before the dispute given rise to the Judgment, TPC assigned to Trolley Stop Apartments II, LLC all rights in the purchase and sale agreement for the purchase of the Properties. That assignment created a trust relationship with TPC as the grantor, Trolley Stop Apartments II, LLC as the beneficiary and the Properties as the res. At the time the Judgment came into existence, TPC held legal title to the Properties while Trolley Stop Apartments II, LLC held equitable title. As a matter of law, any lien based on the Judgment could not and did not attach to the Properties.

///

///

**TENTH AFFIRMATIVE DEFENSE**

**(Not Responsible for Acts of Does or Roes)**

Defendants are not legally responsible for the acts and/or omissions of those DOES or ROES.

**ELEVENTH AFFIRMATIVE DEFENSE**

**(Third-Party Conduct as Superseding Cause)**

Defendants claim that they are not responsible for Plaintiffs' harm because of the misconduct of parties other than Mr. Phair and TPC.

**TWELFTH AFFIRMATIVE DEFENSE**

**(Apportionment of Responsibility)**

Plaintiff is barred from recovery because other parties, including co-defendant Renzulli, were negligent and/or at fault, and that negligence and/or fault was a substantial factor in causing Plaintiffs' alleged harm.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Justification and/or Privilege)**

Any alleged failure by Defendants to perform any purported duties was justified and/or privileged.

**FOURTEENTH AFFIRMATIVE DEFENSE**

**(Additional Affirmative Defenses)**

Defendants currently have insufficient knowledge or information upon which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available. Defendants reserve the right to assert additional affirmative defenses in the event discovery or further analysis indicates that additional unknown or unstated affirmative defenses would be applicable.

///

///

///

///

**DEFENDANTS' PRAYER**

WHEREFORE, Defendants pray for relief as follows:

1. That the Complaint, and all claims and causes of action therein be dismissed with prejudice as against Mr. Phair and TPC;

2. That Plaintiffs take nothing by way of the Complaint as against Mr. Phair and TPC;

3. That judgment be entered in favor of Mr. Phair and TPC;

4. That Defendants be awarded their attorneys' fees and costs of suit herein if appropriate;

5. That any award issued in favor of Plaintiffs be set off by Defendants' claims; and

6. For such other and further relief as this Court deems just and proper.

Dated: February 7, 2025

DUCKOR METZGER & WYNNE,
A Professional Law Corporation

By: ______________________

Mark C. Mazzarella
Nathaniel R. Smith
Darcie A.F. Colihan
Attorneys for Defendants JEFFREY D. PHAIR and THE PHAIR COMPANY, LLC

## VERIFICATION

I am a party to this action. I am also the Manager of The Phair Company, LLC and am authorized to sign this verification on its behalf. I have read the foregoing Verified Answer to Plaintiffs' Verified Complaint and know its contents. The matters stated in the Verified Answer to Plaintiffs' Verified Complaint are true based on my own knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on February 7, 2025.

Jeffrey D. Phair, individually and on behalf of The Phair Company, LLC

Case 25-90069-JBM11 Filed 07/03/25 Entered 07/03/25 14:51:29 Doc 65 Pg. 202 of 209

# EXHIBIT 6

**CM-180**

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| Mark C. Mazzarella / Nathaniel R. Smith 082494/257615<br>DUCKOR METZGER & WYNNE<br>101 West Broadway, Suite 1700<br>San Diego, CA 92101<br>TELEPHONE NO.: (619) 209-3000 FAX NO. *(Optional)*: (619) 209-3043<br>E-MAIL ADDRESS *(Optional)*: mmazzarella@dmwplc.com/smith@dmwplc.com<br>ATTORNEY FOR *(Name)*: Jeffrey D. Phair, et al. | |
| **SUPERIOR COURT OF CALIFORNIA, COUNTY OF** SAN DIEGO<br>STREET ADDRESS: 330 West Broadway<br>MAILING ADDRESS: 330 West Broadway<br>CITY AND ZIP CODE: San Diego, CA 92101<br>BRANCH NAME: Central Judicial District | |
| PLAINTIFF/PETITIONER: Affordable Housing Land Consultants, LLC, et al.<br><br>DEFENDANT/RESPONDENT: Renzulli Properties LLC, et al. | |
| **NOTICE OF STAY OF PROCEEDINGS** | CASE NUMBER: 24CL020598C<br>JUDGE: Gregory W. Pollack<br>DEPT.: C-71 |

**To the court and to all parties:**

1. Declarant *(name)*: Nathaniel R. Smith, Esq.

   a. ☐ is ☐ the party ☒ the attorney for the party who requested or caused the stay.

   b. ☐ is ☐ the plaintiff or petitioner ☐ the attorney for the plaintiff or petitioner. The party who requested the stay has not appeared in this case or is not subject to the jurisdiction of this court.

2. This case is stayed as follows:

   a. ☐ With regard to all parties.

   b. ☒ With regard to the following parties *(specify by name and party designation)*:
   Claims against Plaintiffs and Judgment Debtors (1)Jeff Phair and (2)The Phair Company, LLC

3. Reason for the stay:

   a. ☒ Automatic stay caused by a filing in another court. *(Attach a copy of the Notice of Commencement of Case, the bankruptcy petition, or other document showing that the stay is in effect, and showing the court, case number, debtor, and petitioners.)*

   b. ☐ Order of a federal court or of a higher California court. *(Attach a copy of the court order.)*

   c. ☐ Contractual arbitration under Code of Civil Procedure section 1281.4. *(Attach a copy of the order directing arbitration.)*

   d. ☐ Arbitration of attorney fees and costs under Business and Professions Code section 6201. *(Attach a copy of the client's request for arbitration showing filing and service.)*

   e. ☐ Other:

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: February 25, 2025

Nathaniel R. Smith
(TYPE OR PRINT NAME OF DECLARANT)

▶ [signature]
(SIGNATURE)

# EXHIBIT 3a

United States Bankruptcy Court
Southern District of California

FILED
02/25/2025
10:41 AM

# Notice of Bankruptcy Case Filing

A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 11 of the United States Bankruptcy Code, entered on 02/25/2025 at 10:41 AM and filed on 02/25/2025.

**Jeffrey David Phair**
8311 The Grant Place
Bonita, CA 91902
SSN / ITIN: xxx-xx-4458

The case was filed by the debtor's attorney:

**Aaron E. De Leest**
Marshack Hays Wood LLP
870 Roosevelt
92620
Irvine, CA 92620
949-333-7777

The case was assigned case number 25-00661-11.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our *Internet* home page http://www.casb.uscourts.gov or at the Clerk's Office, Jacob Weinberger U.S. Courthouse, 325 West F Street, San Diego, CA 92101-6991.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

**Mark T. Schnakenberg**
**Clerk, U.S. Bankruptcy Court**

---

| PACER Service Center |
|---|
| Transaction Receipt |
| 02/25/2025 10:45:20 |

| | | | |
|---|---|---|---|
| **PACER Login:** | aeddgdk37 | **Client Code:** | 9999-001 |
| **Description:** | Notice of Filing | **Search Criteria:** | 25-00661-11 |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

United States Bankruptcy Court
Southern District of California

## Notice of Bankruptcy Case Filing

FILED
02/25/2025
2:27 PM

A bankruptcy case concerning the debtor(s) listed below was filed under Chapter 11 of the United States Bankruptcy Code, entered on 02/25/2025 at 2:27 PM and filed on 02/25/2025.

**The Phair Company LLC**
945 East J Street
Chula Vista, CA 91910
Tax ID / EIN: 20-4183527

The case was filed by the debtor's attorney:

**Vincent Renda**
Pinnacle Legal P.C.
9565 Waples Street
Suite #200
San Diego, CA 92121
858-868-5000

The case was assigned case number 25-00667-11.

In most instances, the filing of the bankruptcy case automatically stays certain collection and other actions against the debtor and the debtor's property. Under certain circumstances, the stay may be limited to 30 days or not exist at all, although the debtor can request the court to extend or impose a stay. If you attempt to collect a debt or take other action in violation of the Bankruptcy Code, you may be penalized. Consult a lawyer to determine your rights in this case.

If you would like to view the bankruptcy petition and other documents filed by the debtor, they are available at our *Internet* home page http://www.casb.uscourts.gov or at the Clerk's Office, Jacob Weinberger U.S. Courthouse, 325 West F Street, San Diego, CA 92101-6991.

You may be a creditor of the debtor. If so, you will receive an additional notice from the court setting forth important deadlines.

**Mark T. Schnakenberg**
**Clerk, U.S. Bankruptcy Court**

---

| PACER Service Center |
|---|
| **Transaction Receipt** |
| 02/25/2025 14:29:46 |

| PACER Login: | renda3144 | Client Code: | |
|---|---|---|---|
| Description: | Notice of Filing | Search Criteria: | 25-00667-11 |
| Billable Pages: | 1 | Cost: | 0.10 |